UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR, *et al*.<br><br>*Defendants*. | Civil Case No. 1:25-cv-00612-RDM<br><br>**PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(d)(1), Plaintiff respectfully requests that the Court grant leave to Plaintiff to take limited, expedited discovery in this case, which alleges that multiple federal agencies with statutory mandates implicating interests vital to Plaintiff and its members are operating secretive, unlawful federal advisory committees—called "DOGE Teams"—in flat violation of the Federal Advisory Committee Act ("FACA"). Such discovery is necessary to establish precisely how the DOGE Teams are positioned and operating within the Defendant agencies—information vital to protect Plaintiff from immediate harms as the DOGE Teams seek to undermine environmental laws and regulations essential to safeguarding the public health, habitats, and wildlife impacted by federal activities.[1]

Specifically, Plaintiff seeks responses to a discrete set of interrogatories, requests for production, and admissions from each Defendant specific to the establishment of their DOGE Team, and the identity and employment status of DOGE Team members; how the DOGE Team

---

[1] Pursuant to Local Rule 7(m) and Fed. R. Civ. P. 26, Plaintiff conferred with Defendants' counsel and Defendants will oppose this motion.

1

is interacting with the agency/department in which they have been established; and the legal basis for the DOGE Team's authority to recommend and/or carry out changes within the Defendant agency/department. *See* Ex. A (Proposed Discovery Requests).

DOGE Team meetings must be occurring and every time one occurs without public access, the interested public—including Plaintiff—has irreparably lost its rights under FACA. *See, e.g., Animal Legal Defense Fund v. Shalala*, 53 F.3d 363, 368 (D.C. Cir. 1995). Yet there is a dearth of public information on exactly how the DOGE teams are functioning. The proposed discovery therefore seeks basic information concerning how and the extent to which FACA is being violated on an ongoing basis and how these violations are impairing Plaintiff's rights and interests. Because no information on the DOGE Teams has been made public, there remains substantial confusion as to the status and actions of the DOGE Teams. Only Defendants possess the information necessary to clarify these factual matters, which is essential to allow Plaintiff to protect its interests regarding access to information that FACA requires be made publicly available on an ongoing basis. Plaintiff intends to seek preliminary relief and/or expedited briefing in this matter to mitigate further harm from Defendants' failure to comply with laws intended to protect the public interest, and the information sought through the proposed discovery requests is necessary in pursuit of establishing the legal violations and ongoing irreparable injury.

As set forth below, the targeted discovery Plaintiff requests is reasonable, narrowly tailored to the issues that are essential to deciding any preliminary or summary judgment motions, and will not overly burden Defendants. The Court should therefore exercise its discretion and grant Plaintiff's motion, consistent with several other courts that have allowed expedited discovery or document production regarding the activities of DOGE, the entity within

the Executive Office of the President that has also played a role in the activities of the DOGE Teams. *See Citizens for Resp. & Ethics in Wash. v. United States Doge Serv.,* 2025 U.S. Dist. LEXIS 42869, 2025 WL 758430 (D.D.C. Mar. 10, 2025) (finding "that the public would be irreparably harmed by an indefinite delay in unearthing the records" sought); *State of New Mexico v. Elon Musk*, 1:25-cv-00429-TSC, ECF Nos. 60, 61 (D.D.C. Mar. 12, 2025).

## BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14158—"Establishing and Implementing the President's 'Department of Government Efficiency,'" 90 Fed. Reg. 8441 (Jan. 29, 2025)—renaming the U.S. Digital Service the U.S. DOGE Service ("USDS"), and establishing a new temporary organization known as the U.S. DOGE Service Temporary Organization within USDS. E.O. 14158 also provides for "DOGE Teams" to be established by each Agency Head within their respective agencies, in consultation with USDS. These DOGE Teams are directed to coordinate with the USDS Administrator, working from within the agencies to advise the Agency Heads on implementing the President's "DOGE Agenda."

On March 3, 2025, Plaintiff filed the initial complaint in this matter, ECF No. 1,[2] averring that the DOGE Teams working within various federal agencies are subject to the Federal Advisory Committee Act (FACA), 5 U.S.C. § 1001 *et seq*. which requires transparency, public participation, and balanced representation when the President or executive branch agencies establish or use non-federal bodies for the purpose of seeking advice or recommendations. Specifically, FACA requires any "advisory committee"—defined as any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established

---

[2] Plaintiff filed an amended complaint on April 1, 2025, ECF No. 12, to include new claims against Federal Defendants under the Freedom of Information Act; however, the FACA claims remain the same.

or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government," 5 U.S.C. § 1001(2)(A)—to file a charter and Membership Balance Plan to set forth the objective and scope of the intended activities, and describe how the advice and recommendations of the advisory committee will not be inappropriately influenced by special interests. *See* 5 U.S.C. §§ 1004, 1008(c); *see also* 41 C.F.R. §§ 102-3.30, 102-3.60.

Furthermore, FACA demands transparency in the procedures and meetings of advisory committees. Meetings must generally be "open to the public," 5 U.S.C. § 1009(a), and all documents made available to or prepared for or by the committee must be released well *before* any meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992); 5 U.S.C. § 1009(b). Detailed meeting minutes must also be made publicly available. *See* 5 U.S.C. §§ 1009(c), 1010; *see also* 41 C.F.R. § 102-3.165 (describing how advisory committee meetings are to be documented with meeting minutes); *Id.* at § 102-3.170 ("Timely access to advisory committee records is an important element of the public access requirements of the Act.").

As set forth in Plaintiff's complaint, based on the limited publicly available information and the language of E.O. 14158, the DOGE Teams working within the Defendant agencies have been established to provide advice and recommendations to Defendants regarding staffing and budgetary decisions—*i.e.*, to "implement[] the President's DOGE Agenda"—consistent with the definition of an "Advisory Committee" pursuant to FACA. 5 U.S.C. § 1001(2)(A). *See* ECF No. 1 at 4-5, 22-23 (discussing the DOGE Teams already working within various federal agencies to downsize and undermine agency services). President Trump has asserted that while DOGE is making *recommendations* on changes to federal agencies, Cabinet secretaries should make final

4

decisions on personnel, policy and the pacing of implementation.³ The Government likewise argued in a Motion to Dismiss in *State of New Mexico v. Elon Musk* that DOGE itself is being used as an advisory committee, making comparisons to other advisory committees established by Presidents from Andrew Jackson to Bill Clinton. 1:25-cv-00429 (TSC) ECF No. 58 at 27-28 (D.D.C. Mar. 7, 2025).

Therefore, based on the public pronouncements that have been made, FACA seemingly applies to the DOGE Teams. Yet, none of the Defendant agencies have made any effort to comply with FACA, without offering any public explanation for why they are failing to do so. Accordingly, by this motion Plaintiff seeks basic information bearing on FACA's applicability and the work of the DOGE Teams so that Plaintiff can protect its interests, and the case can move forward expeditiously.

Public reports indicate that the DOGE Teams established by, and working within, the Defendant agencies/departments have recommended, and are continuing to recommend, cutting thousands of jobs and are undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to enforce laws and regulations intended to protect public health and the environment. These reports further indicate that the DOGE Teams are in the process of reviewing and recommending rescissions to agency regulations, as directed by Executive Order 14219—90 Fed. Reg. 10583 (Feb. 25, 2025) (stating Agency Heads, "in coordination with their DOGE Team Leads" must initiate a process to review all regulations to determine which ones

---

³ *See e.g.,* Alison Durkee, *Musk Can't Fire Employees, Trump Reportedly Tells Cabinet Secretaries. Here's Likely Why He's Saying This*, Forbes (Mar. 6, 2025) *available at* https://www.forbes.com/sites/alisondurkee/2025/03/06/musk-cant-fire-employees-trump-reportedly-tells-cabinet-secretaries-heres-likely-why-hes-saying-this/; Dasha Burns, *Trump puts new limits on Elon Musk*, Politico (Mar. 6, 2025) *available at* https://www.politico.com/news/2025/03/06/trump-cabinet-musk-025093.

should be rescinded). This includes regulations Plaintiff relies on to achieve its organizational purposes, including monitoring the impacts of agency actions on the environment and species; monitoring legal compliance concerning environmental management; and advocating for policies that protect habitats and wildlife. *See* ECF No. 1 at 7-10; Declaration of Brett Hartl attached as Ex. B. Any recommendations by the DOGE Teams to undermine environmental laws and associated regulations, including by reducing agency budgets and workforce and thereby undercutting Defendants' ability to apply and enforce such laws and regulations, harms Plaintiff's longstanding interests in protecting the public health, habitats, and wildlife impacted by federal activities. *Id.*

However, the public has been left completely in the dark about how the DOGE Teams are operating. By purposefully avoiding the requirements of FACA, Defendants have deprived the public, including Plaintiff, of critical information that the law requires be made available to ensure that the DOGE Teams are not unlawfully promoting the self-interests of special interest groups. *See* H.R. Rep. No. 92-1017, at 6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3496 ("One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns."); 5 U.S.C. § 1004(b)(3) (Providing that "appropriate" steps must be taken to "assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest").

## LEGAL STANDARD

Parties may obtain discovery relevant to their claims so long as the scope of discovery is proportional to the needs of the case, taking into consideration the parties' relative access to relevant information and the importance of the discovery to resolving the issues, as well whether

the burden of the proposed discovery outweighs its benefits. Fed. R. Civ. P. 26(b)(1). Courts therefore have "broad discretion" over the timing and scope of discovery. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020); *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (the Court has broad discretion to "dictate the sequence of discovery") (citation omitted).

Generally, Federal Rule of Civil Procedure 26(d)(1) prohibits discovery until after the parties' Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1), which has yet to happen in this case. But Rule 26(d)(1) also gives courts discretion to make exceptions. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). While the rule is silent as to "a standard to apply when determining whether expedited discovery is appropriate," *id.*, this court has adopted the so-called reasonableness approach. *Id.* at 98. Under that approach, "the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances,' which include: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.* (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142–43 (D.D.C. 2005)). These factors "are only guidelines for the exercise of the Court's discretion." *Id.*; *cf. Nixon v. Freeman*, 670 F.2d 346, 363 (D.C. Cir. 1982) ("A district court has broad discretion over . . . discovery."). "Courts are not limited to these factors." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citation omitted).

In some cases, this court has applied the *Notaro* approach, which requires that the party seeking expedited discovery demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited

discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *See In re Fannie Mae Derivative Litig.,* 227 F.R.D. at 142 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). However, several courts have rejected the *Notaro* standard in favor of the reasonableness approach, which is "more suited to the application of the Court's broad discretion in handling discovery." *See Guttenberg*, 26 F. Supp. 3d at 97 (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)). Under either standard, Plaintiff should be permitted to pursue limited discovery.

## ARGUMENT

### I.     The proposed discovery requests are reasonable and appropriate.

Plaintiff seeks limited discovery to "fill[] in gaps . . . to determine what the agenc[ies] actually did." *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1227 (D.C. Cir. 1993). Because Defendants have not disclosed any information about the makeup of the DOGE Teams and how they are interacting within the agencies/departments to the public, it remains unclear how the DOGE Teams are operating and the authority they are asserting to undermine environmental laws and regulations, including by recommending reducing agency budgets and workforce and thereby undercutting Defendants' ability to apply and enforce laws and regulations, which delays, avoids, and undermines protections that are necessary to secure Plaintiff's interests in preserving imperiled species and the environment.

This limited discovery is necessary for Plaintiff to confirm public reporting about the DOGE Teams, including whether they have been holding meetings and their purported legal authority to recommend and/or make changes at the agencies/departments without complying with FACA's openness and other requirements. *See Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (a district court may "exercise its discretion to permit [] discovery to

8

ascertain the contours of the precise policy at issue") (citations omitted); *Venetian Casino Resort, LLC v. EEOC,* 409 F.3d 359, 360 (discovery appropriate when a party's position is obscure, making it "impossible to discern whether the alleged . . . policy in fact exists"). The discovery that Plaintiff seeks about the structure, operation, and authority for the DOGE Teams will refine the issues and arguments and provide important information to support a motion for a preliminary injunction or expedited summary judgment briefing, which Plaintiff intends to request.[4] Further, since no administrative record exists for this case, permitting the limited discovery Plaintiff seeks would also be more efficient for the Court and the parties. *See National Law Center on Homelessness and Poverty v. U.S. Dep't of Veterans Aff's*, 842 F. Supp. 2d 127, 130-31 (In an APA case where there is no administrative record, plaintiffs are entitled to some discovery to enable meaningful review).

Importantly, it is also well-established that discovery is appropriate in a FACA case in particular. *See, e.g., Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (noting that FACA cases presenting APA claims "often proceed to discovery"); *Votevets Action Fund v. McDonough*, 992 F.3d 1097 (D.C. Cir. 2021) (remanding for discovery in FACA suit); *Natural Resources Defense Council v. Pena*, 147 F.3d 1012 (D.C. Cir. 1998) (same).

As set forth in Plaintiff's Complaint, on information and belief the DOGE Teams are comprised of members that are not full-time government employees, and the DOGE Teams were established by the agencies/departments specifically to provide advice or recommendations to Defendants. *See* ECF No. 1 at 21. In fact, E.O. 14158 specifically requires all Agency Heads to

---

[4] The fact that such a motion has not yet been filed does not weigh against allowing expedited discovery here, since the purpose of the motion is to allow Plaintiffs to gather information necessary to support an anticipated motion. *See Legal Tech. Grp., Inc. v. Mukerji,* No. 17-cv-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017).

"establish [DOGE Teams] within their respective Agencies," and that these DOGE Teams must "coordinate their work with USDS *and advise their respective Agency Heads on implementing the President's DOGE Agenda*." (emphasis added). This is consistent with the definition of an "Advisory Committee" pursuant to FACA. *See* 5 U.S.C. § 1001(2)(A). Further, as discussed, the government itself has stated that DOGE/USDS is being used as an advisory committee, and President Trump has stated that the role of the DOGE Teams is to provide recommendations to the agencies. *See supra* at 4-5.

Plaintiff therefore has a likelihood that it will succeed on the merits of its claims regarding Defendants' failure to comply with FACA, and the proposed limited discovery is reasonable to ensure that Plaintiff can obtain information necessary to protect its interests, as FACA requires. *See Warner Bros. Recs. Inc. v. Does 1–6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007) (granting expedited discovery where "Plaintiffs have made a showing of good cause for the discovery they seek, as the information is not only relevant but crucial to the prosecution of Plaintiffs' claims").

Defendants' ongoing failure to comply with FACA, which provides that the public *must* be provided with information on the meetings and documents associated with advisory committee actions *before* any meetings take place so that the public may participate to protect their interests, is irreparably harming Plaintiff, since once such meetings take place, the ability to participate as FACA requires has been lost. *See Animal Legal Defense Fund,* 53 F.3d at 368 (finding irreparable harm from a FACA violation because "[i]n the FACA context particularly, there may be a big difference between relief now and later," since "the timing of [public] observation and comment is crucial to compliance with the statute") (citing *Alabama-Tombigbee Rivers Coalition v. Dep't of Interior*, 26 F.3d 1103, 1106 (11th Cir. 1994)); *Gates v. Schlesinger,*

366 F. Supp. 797, 801 (D.D.C. 1973) (finding irreparable harm from a violation of FACA because the plaintiff's right to participate will be "permanently lost"); *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("[S]tale information is of little value.").

Further, the DOGE Teams have caused, and will continue to cause, irreparable harm by their efforts to undermine the laws and regulations Plaintiff relies on, as well as the ability of the Defendants to carry out their statutory obligations to protect the environment, which directly harms Plaintiff's well-established interests in protecting the public health, habitats, and wildlife impacted by federal activities. *See* ECF No. 1 at 7-11; *See also* Hartl Dec. Ex. B. For example, reports indicate that the DOGE Team at Department of the Interior undertook efforts to fire at least 2,300 employees. ECF No. 1 at 8. Reports also establish that DOGE Team members entered NOAA headquarters, inciting concerns over downsizing the agency, undermining its work to protect communities and the environment. ECF No. 1 at 23. Indeed, recent reporting indicates that the DOGE Teams are responsible for advocating the cutting of thousands of jobs at the Defendant agencies and are undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to enforce laws and regulations intended to protect public health and the environment.[5] Therefore, Plaintiff's interests are irreparably harmed by Defendants' failure to

---

[5] *See e.g.,* Sarah Stierch, *Elon Musk's DOGE team to close Bureau of Land Management Ukiah field office*, CBS News (Mar. 12, 2025), https://www.cbsnews.com/sanfrancisco/news/elon-musks-doge-blm-ukiah-field-office/ (discussing the BLM DOGE Team's efforts to close a BLM field office that manages approximately 270,000 acres of land including three popular protected areas in Colusa, Glenn, Lake, Napa, Marin, Solano, Sonoma, and Yolo counties and a portion of Mendocino County); Heather Richards, *DOGE terminates more EPA, Interior leases*, E&E News (Mar. 14, 2025), https://www.eenews.net/articles/doge-terminates-more-epa-interior-leases/ (discussing DOGE's efforts to cancel leases, contracts, and grants across the government including for the National Park Service, EPA, the Fish and Wildlife Service, the Bureau of Land Management, and the U.S. Geological Survey); Eric Katz, *EPA begins eliminating offices as DOGE tightens grip on nearly all agency spending*, Government Executive (Mar. 12, 2025) https://www.govexec.com/management/2025/03/epa-begins-eliminating-offices-doge-tightens-grip-nearly-all-agency-spending/403684/ (stating that the office closures are "just a small first

comply with FACA, which requires that the public be kept abreast of such activities. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 446 (1989) ("FACA's principal purpose was to establish procedures aimed at enhancing public accountability of federal advisory committees."); *Washington Legal Foundation v. United States Dep't of Justice*, 691 F. Supp. 483, 490 (D.D.C. 1988) (the purpose of FACA is to open to public scrutiny the manner in which the government obtains advice from private individuals).

The limited discovery sought by Plaintiff will shed light on the process by which the DOGE Teams are operating and the legal basis for their authority. Obtaining this information in an expedited matter is warranted given the speed and secrecy of DOGE's activities. *See Citizens for Resp. & Ethics in Wash.* 2025 U.S. Dist. LEXIS 42869 at *50-51 (noting the "remarkably swift" actions of USDS, which "requires the quick release of information about its structure and activities," especially "given the secrecy with which USDS has operated"). There is a direct connection between the information sought through the proposed expedited discovery and the avoidance of the irreparable injury to Plaintiff, and the information sought is not only relevant

---

step in what is expected to be much more significant layoffs across the agency"); Nik Popli, *What DOGE Is Doing Across the Federal Government*, Time (Feb. 21, 2025) https://time.com/7222251/doge-musk-federal-workers-government/ (stating the "DOGE team had positioned people across the federal government, disrupting functions, gaining access to sensitive data, and executing cuts"); Jordan Perkins, *DOGE science agency cuts could threaten endangered animals*, NEWSNATION (Mar. 3, 2025) https://www.newsnationnow.com/politics/doge-cuts-threaten-endangered-species/ (discussing the firing of staffers at the U.S. Fish and Wildlife Service program to save endangered species); Michael Sainto, *Trump purge raises extinction threat for endangered species, fired workers warn*, The Guardian (Mar. 3, 2025) https://www.theguardian.com/us-news/2025/mar/03/endangered-species-trump-federal-worker-firings (discussing efforts by DOGE to fire thousands of workers and halt federal funding related to protection of endangered species).

but is proportional to the needs of the case. *See Strike 3,* 964 F.3d at 1210 (citing Fed. R. Civ. P. 26(b)(1)).

Thus, the totality of the circumstances supports Plaintiff's limited request. There remains significant uncertainty about the make-up of the DOGE Teams and how the DOGE Teams are interacting with the agencies in which they have been established (i.e., whether and how often they are holding meetings and what documents they are producing), and the legal basis for the DOGE Teams' authority to undertake changes within the Defendant agencies. While Plaintiff will continue to work diligently to exhaust publicly available information as to the specific personnel and the legal structure of the DOGE Teams, due to the opaque and fast-moving nature of the DOGE Teams' operations, significant pertinent information is exclusively in Defendants' possession, which warrants discovery. *See Strike 3*, 964 F.3d at 1207–08. Plaintiff's proposed discovery is therefore necessary to determine factual matters to support a motion for preliminary relief and/or expedited summary judgment regarding Defendants' unlawful conduct.

**II.     The proposed discovery does not impose an excessive burden on Defendants.**

The proposed discovery requests are not overly burdensome because they have been "narrowly tailored" to pursue predicate factual matters essential for Plaintiff to protect its immediate interests and it will not take an excessive amount of time or effort for Defendants to respond. *See Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4 (D.D.C. 1999) (authorizing tailored discovery in a FACA suit); *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010) (discovery requests are overly burdensome when not "narrowly tailored"); *Attkisson v. Holder,* 113 F. Supp. 3d 156, 165 (D.D.C. 2015) (discovery requests are burdensome where they are "overly broad" and would require "significant time and resources"). Given the limited scope of the requested discovery, which is confined to a narrow timeframe (*i.e*., January 20, 2025, to

present), the requests are not overly broad and the burden on Defendants is minimal—especially when weighed against Plaintiff's need for the information and inability to obtain it elsewhere. *See* Fed. R. Civ. P. 26(b)(1) (establishing general rule that inquiries into "burden" should consider "likely benefit"); *see also ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 63 (M.D. La. 2016) (noting that "[g]ood cause generally exists 'where the need for expedited discovery outweighs the prejudice to the responding party'") (citation omitted).

At this stage, Plaintiff does not seek to take depositions of agency or DOGE Team members, or responses to lengthy interrogatories. Rather, Plaintiff proposes a limited set of interrogatories and requests for production specific to the status of the DOGE Team members, how the DOGE Teams are interacting with the agencies/departments in which they have been established, how the DOGE Teams are communicating,[6] and the legal basis for the DOGE Teams' authority to undertake changes within the Defendant agencies/departments. Such information is readily available to Defendants and does not implicate any privilege concerns.

These targeted discovery requests should not be difficult to answer as they pertain to basic aspects of the DOGE Teams structures and processes. Pursuant to E.O. 14158, the DOGE Teams should consist of only four people at each agency/department, and setting forth who these DOGE Team members are, their employment status, and how they have been interacting with the agency in which they have been established are straightforward matters requiring only succinct responses. The same holds true for the request to have Defendants explain the authority and/or

---

[6] The requests include asking whether DOGE Teams are using the messaging application Signal or other similar apps, which are widely used for their auto-delete feature, and therefore could necessitate an order from the Court requiring Defendants to retain all communications with and between the DOGE Teams. *See Citizens for Resp. & Ethics in Wash.* 2025 U.S. Dist. LEXIS 42869 at *54-55 (noting that "evidence gives rise to the possibility that representatives of [DOGE] may not fully appreciate their obligations to preserve federal records").

14

legal basis for the DOGE Teams' actions within the agencies/departments, which is an issue that they surely must have already thoroughly considered, though they have not made such information public. Therefore, existing procedures and documentation of employees and processes should minimize any burdens on Defendants to produce the requested information.

Such limited discovery requests will serve the interests of judicial efficiency by advancing resolution of any factual issues that remain ambiguous due to the DOGE Teams' failure to make any information about their composition, structure, and processes publicly available. Plaintiff's discrete requests can be answered with basic information that should be readily available to Defendants, and the benefit of having such information available to address the arguments in this matter certainly outweigh any burden on Defendants. Therefore, the requests are not unduly burdensome.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant it leave to serve the proposed discovery requests and order Defendants to produce the documents and responses to interrogatories within 14 days of the Court's order.

Respectfully submitted on this 10th day of April 2025.

/s/ Lauren A. Parker
Lauren A. Parker DC Bar No. 1670885
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
lparker@biologicaldiversity.org
(202)-868-1008

Jared Margolis (*pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
jmargolis@biologicaldiversity.org
(802) 310-4054

15

*Attorneys for Plaintiff Center for Biological Diversity*