**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br><br>        *Plaintiff*,<br>    v.<br><br>U.S. DEPARTMENT OF INTERIOR, et al.<br><br>        *Defendants*. | Civil Case No. 1:25-cv-00612-RDM |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..……………………......ii

INTRODUCTION…………………………………………………………………………………...1

BACKGROUND…………………………………………………………………………………….3

    Legal Background……………………………………………………………………………3

    Factual Background…………………………………………………………………………5

STANDARD OF REVIEW…………………………………………………………………………7

ARGUMENT………………………………………………………………………………………...7

I.    Plaintiff has stated valid APA and Mandamus claims regarding Defendants' failure to comply with FACA……………………………………………………………………… 9

    A.  The DOGE Teams meet the definition of a federal advisory committee…………9

        1.  Plaintiff need not show that the DOGE Team members have "vote or veto power."……………………………………………………………………14

        2.  Plaintiff has sufficiently plead that the DOGE Teams are holding meetings and providing specific advice and recommendations to Defendants……………16

II.   The DOGE Teams are operating at the Department level and therefore implicate all Defendants……………………………………………………………………………………18

III.  Plaintiff's arguments do not raise separation of powers concerns………………………19

IV.  Plaintiff has not brought a claim to enforce FACA's "fairly balanced" or "inappropriate influence" provisions…………………………………………………………………………21

CONCLUSION……………………………………………………………………………………22

# TABLE OF AUTHORITIES

## Cases

*Acosta Orellana v. CropLife Int'l*

    711 F. Supp. 2d 81 (D.D.C. 2010)……………………………………………...13, 17

*ACLU Found. of S. Cal. v. Barr*

    952 F.2d 457 (D.C. Cir. 1991)……………………………………………………7

*Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*

    525 F.3d 8 (D.C. Cir. 2008)………………………………………………………8

*Am. Nat'l Ins. Co. v. FDIC*

    642 F.3d 1137 (D.C. Cir. 2011)…………………………………………………7

*Arab v. Blinken*

    600 F. Supp. 3d 59 (D.D.C. 2022)……………………………………………...7

*Ashcroft v. Iqbal*

    556 U.S. 662 (2009)………………………………………………………………7

*Association of American Physicians & Surgeons, Inc. v. Clinton*

    997 F.2d 898 (D.C. Cir. 1993)…………………………………………………11, 13

*Bell Atl. Corp. v. Twombly*

    550 U.S. 544 (2007)…………………………………………………………7, 8, 9

*Bhagerian v. Pompeo*

    442 F. Supp. 3d 87 (D.D.C. 2020)………………………………………………9

*Browning v. Clinton*

    292 F.3d 235 (D.C. Cir. 2002)……………………………………………………7

*Ciralsky v. CIA*

    355 F.3d 661 (D.C. Cir. 2004)……………………………………………………8

*Datta v. Rubio*

    No. 24-2937, 2025 U.S. Dist. LEXIS 42873, 2025 WL 752643 (D.D.C. Mar. 10, 2025)……………………………………………………………………………..9

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*

    466 F. Supp. 3d 100 (D.D.C. 2020)……………………………………………...13

*Erickson v. Pardus*

    551 U.S. 89 (2007)………………………………………………………………..8

*Flowers v. Exec. Office of the President*

    142 F. Supp. 2d 38 (D.D.C. 2001)…………………………………………………13

*Food & Water Watch v. Trump*

    357 F. Supp. 3d 1 (D.D.C. 2018)……………………………………………...10

*Food Chem. News v. Dep't of Health & Human Servs.*

    980 F.2d 1468 (D.C. Cir. 1992)…………………………………………………...4

*In re Cheney*

    406 F.3d 723 (D.C. Cir. 2005)………………………………………...14, 15, 20

*Kirwa v. United States DOD*

    285 F. Supp. 3d 257 (D.D.C. 2018)……………………………………………9

*Kowal v. MCI Commc'ns Corp.*

    16 F.3d 1271 (D.C. Cir. 1994)…………………………………………14, 17

*Marshall Cnty. Health Care Auth. v. Shalala*

    988 F.2d 1221 (D.C. Cir. 1993)…………………………………………...2

*Mead v. Lindlaw*

    839 F. Supp. 2d 66 (D.D.C. 2012) …………………………………………9

*Nat'l Sec. Counselors v. CIA*

    898 F. Supp. 2d 233 (D.D.C. 2012)………………………………………...21

*Physicians for Social Responsibility v. Wheeler*

    359 F. Supp. 3d 27 (D.C. Cir. 1993)……………………………………………………..12

*Public Citizen v. United States Dep't of Justice*

    491 U.S. 440 (1989)……………………………………………………………………….3

*Sickle v. Torres Advanced Enter. Sols., LLC*

    884 F.3d 338 (D.C. Cir. 2018)……………………………………………………………..2

*Swierkiewicz v. Sorema N.A.*

    534 U.S. 506 (2002)…………………………………………………………………...8, 21

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*

    489 U.S. 749 (1989)…………………………………………………………………...20

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*

    389 F.3d 1251 (D.C. Cir. 2004)…………………………………………………………14

*Ward v. D.C. Dep't of Youth Rehab. Servs.*

    768 F. Supp. 2d 117 (D.D.C. 2011)……………………………………………………..9

*Washington Legal Foundation v. United States Dep't of Justice*

    691 F. Supp. 483 (D.D.C. 1988)…………………………………………………………3

*Williams v. Ellerbe*

    317 F. Supp. 3d 144 (D.D.C. 2018)……………………………………………………...14

## Statutes and Regulations

5 U.S.C. § 1001……………………………………………………………………1, 4, 5, 10, 12

5 U.S.C. § 1008………………………………………………………………………………...3

5 U.S.C. § 1009………………………………………………………………………………4

5 U.S.C. § 1010………………………………………………………………………………4

18 U.S.C.S. § 202(a)……………………………………………………………………..12

41 C.F.R. § 102-3.60(b)(3)…………………………………………………………………..4

41 C.F.R. § 102-3.150(a)…………………………………………………………………..4

41 C.F.R. § 102-3.165………………………………………………………………………..4

41 C.F.R. § 102-3.170………………………………………………………………………..4

## Other Authorities

H.R. Rep. No. 92-1017 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491………………………..3

Executive Order 14158, 90 Fed. Reg. 8441 (Jan. 20, 2025)…………………1, 5, 9, 10, 11, 18, 19

Executive Order 14219, 90 Fed. Reg. 10583 (Feb. 19, 2025)…………………...1, 5, 9, 10, 11, 19

## INTRODUCTION

The Center has sufficiently pled plausible claims for relief based on the plain language of Executive Orders 14158 and 14219, which indicate that the DOGE Teams, as described by the administration itself, plainly meet the definition of federal advisory committees subject to the Federal Advisory Committee Act (FACA). At their core, the DOGE Teams are groups of advisors that must be established by the Defendant agencies/departments pursuant to Executive Order 14158 to provide specific advice and recommendations, including on regulatory reform.[1] That is the very definition of an advisory committee pursuant to FACA, which applies to any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A).

Moreover, Defendants' primary argument against the application of FACA—*i.e.*, that the DOGE Teams are comprised of only government employees such that FACA's exemption for full-time or permanent part-time employes applies, ECF No. 27-1- at 9—has now been completely undermined by the limited information provided in the administrative record filed by Defendants, which confirms that the DOGE Teams are comprised of temporary Special Government Employees (SGEs). SGE is a designation used for non-federal employees to serve within government roles, including on advisory committees subject to FACA, and cannot be used to preclude its application. Therefore, Plaintiff has not only met the low bar for surviving a motion to dismiss, but indeed the record evidence provided by Defendants *reinforces* Plaintiff's

---

[1] Pursuant to Executive Order 14219, the DOGE Teams are specifically empowered to oversee a process at the federal agencies to review and rescind agency regulations deemed unlawful or that "harm the national interest," and thus are intended to provide specific advice and recommendations to the agencies. 90 Fed. Reg. 10,583 (Feb. 25, 2025).

pleadings and confirms that FACA should apply to the work of the DOGE Teams. *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344-45 (D.C. Cir. 2018) (stating that to survive a motion to dismiss, a complaint must merely state a claim that is plausible on its face).

While it is readily apparent that Plaintiff has met the low standard for surviving a motion to dismiss, Defendants have argued in their motion that various factual matters concerning the DOGE Teams have not been sufficiently alleged by Plaintiffs. *See* ECF No. 27-1. However, because the DOGE Teams have been operating in secrecy and Defendants have failed to make information on their activities publicly available—including by failing to respond to Plaintiff's Freedom of Information Act (FOIA) requests, *see* ECF No. 12 at 29-30, 32-33—all of the information that Defendants claim is missing from Plaintiff's pleadings is solely within the possession of Defendants. Moreover, the administrative record filed by Defendants pursuant to the Court's May 2, 2025, Minute Order does not provide information necessary to "fill[] in gaps . . . to determine what the agenc[ies] actually did." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993). Therefore, while the Court should deem Plaintiff's allegations as sufficient to survive the motion to dismiss, Plaintiff is filing herewith a renewed motion for expedited discovery and to complete the administrative record. To the extent that the Court agrees with Defendants that more factual development is necessary regarding the activities and authority of the DOGE Teams at this stage of the litigation, Plaintiff requests that the Court hold the motion to dismiss in abeyance until responses to Plaintiff's discovery requests or complete administrative records are provided, and allow Plaintiff to amend its complaint and/or submit further argument in opposition to the motion to dismiss once that information has been provided by Defendants.

However, based on the allegations set forth in the Complaint, the plain language of the President's Executive Orders, the information provided in the limited administrative record, and the relevant case law, Plaintiff has made plausible claims sufficient to survive a motion to dismiss.

## **BACKGROUND**

### I.  **Legal Background**

In 1972, Congress enacted FACA to address congressional concern with the growing number and use of advisory committees. Congress found, among other things, that advisory committees "should be established only when they are determined to be essential" and that "Congress and the public" should be kept abreast of their activities. 5 U.S.C. § 1002. "FACA's principal purpose was to establish procedures aimed at enhancing public accountability of federal advisory committees." *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 446 (1989); *Washington Legal Foundation v. United States Dep't of Justice*, 691 F. Supp. 483, 490 (D.D.C. 1988) (the purpose of FACA is to open to public scrutiny the manner in which the government obtains advice from private individuals). When passing FACA, Congress explained that "[o]ne of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns." H.R. Rep. No. 92-1017, at 6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3496.

To accomplish these goals, FACA demands transparency and open public participation when the executive branch establishes or uses non-federal bodies for the purpose of seeking advice or recommendations, and the law includes specific requirements on the creation and operation of advisory committees. An advisory committee "shall not meet or take any action until an advisory committee charter has been filed" with the "head of the agency to whom any advisory committee reports," 5 U.S.C. § 1008(c). FACA also requires the development of a

Membership Balance Plan, 41 C.F.R. § 102-3.60(b)(3), to "ensure that, in the selection of members for the advisory committee, the agency will consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee."

Furthermore, FACA requires that the Charter and Membership Balance plan be made publicly available, along with "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for or by" the committee. 5 U.S.C. § 1009. These materials must be released well *before* the relevant meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992). Meetings of advisory committees must also be noticed in the Federal Register at least fifteen days before the meeting is to be held, 41 C.F.R. § 102-3.150(a), "[d]etailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee," 5 U.S.C. § 1009(c), and the committee must make available copies of transcripts of advisory committee meetings to "any person," *id.* § 1010. *See also* 41 C.F.R. § 102-3.165 (describing how advisory committee meetings are to be documented with meeting minutes); *Id.* at § 102-3.170 ("Timely access to advisory committee records is an important element of the public access requirements of the Act.").

These requirements apply to any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A). Only those committees that are "composed wholly of full-

4

time, or permanent parttime, officers or employees of the Federal Government" fall outside the definition of "advisory committee" under the Act. 5 U.S.C. § 1001(2)(B).

## II.    Factual Background

On January 20, 2025, President Trump issued Executive Order 14158, 90 Fed. Reg. 8441 (Jan. 29, 2025), entitled "Establishing and Implementing the President's 'Department of Government Efficiency,'" renaming the U.S. Digital Service the U.S. DOGE Service ("USDS"), and establishing a new temporary organization known as the U.S. DOGE Service Temporary Organization within USDS. Executive Order 14158 also requires "DOGE Teams" to be established by each Agency Head in consultation with USDS. *Id.* § 3(c), 90 Fed. Reg. at 8441. These "DOGE Teams" are to be composed "of at least four employees, which may include Special Government Employees, hired or assigned by the Agency," who are directed to coordinate with the USDS Administrator, working from within the agencies to advise the Agency Heads on implementing the President's "DOGE Agenda." *Id*. According to the Executive Order, "[e]ach DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney."

On February 19, 2025, President Trump issued Executive Order 14219, 90 Fed. Reg. 10583 (Feb. 25, 2025), entitled "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative," which provides that the DOGE Teams are to initiate and oversee a process to review and rescind agency regulations deemed unlawful or that "harm the national interest" because they impede technological innovation or infrastructure development. Thus, the DOGE Teams have been authorized to provide specific advice and recommendations to federal agencies regarding the rescission of regulations across the federal government.

The DOGE Teams are currently operating on both a department and agency level. ECF No. 12 ¶ 85; ECF 26-2 at 3, 8, 33, 45. Reports indicate that DOGE Teams have already been established within the various departments and federal agencies controlled by Defendants and have been holding meetings. *Id.* ¶¶ 85, 87, 105. Furthermore, the DOGE Teams are responsible for recommending the cutting of thousands of jobs at the Defendant agencies and are undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to enforce laws and regulations intended to protect public health and the environment. *Id.* ¶ 88. The DOGE Teams are tasked with and are providing advice and recommendations that impact millions of Americans, including members of the Center, albeit with none of the transparency, oversight, or opportunity for public participation the law requires. Defendants have provided no charter, Membership Balance Plans, meeting minutes or other documents regarding the work of the DOGE Teams that FACA requires be made publicly available. *Id.* ¶ 94.

In February of 2025, Plaintiff sent letters to Defendants objecting to the lack of publicly available information about the DOGE Teams, and demanding that they provide the charter, Balanced Management Plan, meeting documents and minutes, and other materials that FACA requires to be made publicly available. ECF No. 12 ¶¶ 22, 23. In these letters, Plaintiff raised concerns about the potential for conflicts of interest and stated that the only way to ensure that the government is not inappropriately influenced by DOGE Teams is to provide such documents, plans, and meeting minutes as required by FACA. *Id.* ¶ 24. Defendants have not responded to the Center's FACA letters and have failed to make the required documents and meeting minutes publicly available as FACA requires. Defendants' failure to comply with FACA's transparency and other requirements has harmed, and will continue to harm, the Center and its members' interests, including by depriving them of information necessary to understand and respond to the

DOGE Teams' work and obviating their ability to determine whether the DOGE Teams are being

improperly influenced by special interests. *Id*. ¶ 26.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the

court must "construe the complaint liberally, granting plaintiff the benefit of all inferences that

can be derived from the facts alleged and upon such facts determine jurisdictional questions."

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); Fed. R. Civ. P. 12(b)(1); *see*

*also ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991) (At the motion to

dismiss stage, the Court does not assess "the truth of what is asserted or determine whether a

plaintiff has any evidence to back up what is in the complaint"). A motion to dismiss under Rule

12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). A complaint that states a "plausible claim for

relief" survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Determining a

claim's plausibility is "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id*. "In deciding a motion under Rule 12(b)(6), the court

must consider the whole complaint, accepting all factual allegations as true, 'even if doubtful in

fact.'" *Arab v. Blinken*, 600 F. Supp. 3d 59, 65 (D.D.C. 2022) (quoting *Twombly*, 550 U.S. at

555).

## ARGUMENT

Plaintiff has sufficiently plead all the necessary elements of a FACA claim regarding the

DOGE Teams, and Defendants' arguments are inconsistent with the liberal notice pleading

requirement applicable in this circuit. Rather than the factual specificity that Defendants would

have this Court require at the pleading stage, all that is required in a complaint is "a short and

plain statement of the claim showing that the pleader is entitled to relief," sufficient to give a

defendant "fair notice of the claims. . . ." *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004)

(quoting FED. R. CIV. P. 8(a)).

As the D.C. Circuit explained in *Aktieselskabet AF 21 November 2001 v. Fame Jeans

Inc.*, 525 F.3d 8 (D.C. Cir. 2008), while some courts have imposed various "requirements of

particularity," the Supreme Court "has continually pruned back such requirements, with the

admonition that courts are not to impose heightened pleading requirements." *Id.* at 15-17 (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)). Further, as the Supreme Court held

in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint "does not need detailed

factual allegations." *See also Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ("[S]pecific

facts are not necessary," and a complaint need only give the defendant fair notice of the claims).

The Supreme Court reiterated that Federal Rule of Civil Procedure 8 requires "simply [that] …

'the defendant [give] fair notice of what the plaintiff's claim is and the grounds upon which it

rests.' This simplified notice pleading standard relies on liberal discovery rules and summary

judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."

*Swierkiewicz*, 534 U.S. at 511-12 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Defendants make no argument that Plaintiff's Amended Complaint does not provide such

"fair notice," nor could they, given the clear allegations in the pleadings. Moreover, Defendants'

position that Plaintiff must provide more factual information to support the allegations is ironic

and illogical, given that their failure to make information on the DOGE Teams' work publicly

available is the very reason for this litigation. Defendants should not be allowed to hide behind

their steadfast refusal to comply with applicable Sunshine laws to then argue that Plaintiff has

not plead sufficient information to survive a motion to dismiss.

Plaintiffs' factual allegations are sufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 548. Here, the facts alleged in the complaint as well as the plain language of President Trump's Executive Orders supports the contention that the DOGE Teams are subject to FACA, and as such the motion to dismiss should be denied.

## I.  Plaintiff has stated valid APA and Mandamus claims regarding Defendants' failure to comply with FACA. [2]

### A.  The DOGE Teams meet the definition of a federal advisory committee.

The plain language of Executive Orders 14158 and 14219 indicate that the DOGE Teams, as described by the administration itself, plainly meet the definition of federal advisory committees subject to FACA.[3] FACA applies to any "committee, board, commission, council,

---

[2] Contrary to Defendants' arguments, Plaintiff has properly plead both APA and Mandamus Act claims for Defendants' failure to comply with FACA. The fact that the APA provides relief in the form of a declaratory ruling does not undermine the inclusion of a Mandamus Act claim that would allow the Court to force Defendants to actually comply with the law. A quick search shows many dozens of cases where a plaintiff brought both APA and mandamus claims, and Defendants fail to cite a single case where a mandamus claim was dismissed at the motion to dismiss stage because relief was available under the APA, though it appears that some courts have done so. *See e.g., Jafarzadeh v. Duke,* 270 F. Supp. 3d 296, 311 (D.D.C. 2017). Indeed, a D.C. District court judge recently "addresse[d] [a] plaintiff's APA and mandamus claims jointly," *Datta v. Rubio*, No. 24-2937, 2025 U.S. Dist. LEXIS 42873, at \*9, 2025 WL 752643, at \*3 (D.D.C. Mar. 10, 2025), and this court has consistently applied the same standard to APA and Mandamus Act claims. *See e.g., Bhagerian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020). Regardless, particularly at the motion to dismiss stage, "APA and mandamus claims may proceed in parallel when relief under the APA remains unclear." *Kirwa v. United States DOD*, 285 F. Supp. 3d 257, 275-76 (D.D.C. 2018).

[3] In considering a 12(b)(6) motion, courts may consider "the facts alleged in the complaint," as well as "documents upon which the plaintiff's complaint necessarily relies" that are central to the claim. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011); *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012) ("[I]n deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties].") (internal quotation marks and citations omitted).

conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government," denominating such groups as "advisory committees." 5 U.S.C. § 1001(2)(A). The DOGE Teams are groups that include outside advisors, which must be established by the Defendants pursuant to President Trump's Executive Orders to provide specific advice and recommendations, including on regulatory reform. That is the very definition of an advisory committee subject to FACA.

First, there can be no doubt that Executive Order 14158 requires the Defendant agencies/departments to establish the DOGE Teams for the purpose of providing advice and recommendations. *See* Amended Complaint, ECF No. 12 at 5; *see also Food & Water Watch v. Trump,* 357 F. Supp. 3d 1, 10 (D.D.C. 2018). Executive Order 14158 specifically directs the Agency Heads to "establish" the DOGE Teams "within their respective Agencies," for the purpose of coordinating with USDS to implement the President's DOGE Agenda. And pursuant to Executive Order 14219, the DOGE Teams are specifically empowered to oversee a process at the federal agencies to review and rescind agency regulations deemed unlawful or that "harm the national interest," § 2(a)(vi), 90 Fed. Reg. at 10,583, and thus are intended to provide specific advice and recommendations to the Defendants consistent with the definition of an advisory committee.

Second, the plain language of Executive Orders 14158 and 14219 shows a sufficient degree of formality for the DOGE Teams, including an organized structure, a fixed membership, and a unified approach to providing advice, such that FACA seemingly applies to the DOGE Teams. Pursuant to Executive Order 14158, the DOGE Teams are formal, fixed entities, that must be comprised of an organized structure and fixed membership: one DOGE Team Lead, one

engineer, one human resources specialist, and one attorney. § 3(c), 90 Fed. Reg. at 8441. Executive Order 14158 also provides a unified approach to their work: they are directed to "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." § 3(c), 90 Fed. Reg. at 8441. Undoubtedly, this is a formal structure and unified approach to providing specific advice to the agencies. This structure and unified approach is further clarified in Executive Order 14219, which provides a specific role for the DOGE Teams in overseeing and advising on agency efforts to rescind regulations. Thus, the plain language of the President's Executive Orders confirms that the DOGE Teams have the formal structure and directed approach to providing agencies with advice that defines an advisory committee subject to FACA.

This circuit has recognized that the degree of formality for an advisory committee is assessed on a "continuum." *Association of American Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"), 997 F.2d 898, 913-15 (D.C. Cir. 1993). "At one end one can visualize a formal group of a limited number of private citizens who are brought together to give publicized advice as a group." *Id.* These "would seem to be covered by the statute." *Id.* "At the other end of the continuum is an unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with one each other." *Id.* That type of arrangement "does not trigger FACA." *Id.* Here, as discussed, it is plain from the language set forth in Executive Orders 14158 and 14219 that the DOGE Teams are formal groups with fixed membership established by Defendants at the direction of the President in order to give specific advice on implementing the DOGE Agenda, including by making specific recommendations regarding the recission of regulations. There is thus sufficient formality to support Plaintiff's allegation that the DOGE Teams fall on the spectrum such that FACA applies.

11

Third, Plaintiff has alleged that the DOGE Teams are not comprised only of full-time or permanent part-time federal employees, such that the exception for committees "composed wholly of full-time officers or employees of the federal government" applies. *See* 5 U.S.C. § 1001(2)(B); ECF No. 12 ¶ 86. This has now been *confirmed* by the documents provided in the administrative record, which show that members of the various DOGE Teams are temporary Special Government Employees (SGEs), a designation used for non-federal employees to serve within government roles, including on advisory committees subject to FACA. *See* ECF No. 26-2 at 8-9, 11-12, 15, 20, 25, 29, 34, 46. Indeed, several of the employment forms provided in the administrative record are specifically intended for hiring private citizens to participate on Federal Advisory Committees as SGEs. *See* e.g., ECF No. 26-2 at 25, 26, 29, 30 (EPA employment documents that, at the very top, state they are specific to hiring an "Advisory Committee Member, Other SGE, Expert or Consultant").

The use of SGEs on the DOGE Teams is consistent with Plaintiff's contention that the DOGE Teams are advisory committees subject to FACA. *See e.g., Physicians for Social Responsibility v. Wheeler*, 359 F. Supp. 3d 27, 39-40 (D.C. Cir. 1993) (discussing how SGE is a designation used for members of an advisory committee to allow them to participate provided that the matter will not have a special or distinct effect on their interests). Indeed, an SGE is defined as "an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis. . . , " 18 U.S.C.S. §

202(a), and is therefore by definition neither a full-time nor a permanent part-time employee of the federal government.

The designation of DOGE Team members as SGEs therefore cannot be used to preclude the application of FACA. As the D.C. Circuit explained in *AAPS*, "FACA would be rather easy to avoid if an agency could simply appoint 10 private citizens as special government employees for two days, and then have the committee receive the section 3(2) exemption as a body composed of full-time government employees." 997 F.2d at 915. Indeed, in *AAPS* the government similarly claimed that all members of certain working groups were full-time officers or employees of the government, and, for that reason alone, the working groups were not subject to FACA. The Court, however, did not accept the contention that "FACA's definition of 'full-time' extends to a person who works for the government for less than 130 days out of a year." *Id.* at 915; *see also Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, 466 F. Supp. 3d 100, 121-122 (D.D.C. 2020) (same).

However, even if the record did not show that the DOGE Teams are comprised of individuals other than full-time or permanent part-time federal employees, Defendants are mistaken in arguing that the Complaint lacks the requisite specificity regarding the employment status of the DOGE Team members. Plaintiff's allegation in the Complaint regarding the DOGE Teams' membership/employment status "on information and belief" are sufficient here to overcome a motion to dismiss, as various courts have held that such allegations are sufficient where the information is solely within the defendants' control. *See Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38, 47 (D.D.C. 2001) (citing *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 646 (3d Cir. 1989)); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 98 (D.D.C. 2010) (A court, in its discretion, may find that pleadings based on "information and belief," as opposed

to being based on factual allegations, sufficient where it can be shown that "'the necessary information lies within the defendants' control'") (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)); *United States ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F.3d 1251, 1258 (D.C. Cir. 2004) (noting that "this circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents").

Here, such information was only in the possession of Defendants when the Complaint was filed, and thus the Center made valid allegations based on information and belief. Defendants' contention that "courts consistently reject this kind of pleading style as legally insufficient," ECF No. 27-1 at 11 (citing *Williams v. Ellerbe,* 317 F. Supp. 3d 144, 149 (D.D.C. 2018)), is erroneous, since the holding there pertained to legal conclusions that are not based on *any* supporting factual allegations. *See Williams,* 317 F. Supp. at 149 ("the Court may not credit legal conclusions that are not supported by factual allegations."). Here, however, factual allegations *were* included in the pleadings, though they were necessarily plead "on information and belief" because the DOGE Teams have been operating in secrecy, and Defendants' misplaced argument should be disregarded.

In sum, based on the allegations set forth in the Complaint, the plain language of the President's Executive Orders, the information provided in the limited administrative record, and the relevant case law, Plaintiff has made plausible claims that the DOGE Teams are subject to FACA sufficient to survive the motion to dismiss.

### 1. Plaintiff need not show that the DOGE Team members have "vote or veto power."

Defendants also argue that Plaintiff must show that any non-federal employee participants on the DOGE Teams had voting or veto power over their conclusions in order to be considered "members" of the committee. *See* ECF No. 27-1 at 21-22 (citing *In re Cheney*, 406

F.3d 406 F.3d 723 (D.C. Cir. 2005) (en banc)). However, that language is found nowhere in the statute. *See id.* at 728 ("Application of FACA depends on who is a member of a committee and who is not. On that subject, FACA is silent"). Regardless, the court's analysis in *Cheney* was only in the context of a committee intended to inform the *President*, and not a federal agency. *See id.* ("In light of the severe separation-of-powers problems in applying FACA on the basis that private parties participated in, or influenced, or were otherwise involved with a committee *in the Executive Office of the President*, we must construe the statute strictly.") (emphasis added). That is because "[i]n making decisions on personnel and policy, and in formulating legislative proposals, *the President* must be free to seek confidential information from many sources, both inside the government and outside." *Id.* (emphasis added). The same does not apply for an advisory committee giving advice and recommendations to federal agencies.

Indeed, the purpose of the rule set out in *Cheney* was to allow for individuals such as advisors to senators or other aides not employed by the federal government to be able to attend meetings or participate in the activities of a Presidential committee whose *official* membership consists *only* of federal officials, thereby allowing the President to have non-federal employee advisors provide input without converting it into an advisory committee subject to FACA. *See id.* (Comparing the role of congressional aides attending committee hearings to high-ranking Executive Branch officials serving on committees that commonly bring aides with them, and finding that "[a]n aide might exert great influence, but no one would say that the aide was, therefore, a member of the committee"). Therefore, the "vote or veto" authority only applies to a situation where an individual not employed by the federal government attends meetings or participates in the activities of a *Presidential committee* as an aide to federal officials. That does not apply here, where there is no concern over non-DOGE Team members or aides participating

on the DOGE Teams, and where the administrative record confirms that the DOGE Teams are comprised of temporary SGEs and not only full-time or permanent part-time government employees.

Regardless, even if this were a necessary component of a FACA claim against an advisory committee established by and for the purpose of providing advice and recommendations to a federal agency, such information on the membership status of the DOGE Teams is solely in the possession of Defendants. Since Defendants have provided no information as to the membership status and "vote or veto" authority of the DOGE Team members, including in the administrative record, Plaintiff is unable to allege more specific facts pertaining to such authority. Therefore, to the extent such information is deemed necessary for the Court to rule on the motion to dismiss, the Court should hold the motion to dismiss in abeyance and allow discovery on this issue in order for Plaintiff to make a more fully-informed response to the motion, consistent with the Court's May 2, 2025, Minute Order. *See* Plaintiff's Renewed Motion for Expedited Discovery and to Complete or Supplement the Administrative Record.

> **2. Plaintiff has sufficiently plead that the DOGE Teams are holding meetings and providing specific advice and recommendations to Defendants.**

Defendants have argued that Plaintiff's complaint does not provide sufficient allegations regarding whether the DOGE Teams "formally meet on a regular and organized basis" (ECF No. 27-1 at 13) and whether the DOGE Teams "act to deliver advice as a collective, unified group" (ECF No. 27-1 at 14-16). Not so. The Amended Complaint specifically alleges that, on information and belief, the DOGE teams have been "actively operating" and holding meetings, and are responsible for recommending the cutting of thousands of jobs at the Defendant agencies and undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to

enforce laws and regulations intended to protect public health and the environment, and have

been "tasked with and, on information and belief, are providing advice and recommendations

that impact millions of Americans, including members of the Center, albeit with none of the

transparency, oversight, or opportunity for public participation the law requires." ECF No. 12 at

27-28, 31. And as discussed, President Trump's Executive Orders confirm that the DOGE Teams

have been directed to meet and oversee a process to review and rescind agency regulations.

Therefore, there is little doubt that the DOGE Teams are meeting and operating to provide advice

and recommendations in a manner consistent with the definition of an advisory committee

subject to FACA.

   As discussed above, Plaintiff is unable to provide more specificity in its pleadings

because the information on the operations of the DOGE Teams is solely in the possession of

Defendants. Therefore, pleadings based on "information and belief" should be adequate at this

stage. *See Acosta Orellana*, 711 F. Supp. 2d at 98 (A court, in its discretion, may find that

pleadings based on "information and belief," as opposed to being based on factual allegations,

sufficient where it can be shown that "'the necessary information lies within the defendants'

control'") (citing *Kowal*, 16 F.3d at 1279 n.3). Indeed, even the administrative record that the

Court required Defendants to file contains no information regarding these matters. Thus, to the

extent the Court deems further information necessary for it to rule on the motion to dismiss, the

Court should allow discovery on these issues, hold the motion to dismiss in abeyance until

responses to Plaintiff's discovery requests are provided, and allow Plaintiff to amend its

complaint and/or provide further argument in opposition to the motion to dismiss once that

information has been provided by Defendants, consistent with the Court's May 2, 2025, Minute

Order. *See* Plaintiff's Renewed Motion for Expedited Discovery and to Complete or Supplement the Administrative Record.

## II.    The DOGE Teams are operating at the Department level and therefore implicate all Defendants.

There is also no basis for dismissing the claims against those Defendant agencies that purportedly do not have a DOGE Team in place or where, at the time of the Amended Complaint, such teams were composed of only one person. *See* Def. Mot., ECF No. 27-1 at 11-12. First, since the certifications submitted by the Defendants with the administrative record state that they only provide information on the status of the DOGE Teams "as of the date of Plaintiff's amended complaint," and not as of the date of the certification, the current status of the DOGE Teams remains unclear. It is not apparent why Defendants chose to limit their replies to the date of the amended complaint, but doing so suggests that the existence and/or membership of the DOGE Teams has potentially changed since the complaint was filed. If DOGE Teams have been established or members added since the filing of the amended complaint, then there is no basis for dismissing the claims now simply because the Defendant agencies/departments had not yet fully established their DOGE Teams when the amended complaint was filed. Importantly, Executive Order 14158 *requires* all agencies—which would include all Defendants—to establish DOGE Teams consisting of at least four people, so the fact that some Defendants had yet to comply with that order as of the time of the amended complaint provides no basis for dismissal.

Furthermore, while several of the Defendant *agencies* may not have established DOGE Teams, the administrative record confirms that such teams have been established at the department or secretary level, implicating the agencies that are within those departments. *See* e.g., ECF 26-2 at 3, 8, 33, 45 (regarding the establishment of the Department of Commerce, Department of Transportation, Department of Interior, and Department of Agriculture DOGE

Teams). Therefore, the fact that agencies within those departments have not established their own DOGE Teams (as the Executive Order requires) does not mean that a DOGE Team is not operating within that agency, since the DOGE Team established at the department/secretary level is likely working within the agencies that are inside those departments.

For example, the DOGE Team at the Department of Interior would presumably be working within the Fish and Wildlife Service, the Bureau of Ocean Energy Management, and the National Park Service; the DOGE Team at the Department Agriculture would be working within the Animal and Plant Health Inspection Service and the U.S. Forest Service; the DOGE Team at the Department of Commerce would be working within the National Oceanic and Atmospheric Administration; and the DOGE Team at the Department of Transportation would be working within the Federal Aviation Administration. In other words, since the record shows that DOGE Teams have been established at *all* of the pertinent department levels, and Executive Orders 14158 and 14219 require DOGE Teams to be established and work within *all* federal agencies to implement the "DOGE agenda" and to oversee a process at federal agencies to review and rescind agency regulations, it is readily apparent that the department level DOGE Teams are likely working within the respective agencies. If FACA applies to such efforts, as Plaintiff contends, then each agency would be responsible for ensuring that the transparency required by FACA occurs regarding the DOGE Teams' work within that agency. There is therefore no basis for dismissing the claims against any of the Defendants.

## III.    Plaintiff's arguments do not raise separation of powers concerns.

Defendants' arguments regarding separation of powers, ECF 27-1 at 24, are nonsensical given Plaintiff only seeks to enforce the transparency requirements regarding the advice and recommendations being given by the DOGE Teams to the agencies/departments in which they

have been established, consistent with the transparency that the law requires for advisory committee activities pursuant to FACA and/or FOIA. Importantly, this case does *not* concern USDS or the Office of the President. Plaintiff's claims do not involve *any* of the Presidential actions that courts have found to implicate separation of powers concerns because the "President must be free to seek confidential information from many sources," such as regarding personnel or policy decisions, or the formulation of legislative proposals. *See In re Cheney*, 406 F.3d 723, 728. It can therefore be easily distinguished from the cases Defendants rely on, as well as recent decisions regarding USDS, since Plaintiff's claims do not infringe in any way on the directives or instructions being given by the Executive Branch to the agencies, to the extent those might implicate separation of powers concerns, which Plaintiff disputes.

Regardless, since Plaintiff's FACA claims are specific to the advice and recommendations being given to the Defendants by the members of the DOGE Teams—which as discussed are comprised of outside advisors that have been hired as SGEs and tasked with overseeing a process to review and rescind regulations, and are therefore *not* standard agency employees conducting internal, day-to-day agency work, *contra* ECF 271- at 24—there is simply no basis for suggesting that the claims implicate separation of powers concerns.

Defendants' arguments are also contrary to the well-established strong presumption in favor of public access to information that will shed light on government activities. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted). To suggest that the Defendants should be able to rely on outside advisors for a process to undermine environmental laws and regulations essential to safeguarding the public health, habitats, and wildlife impacted by federal activities in total secrecy due to separation of powers concerns is not only unsupported by any relevant case law, but presents a dangerous slippery

slope towards authoritarianism, undermining the public accountability that is a cornerstone of democracy. *See Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 252 (D.D.C. 2012) ("[A]n informed citizenry [is] vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.") (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).

Defendants' arguments regarding separation of powers concerns are therefore misplaced, and Defendants fail to cite a single case suggesting that such concerns warrant dismissal at the motion to dismiss stage. Even if the claims *did* raise such concerns, that is an argument that can be properly addressed through summary judgment briefing following further discovery and factual development. *See Swierkiewicz*, 534 U.S. at 511-12 (notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims). Defendants appear to want to have the case dismissed prematurely and improperly based on irrelevant concerns. The Court should not acquiesce.

## IV.     Plaintiff has not brought a claim to enforce FACA's "fairly balanced" or "inappropriate influence" provisions.

Defendants misconstrue the nature of the claims brought by Plaintiff, arguing that Plaintiff has asked the Court to ensure that that the DOGE Teams are fairly balanced and for the Court to enforce FACA to require the DOGE Teams to include members representing the environmental advocacy community. ECF No. 27-1 at 25. According to Defendants, this is non-justiciable because there is no basis for judicial review of FACA's statutory requirement that an advisory committee be fairly balanced to avoid inappropriate influence by special interests. *Id*. However, that argument is completely inapposite given Plaintiff has made no such claim, which is clear from the Amended Complaint. Rather, Plaintiff has only brought claims seeking to enforce FACA's provisions requiring *information* about how the DOGE Teams are complying

with FACA's fairly balanced and inappropriate influence provisions to be made publicly available. *See* Firs Am. Compl, ECF No. 12 at 30-32. Such claims are clearly justiciable.

Defendants' attempt to reframe Plaintiff's claims based on background factual information provided in the Complaint regarding Plaintiff's correspondence with Defendants over FACA's requirements is misplaced and should be disregarded. While this background factual information establishes Plaintiff's efforts to obtain information about the DOGE Teams' compliance with FACA, it is not part of the claims that Plaintiff has brought. Defendants' irrelevant arguments regarding Plaintiff's supposed attempts to enforce FACA's "fairly balanced" or "inappropriate influence" provisions thus provide no basis for dismissal.

## **CONCLUSION**

Based on the allegations set forth in the Complaint, the plain language of the President's Executive Orders, the information provided in the limited administrative record, and the relevant case law, Plaintiff has put forth sufficient allegations to survive a motion to dismiss. However, since Defendants have made various arguments in their motion to dismiss regarding factual assertions that have not been included in Plaintiff's complaint—information which is solely in the possession of Defendants—Plaintiff has, consistent with the Court's May 2, 2025, Minute Order, filed a renewed motion for discovery herewith. If the Court believes that more factual development is necessary at this stage, the Court should allow such discovery, hold the motion to dismiss in abeyance, and allow Plaintiff to amend its complaint or provide further briefing following Defendants submission of responses to the discovery requests.

Respectfully submitted on this 17th day of June 2025.

/s/ Lauren A. Parker
Lauren A. Parker DC Bar No. 1670885
Center for Biological Diversity
1411 K Street NW, Suite 1300

Washington, DC 20005
lparker@biologicaldiversity.org
(202)-868-1008

Jared Margolis (*pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
jmargolis@biologicaldiversity.org
(802) 310-4054

*Attorneys for Plaintiff Center for Biological Diversity*