**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY | Civil Case No. 1:25-cv-00612-RDM |
| *Plaintiff*, | **PLAINTIFF'S RENEWED MOTION FOR EXPEDITED DISCOVERY AND TO SUPPLEMENT OR COMPLETE THE ADMINISTRATIVE RECORD** |
| v. | |
| U.S. DEPARTMENT OF INTERIOR, *et al.* | |
| *Defendants*. | |

**INTRODUCTION**

Plaintiff has alleged that multiple federal agencies with statutory mandates implicating interests vital to Plaintiff and its members are operating secretive, unlawful federal advisory committees—called "DOGE Teams"—in flat violation of the Federal Advisory Committee Act ("FACA"). *See* ECF No. 12. On April 10, 2025, Plaintiff moved the Court to grant leave to take limited, expedited discovery in this case pursuant to Federal Rule of Civil Procedure 26(d)(1). ECF No. 13. Defendants opposed that request, arguing that discovery was not warranted due to a forthcoming motion to dismiss. *See* ECF No. 16. On May 2, 2025, the Court issued a Minute Order denying without prejudice Plaintiff's Motion for Expedited Discovery as premature, and "[i]n light of the concerns raised in Plaintiff's Motion to Expedite Discovery," it ordered Defendants to file along with their motion to dismiss "the entire administrative record in this matter." The Court further stated that after reviewing Defendants' motion to dismiss and the administrative record, "Plaintiff may, if appropriate, renew its motion for leave to take discovery (or to supplement the administrative record) to the extent necessary to respond to Defendants' motion to dismiss. . . ."

1

In ordering Defendants to file "the entire administrative record in this matter" along with the motion to dismiss, the Court presumably assumed that the record would contain documents that would provide information sufficient to "fill[] in gaps . . . to determine what the agenc[ies] actually did." *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1227 (D.C. Cir. 1993). On May 27, 2025, Defendants filed a motion to dismiss, ECF No. 27, along with an "administrative record," ECF No. 26-2. The administrative record filed by Defendants, however, is limited to employment documents regarding the hiring of the DOGE Team members. Defendants failed to provide any documents reflecting the process undertaken by Defendants in establishing the DOGE Teams; documents describing the role, goals, scope of work, or legal authority for the DOGE Teams; or documents setting forth information about the meetings that have taken place for the DOGE Teams, as Plaintiff requested in its initial motion for expedited discovery. *See* ECF No. 13-1. The record does not provide the information that would typically be included in an administrative record for an agency action, and the Court should therefore order Defendants to complete and/or supplement the record with all relevant documents regarding the DOGE Teams' formation and actions.

Furthermore, in their motion to dismiss Defendants argue that Plaintiff has failed to establish certain elements of a FACA claim. However, because the DOGE Teams have been operating in secrecy and Defendants have failed to make information on their activities publicly available—including by failing to respond to Freedom of Information Act (FOIA) requests, *see* ECF No. 12 at 29-30, 32-33—and because the administrative record lacks any information other than employment documents, all of the information that Defendants claim is missing from Plaintiff's pleadings is solely within the possession of Defendants. Therefore, discovery and/or completion of the administrative record is warranted in order to establish precisely how the

DOGE Teams are positioned and operating within the Defendant agencies—information vital to protect Plaintiff from immediate harms as the DOGE Teams seek to undermine environmental laws and regulations essential to safeguarding the public health, habitats, and wildlife impacted by federal activities.

Importantly, the limited information Defendants *did* provide in the administrative record confirms that these DOGE Teams include temporary Special Government Employees hired from outside the government. Therefore, FACA's exemption for full-time or permanent part-time employes does not apply. *See* 5 U.S.C. § 1001(2)(B). Indeed, several of the employment forms provided in the administrative record are specifically intended for hiring private citizens to participate on Federal Advisory Committees. *See* e.g., ECF No. 26-2 at 25, 26, 29, 30 (EPA employment documents that state they are specific to hiring an "Advisory Committee Member, Other SGE, Expert or Consultant"). The limited record therefore supports Plaintiffs' position that the DOGE Teams are subject to FACA and are operating in violation of the law by not making information on their activities publicly available. The Court therefore has a sufficient record on which to deny the motion to dismiss.

However, given that Defendants have argued in their motion to dismiss that various factual matters concerning the DOGE Teams have not been sufficiently alleged by Plaintiffs— information that is only in the possession of Defendants and was not included in the administrative record—should the Court deem it necessary for Plaintiff to more fully respond to the specific arguments made in Defendants' motion to dismiss, the Court should permit discovery, hold the motion to dismiss in abeyance, and allow Plaintiff to amend its complaint or provide further briefing following Defendants submission of responses to the discovery requests before the pending motion is resolved. *See* Pl's. Opp. Br. at 22.

Plaintiff has therefore narrowly tailored the proposed discovery requests to seek information specific to the arguments made by Defendants in their motion to dismiss regarding alleged factual assertions that Defendants claim must be included in Plaintiff's complaint. Furthermore, in the interests of avoiding unnecessary arguments, Plaintiff has narrowed the requests to information specific to determining *whether* the DOGE Teams are subject to FACA and does not seek substantive materials through the discovery requests, consistent with the Supreme Court's recent decision regarding discovery in another DOGE-related case. *See United States DOGE Serv. v. Citizens for Resp. & Ethics,* No. 24-1246, 2025 U.S. LEXIS 2202, 2025 WL 1602338 (June 6, 2025) (Stating that discovery requests regarding the content of intra-Executive Branch USDS recommendations and whether those recommendations were followed were not appropriately tailored).[1]

Regardless, the renewed discovery requests are warranted because DOGE Team meetings must be occurring consistent with the Executive Orders, and every time one occurs without public access, the interested public—including Plaintiff—has irreparably lost its rights under FACA. *See, e.g., Animal Legal Defense Fund v. Shalala,* 53 F.3d 363, 368 (D.C. Cir. 1995). Yet there is a dearth of public information on exactly how the DOGE teams are functioning. The proposed discovery therefore seeks basic information concerning the operations and functions of the DOGE Teams and their members. Because no information on the DOGE Teams has been made public, there remains substantial confusion as to the status and actions of the DOGE

---

[1] Plaintiff notes that the decision in *United States DOGE Serv. v. Citizens for Resp. & Ethics* pertained to a FOIA request and not a claim brought pursuant to FACA. *See id.* ("Any inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade."). Therefore, Plaintiff disputes its applicability here, but has nonetheless narrowly tailored the discovery requests consistent with that decision to ensure that no similar concerns are implicated.

Teams, and only Defendants possess the information necessary to clarify these factual matters. The targeted discovery Plaintiff requests is reasonable, narrowly tailored to the arguments in Defendants' motion to dismiss and will not overly burden Defendants.

As set forth in Plaintiff's opposition to Defendant's motion to dismiss, Plaintiff maintains that the Court has a sufficient record to deny the motion at this time. However, Plaintiff alternatively moves the Court to allow discovery or to order production of a complete administrative record so that the Court can consider basic information bearing on FACA's applicability and the work of the DOGE Teams before resolving the motion.

## BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14158—"Establishing and Implementing the President's 'Department of Government Efficiency,'" 90 Fed. Reg. 8441 (Jan. 29, 2025)—renaming the U.S. Digital Service the U.S. DOGE Service ("USDS"), and establishing a new temporary organization known as the U.S. DOGE Service Temporary Organization within USDS. E.O. 14158 also provides for "DOGE Teams" to be established by each Agency Head within their respective agencies, in consultation with USDS. These DOGE Teams are directed to coordinate with the USDS Administrator, working from within the agencies to advise the Agency Heads on implementing the President's "DOGE Agenda."

On February 19, 2025, President Trump issued Executive Order 14219, 90 Fed. Reg. 10583, entitled "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative," which provides that the DOGE Teams are to initiate a process to review and rescind agency regulations deemed unlawful or that "harm the national interest." Thus, the DOGE Teams have been authorized to provide advice and

recommendations to federal agencies regarding the rescission of regulations across the federal government.

On March 3, 2025, Plaintiff filed the initial complaint in this matter, ECF No. 1,[2] averring that the DOGE Teams working within various federal agencies are subject to FACA, 5 U.S.C. § 1001 *et seq.*, which requires transparency, public participation, and balanced representation when the President or executive branch agencies establish or use non-federal bodies for the purpose of seeking advice or recommendations. Specifically, FACA requires any "advisory committee"— defined as any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government," 5 U.S.C. § 1001(2)(A)—to file a charter and Membership Balance Plan to set forth the objective and scope of the intended activities, and describe how the advice and recommendations of the advisory committee will not be inappropriately influenced by special interests. *See* 5 U.S.C. §§ 1004, 1008(c); *see also* 41 C.F.R. §§ 102-3.30, 102-3.60.

Furthermore, FACA demands transparency in the procedures and meetings of advisory committees. Meetings must generally be "open to the public," 5 U.S.C. § 1009(a), and all documents made available to or prepared for or by the committee must be released well *before* any meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992); 5 U.S.C. § 1009(b). Detailed meeting minutes must also be made publicly available. *See* 5 U.S.C. §§ 1009(c), 1010; *see also* 41 C.F.R. § 102-3.165 (describing how advisory committee meetings

---

[2] Plaintiff filed an amended complaint on April 1, 2025, ECF No. 12, to include new claims against Federal Defendants under the Freedom of Information Act; however, the FACA claims remain the same.

are to be documented with meeting minutes); *Id.* at § 102-3.170 ("Timely access to advisory committee records is an important element of the public access requirements of the Act.").

Public reports indicate that the DOGE Teams established by, and working within, the Defendant agencies/departments have recommended, and are continuing to recommend, cutting thousands of jobs and are undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to enforce laws and regulations intended to protect public health and the environment. ECF No. 12 at 10, 27-28. These reports further indicate that the DOGE Teams are in the process of reviewing and recommending rescissions to agency regulations, as directed by Executive Order 14219. *Id.* This includes regulations Plaintiff relies on to achieve its organizational purposes, including monitoring the impacts of agency actions on the environment and species; monitoring legal compliance concerning environmental management; and advocating for policies that protect habitats and wildlife. *See* ECF No. 12 at 7-10. Any recommendations by the DOGE Teams to undermine environmental laws and associated regulations, including by reducing agency budgets and workforce and thereby undercutting Defendants' ability to apply and enforce such laws and regulations, harms Plaintiff's longstanding interests in protecting the public health, habitats, and wildlife impacted by federal activities.

Therefore, based on the limited publicly available information and the language of E.O. 14158 and 14219, the DOGE Teams have been established to provide advice and recommendations to Defendants regarding staffing and budgetary decisions, as well as regulatory rescissions. Consequently, FACA seemingly applies to the DOGE Teams. However, the public has been left completely in the dark about how the DOGE Teams are operating. By purposefully avoiding the requirements of FACA, Defendants have deprived the public, including Plaintiff, of

critical information that the law requires be made available to ensure that the DOGE Teams are not unlawfully promoting the self-interests of special interest groups. *See* H.R. Rep. No. 92-1017, at 6 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3496 ("One of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns."); 5 U.S.C. § 1004(b)(3) (Providing that "appropriate" steps must be taken to "assure that the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest").

**LEGAL STANDARD**

Parties may obtain discovery relevant to their claims so long as the scope of discovery is proportional to the needs of the case, taking into consideration the parties' relative access to relevant information and the importance of the discovery to resolving the issues, as well whether the burden of the proposed discovery outweighs its benefits. Fed. R. Civ. P. 26(b)(1). Courts therefore have "broad discretion" over the timing and scope of discovery. *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020); *Watts v. S.E.C.*, 482 F.3d 501, 507 (D.C. Cir. 2007) (the Court has broad discretion to "dictate the sequence of discovery") (citation omitted).

Generally, Federal Rule of Civil Procedure 26(d)(1) prohibits discovery until after the parties' Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1), which has yet to happen in this case. But Rule 26(d)(1) also gives courts discretion to make exceptions. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). While the rule is silent as to "a standard to apply when determining whether expedited discovery is appropriate," *id.*, this court has adopted the so-called reasonableness approach. *Id.* at 98. Under that approach, "the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances,' which include:

'(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.* (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 142–43 (D.D.C. 2005)). These factors "are only guidelines for the exercise of the Court's discretion." *Id.*; *cf. Nixon v. Freeman*, 670 F.2d 346, 363 (D.C. Cir. 1982) ("A district court has broad discretion over . . . discovery."). "Courts are not limited to these factors." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citation omitted).[3]

## ARGUMENT

### I.    The proposed discovery requests are reasonable and appropriate.

Plaintiff seeks limited discovery to "fill[] in gaps . . . to determine what the agenc[ies] actually did." *Marshall Cnty. Health Care Auth.,* 988 F.2d at 1227. Because Defendants have not disclosed any information about the DOGE Teams to the public, it remains unclear how the DOGE Teams are operating and the authority they are asserting to undermine environmental laws and regulations, including by recommending reducing agency budgets and workforce and thereby undercutting Defendants' ability to apply and enforce laws and regulations, which

---

[3] In some cases, this court has applied the *Notaro* approach, which requires that the party seeking expedited discovery demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *See In re Fannie Mae Derivative Litig.,* 227 F.R.D. at 142 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982)). However, several courts have rejected the *Notaro* standard in favor of the reasonableness approach, which is "more suited to the application of the Court's broad discretion in handling discovery." *See Guttenberg*, 26 F. Supp. 3d at 97 (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co*., 754 F.2d 738, 743 (7th Cir. 1985)). Under either standard, Plaintiff should be permitted to pursue limited discovery.

delays, avoids, and undermines protections that are necessary to secure Plaintiff's interests in preserving imperiled species and the environment.

This limited discovery is necessary for Plaintiff to confirm public reporting about the DOGE Teams, including whether they have been holding meetings and their purported legal authority to recommend and/or make changes at the agencies/departments without complying with FACA's openness and other requirements. *See Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (a district court may "exercise its discretion to permit [] discovery to ascertain the contours of the precise policy at issue") (citations omitted); *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (discovery appropriate when a party's position is obscure, making it "impossible to discern whether the alleged . . . policy in fact exists").

The discovery that Plaintiff seeks about the structure, operation, and authority for the DOGE Teams will allow Plaintiff—if the Court deems it necessary—to more fully respond to the arguments made in Defendants' motion to dismiss, including regarding meetings of the DOGE Teams and whether they "formally meet on a regular and organized basis" (ECF No. 27-1 at 13); whether the DOGE Teams "act to deliver advice as a collective, unified group" and "have come together to deliberate and issue guidance or recommendations as a single voice or group" or "produce[d] collaborative work product" (ECF No. 27-1 at 14-16); and whether the members of the DOGE Teams have "vote or veto" authority (ECF No. 27-1 at 21-22).[4] *See* Plaintiff's Opposition to Defendants' Motion to Dismiss (Pl's. Opp. Br.) filed herewith.

Importantly, it is well-established that discovery is appropriate in a FACA case in particular. *See, e.g., Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022)

---

[4] Plaintiff disputes whether all of these elements must be met for the DOGE Teams to be considered advisory committees subject to FACA and reserve the right to dispute Defendants' arguments in their opposition to the motion to dismiss and in briefing on summary judgment.

(noting that FACA cases presenting APA claims "often proceed to discovery"); *Votevets Action*

*Fund v. McDonough*, 992 F.3d 1097 (D.C. Cir. 2021) (remanding for discovery in FACA suit);

*Natural Resources Defense Council v. Pena*, 147 F.3d 1012 (D.C. Cir. 1998) (same).

   Discovery is also warranted because Plaintiff has a likelihood that it will succeed on the

merits of its claims regarding Defendants' failure to comply with FACA. As set forth in

Plaintiff's Complaint and Opposition to Defendants' Motion to Dismiss—and confirmed by the

limited materials provided in the administrative record filed by Defendants—the DOGE Teams

are comprised of members that are not full-time government employees. *See* Pl's. Opp. Br. at 12-

13. And E.O. 14158 specifically requires all Agency Heads to "establish [DOGE Teams] within

their respective Agencies," and that these DOGE Teams must "coordinate their work with USDS

and advise their respective Agency Heads on implementing the President's DOGE Agenda."

Further, E.O. 14219 instructs the DOGE Teams to oversee a process at federal agencies to

review and rescind agency regulations. This is consistent with the definition of an "Advisory

Committee" pursuant to FACA, since the DOGE Teams must be established by the

agencies/departments specifically to provide advice or recommendations to Defendants. *See* 5

U.S.C. § 1001(2)(A). The proposed limited discovery is therefore reasonable to ensure that

Plaintiff can obtain information to respond to Defendants' motion to dismiss and/or to protect its

interests through merits briefing. *See Warner Bros. Recs. Inc. v. Does 1–6*, 527 F. Supp. 2d 1, 2

(D.D.C. 2007) (granting expedited discovery where "Plaintiffs have made a showing of good

cause for the discovery they seek, as the information is not only relevant but crucial to the

prosecution of Plaintiffs' claims").

   Defendants' ongoing failure to comply with FACA, which provides that the public *must*

be provided with information on the meetings and documents associated with advisory

committee actions *before* any meetings take place so that the public may participate to protect their interests, is irreparably harming Plaintiff, since once such meetings take place, the ability to participate as FACA requires has been lost. *See Animal Legal Defense Fund,* 53 F.3d at 368 (finding irreparable harm from a FACA violation because "[i]n the FACA context particularly, there may be a big difference between relief now and later," since "the timing of [public] observation and comment is crucial to compliance with the statute") (citing *Alabama-Tombigbee Rivers Coalition v. Dep't of Interior*, 26 F.3d 1103, 1106 (11th Cir. 1994)); *Gates v. Schlesinger*, 366 F. Supp. 797, 801 (D.D.C. 1973) (finding irreparable harm from a violation of FACA because the plaintiff's right to participate will be "permanently lost"); *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("[S]tale information is of little value.").

Further, the DOGE Teams have caused, and will continue to cause, irreparable harm by their efforts to undermine the laws and regulations Plaintiff relies on, as well as the ability of the Defendants to carry out their statutory obligations to protect the environment, which directly harms Plaintiff's well-established interests in protecting the public health, habitats, and wildlife impacted by federal activities. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 446 (1989) ("FACA's principal purpose was to establish procedures aimed at enhancing public accountability of federal advisory committees."); *Washington Legal Foundation v. United States Dep't of Justice*, 691 F. Supp. 483, 490 (D.D.C. 1988) (the purpose of FACA is to open to public scrutiny the manner in which the government obtains advice from private individuals).

The limited discovery sought by Plaintiff will shed light on matters pertinent to Plaintiff's response to the motion to dismiss and/or merits briefing, including the process by which the DOGE Teams are operating and the legal basis for their authority. Obtaining this information in an expedited matter is warranted should the Court deem it necessary for Plaintiff to provide a

further response to the motion to dismiss in a timely manner, and given the speed and secrecy of DOGE's activities. *See Citizens for Resp. & Ethics in Wash.*, No. 25-cv-511, 2025 U.S. Dist. LEXIS 42869, at *50-51, 2025 WL 752367, at *15-16 (D.D.C. March 10, 2025)(noting the "remarkably swift" actions of USDS, which "requires the quick release of information about its structure and activities," especially "given the secrecy with which USDS has operated"). There is therefore a direct connection between the information sought through the proposed expedited discovery and the avoidance of the irreparable injury to Plaintiff, and the information sought is not only relevant but is proportional to the needs of the case. *See Strike 3,* 964 F.3d at 1210 (citing Fed. R. Civ. P. 26(b)(1)).

Thus, the totality of the circumstances supports Plaintiff's limited request. There remains significant uncertainty about the DOGE Teams and how the DOGE Teams are interacting with the agencies in which they have been established (i.e., whether and how often they are holding meetings and what they are producing), and the legal basis for the DOGE Teams' authority to undertake changes within the Defendant agencies. This information is exclusively in Defendants' possession, which warrants discovery. *See Strike 3*, 964 F.3d at 1207–08.

## II.    The proposed discovery does not impose an excessive burden on Defendants.

The proposed discovery requests are not overly burdensome because they have been "narrowly tailored" to pursue predicate factual matters that will allow Plaintiff to respond to the specific arguments made in the motion to dismiss and it will not take an excessive amount of time or effort for Defendants to respond. *See Natural Resources Defense Council v. Curtis*, 189 F.R.D. 4 (D.D.C. 1999) (authorizing tailored discovery in a FACA suit); *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010) (discovery requests are overly burdensome when not "narrowly tailored"); *Attkisson v. Holder,* 113 F. Supp. 3d 156, 165 (D.D.C. 2015) (discovery requests are

burdensome where they are "overly broad" and would require "significant time and resources"). Given the limited scope of the requested discovery, which is confined to a narrow timeframe (*i.e.*, January 20, 2025, to present), the requests are not overly broad and the burden on Defendants is minimal—especially when weighed against Plaintiff's need for the information and inability to obtain it elsewhere. *See* Fed. R. Civ. P. 26(b)(1) (establishing general rule that inquiries into "burden" should consider "likely benefit"); *see also ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 63 (M.D. La. 2016) (noting that "[g]ood cause generally exists 'where the need for expedited discovery outweighs the prejudice to the responding party'") (citation omitted).

At this stage, Plaintiff does not seek to take depositions of agency or DOGE Team members, or responses to lengthy interrogatories. Rather, Plaintiff proposes a limited set of interrogatories and requests for production specific to the status of the DOGE Team members, the scope of work and number of meetings being held by the DOGE Teams and whether the DOGE Teams are providing specific advice and recommendations to the Defendants, and the legal basis for the DOGE Teams' authority to undertake changes within the Defendant agencies/departments. Such information is readily available to Defendants and does not implicate any privilege concerns, nor does it require Defendants to provide substantive materials produced by the DOGE Teams.

These targeted discovery requests should not be difficult to answer as they pertain to basic aspects of the DOGE Teams structures and processes. Providing basic information on the scope of work, legal authority, and ongoing activities of the DOGE Teams are straightforward matters requiring only succinct responses. Such limited discovery requests will serve the interests of judicial efficiency by advancing resolution of any factual issues pertaining to the

motion to dismiss and/or merits briefing that remain ambiguous due to the DOGE Teams' failure to make any information about their composition, structure, and processes publicly available. Plaintiff's discrete requests can be answered with basic information that should be readily available to Defendants, and the benefit of having such information available to address the arguments in this matter certainly outweigh any burden on Defendants. Therefore, the requests are not unduly burdensome.

### III.   In the alternative, the Court should require Defendants to complete or supplement the administrative record.

The Court could alternatively order Defendants to file a more complete administrative record, with documents that would provide information consistent with Plaintiff's proposed discovery requests, potentially precluding the need for discovery. As discussed, in ordering Defendants to file "the entire administrative record in this matter" along with their motion to dismiss, the Court presumably assumed that the record would contain documents reflecting the process undertaken by Defendants in establishing the DOGE Teams; documents describing the role, goals, scope of work, or legal authority for the DOGE Teams; and documents setting forth information about the meetings that have taken place for the DOGE Teams. None of that was provided by Defendants, as the record only contains documents relating to the hiring of DOGE Team members. *See* ECF No. 13-1.

Defendants "bear the responsibility of compiling the administrative record, which must include all of the information that the agency considered 'either directly or indirectly.'" *Univ. of Colo. Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)). Although the government's designation of the administrative record is entitled to a presumption of regularity, *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 287 (D.D.C. 2013), a complete administrative record should include all materials

that might have influenced the agency's decision[.]" *Id*. at 288 (quoting *Amfac Resorts, LLC v. United States DOI*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (citations and internal quotes omitted)). "[A]n agency 'may not skew the record by excluding unfavorable information . . . ." *Id.* (quoting *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007)).

Since the administrative record that the Court ordered Defendants to file is woefully deficient, completion or supplementation is warranted. *See e.g., Mandan v. United States DOI*, No. 20-1918, 2020 U.S. Dist. LEXIS 260487, at *8, 2020 WL 12655957, at *4 (D.D.C. Nov. 6, 2020) (Holding a court may order an agency to produce documents when it is shown that the record may not be complete, and ordering the agency to complete the record) (citation omitted); *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, No. 16-1534, 2019 U.S. Dist. LEXIS 77341, at *10, 2019 WL 2028709 (D.D.C. May 8, 2019) ("[I]f the Court finds that the record produced 'clearly do[es] not constitute the 'whole record' compiled by the agency,' it will order the agency to complete the record.") (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419 (1971)); *Augustus v. McHugh*, No. 02-2545, 2010 U.S. Dist. LEXIS 161420, at *4 (D.D.C. Sep. 29, 2010) (Stating that if it is shown that the agency has not filed the entire administrative record, the court may order supplementation and granting motion to compel Defendant to file a complete administrative record) (citing *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72 (D.D.C. 2008)); *Natural Resources Defense Council v. Train,* 519 F.2d 287, 291 (D.C. Cir. 1975) ("The Administrative Procedure Act and the cases require that the complete administrative record be placed before a reviewing court.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant it leave to serve the proposed discovery requests and order Defendants to produce the documents and

responses to interrogatories within 14 days of the Court's order, or to otherwise complete and/or

supplement the administrative record with all pertinent documents.


Respectfully submitted on this 17th day of June 2025.

/s/ Lauren A. Parker
Lauren A. Parker DC Bar No. 1670885
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
lparker@biologicaldiversity.org
(202)-868-1008

Jared Margolis (*pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
jmargolis@biologicaldiversity.org
(802) 310-4054

*Attorneys for Plaintiff Center for Biological Diversity*