**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

CENTER FOR BIOLOGICAL DIVERSITY,

*Plaintiff,*

v.

U.S. DEPARTMENT OF INTERIOR, *et al.*,

*Defendants.*

---

Case No. 1:25-cv-00612-RDM

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR
EXPEDITED DISCOVERY AND TO SUPPLEMENT OR COMPLETE THE
ADMINISTRATIVE RECORD**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

LEGAL BACKGROUND ..................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

I.      Plaintiff's Request for Expedited Discovery Should Be Denied. ...................................... 4

        A.     The Court Should Rule on Defendants' Motion to Dismiss Before
               Permitting Any Discovery. ................................................................................ 4

        B.     Plaintiff's Motion Fails the Reasonableness Test. ............................................ 9

               1.     No Request for Emergency Relief Is Pending or Imminent. .................... 9

               2.     Plaintiff's proposed discovery is broad and burdensome. ....................... 10

               3.     Plaintiff has failed to articulate a specific or legitimate purpose for
                     expedited discovery. ................................................................................ 12

               4.     Plaintiff's motion comes far in advance of the typical discovery
                     process. .................................................................................................. 12

        C.     Plaintiff's Motion Also Fails the *Notaro* Test. ............................................... 13

II.     The Court Should Deny Plaintiff's Request to Supplement or Complete the
     Administrative Record. ..................................................................................................... 14

CONCLUSION.................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. First Legal Found. v. Cardona*,
  630 F. Supp. 3d 170 (D.D.C. 2022) ......................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 4

*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) .................................................................. 10, 12

*Carter v. DeKalb Cnty., Ga.*,
  521 F. App'x 725 (11th Cir. 2013) ......................................................................... 5

*Cheney v. U.S. Dist. Court for D.C.*,
  542 U.S. 367 (2004) ............................................................................................... 15

*Clevinger v. Advoc. Holdings, Inc.*,
  134 F.4th 1230 (D.C. Cir. 2025) ............................................................................ 10

*Cole v. Rochford*,
  285 F. Supp. 3d 73 (D.D.C. 2018) .......................................................................... 13

*Cunningham v. Cornell Univ.*,
  604 U.S. ---, 145 S. Ct. 1020 (2025) ....................................................................... 4

*Diulus v. Am. Express Travel Related Servs. Co.*,
  823 F. App'x 843 (11th Cir. 2020) ......................................................................... 5

*Does 1-9 v. Dep't of Just.*,
  No. 25-CV-325 (JMC), 2025 WL 894120 (D.D.C. Mar. 22, 2025) ......................... 3

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) ................................................................................ 9

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) ..................................................................... *passim*

*G.Y.J.P. by & through M.R.P.S. v. Wolf*,
  No. 1:20-cv-01511-TNM, 2020 WL 4192490 (D.D.C. July 21, 2020) ............... 15-16

*Hispanic Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ................................................................................ 7

*In re Fannie Mae Derivative Litig.*,
  227 F.R.D. 142 (D.D.C. 2005) ................................................................................ 4

ii

*In re Musk*,
  No. 25-5072, 2025 WL 926608 (D.C. Cir. Mar. 26, 2025) ................................................. 4, 6

*In re Quinteros*,
  No. 19-br-195 -SMT, 2021 WL 3674727 (D.D.C. Aug. 13, 2021) ........................................... 5

*In re United States*,
  583 U.S. 29 (2017) ............................................................................................. 13, 16

*Kaplan v. Cal. Pub. Emps.' Ret. Sys.*,
  No. C 98-1246 CRB, 1998 WL 575095 (N.D. Cal. Sept. 3, 1998),
  *aff'd*, 221 F.3d 1348 (9th Cir. 2000) ................................................................... 6-7, 12

*Kaylor v. Fields*,
  661 F.2d 1177 (8th Cir. 1981) .................................................................................. 7

*Legal Tech. Grp., Inc. v. Mukerji*,
  No. 17-cv-631-RBW, 2017 WL 7279398 (D.D.C. June 5, 2017) ........................................... 10

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ................................................................................... 5

*Nat. Res. Def. Council v. Pena*,
  147 F.3d 1012 (D.C. Cir. 1998) ................................................................................ 6

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y 1982) .............................................................................. 3, 4

*Oceana, Inc. v. Ross*,
  920 F.3d 855 (D.C. Cir. 2019) ................................................................................ 15

*PHL Variable Ins. Co. v. Sheldon Hathaway Fam. Ins. Tr. ex rel. Hathaway*,
  No. 2:10-CV-67, 2011 WL 703839 (D. Utah Feb. 20, 2011) ............................................... 12

*Public Citizen, Inc. v. Donald Trump*,
  No. 25-cv-164-JMC (D.D.C.) ......................................................................... 5, 9, 11

*Simon v. Republic of Hungary*,
  No. CV 10-01770-BAH, 2012 WL 13069772 (D.D.C. Oct. 19, 2012) ..................................... 3

*SSA v. Am. Fed'n of State, Cnty, and Mun. Emps.*,
  145 S. Ct. 1626 (2025) .......................................................................................... 8

*True the Vote, Inc. v. Internal Revenue Serv.*,
  No. CV 13-734-RBW, 2014 WL 4347197 (D.D.C. Aug. 7, 2014) .................................... 10, 12

*Venetian Casino Resort, LLC v. EEOC*,
  409 F.3d 359 (D.C. Cir. 2005) .................................................................................. 7

*VoteVets Action Fund v. U.S. Dep't of Veterans Affs.,*
   992 F.3d 1097 (D.C. Cir. 2021) ........................................................................... 6

*Warner Bros. Recs., Inc. v. Does 1–6,*
   527 F. Supp. 2d 1 (D.D.C. 2007) ........................................................................ 7

**Statutes**

5 U.S.C. § 1001 ........................................................................................................ 8

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 3

Fed. R. Civ. P. 26 ................................................................................................. 3, 13

Fed. R. Civ. P. 26 .................................................................................................... 13

**Other Authorities**

41 C.F.R. § 102–3.40 ............................................................................................... 8

Exec. Order No. 14,158, 90 Fed. Reg. 8,441 (Jan. 2025) ................................... 2, 14

## INTRODUCTION

The Court should deny Plaintiff's renewed request for expedited discovery.  Federal courts set a high bar when departing from the ordinary discovery schedule.  Plaintiff's motion does not clear that bar.  At the outset, Defendants have moved to dismiss challenging both the Court's jurisdiction over the suit and the sufficiency of the Federal Advisory Committee Act ("FACA") allegations.  That is reason enough to reject any rush to discovery, as precedent from the Supreme Court, the D.C. Circuit, and this District all indicate that this Court should resolve the question of jurisdiction and the sufficiency of Plaintiff's pleadings before allowing discovery.

For that reason and others, Plaintiff cannot meet the standard for expedited discovery.  Plaintiff initiated this action more than three months ago; yet no motion for emergency or preliminary relief is pending or scheduled.  Plaintiff's discovery requests are sweeping, and responding will impose a heavy burden on Defendants that would be unnecessary if this Court grants the pending motion to dismiss.  And the true purpose of the request appears to be patching the holes of facially deficient pleadings to try again in a future amended complaint, which is an improper basis for expedited discovery.

Nor is there any basis to order Defendants to supplement or complete the administrative record.  Because Defendants did not establish an advisory committee, there is no "administrative record" for purposes of evaluating a FACA claim.  Moreover, the Executive Order directing agencies to create DOGE Teams is the relevant decision document, and Defendants have confirmed that there are no other non-deliberative materials establishing the DOGE Teams (where they exist at all).  In any event, the Court should first decide the threshold issues raised in Defendants' motion to dismiss before considering Plaintiff's request that Defendants provide any additional documents.

1

## FACTUAL BACKGROUND

On January 20, 2025, President Trump signed Executive Order 14,158, which redesignated the previously established United States Digital Service as the U.S. DOGE Service ("USDS") and charged it with implementing the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." Exec. Order No. 14,158, 90 Fed. Reg. 8,441, §§ 3(a), 4 (Jan. 20, 2025). The USDS sits within the Executive Office of the President. *Id.* Agency heads across the Executive Branch are required under the Executive Order to establish within their respective agencies a DOGE Team of at least four employees who are either hired or assigned to work within each agency. *Id.* § 3(c).

In March 2025, the Center for Biological Diversity sued, naming as defendants 13 agencies and departments. Originally, Plaintiff brought two claims against Defendants under the Administrative Procedure Act ("APA") and the mandamus statute, alleging that the DOGE Teams at the 13 agencies or departments are federal advisory committees required to comply with FACA. *See generally* Complaint, ECF No. 1. Plaintiff then amended its complaint and added a third claim seeking records under the Freedom of Information Act ("FOIA"). Amended Complaint ("Am. Compl."), ECF No. 12 ¶¶ 100–15.

Before Defendants' deadline to respond to the operative complaint, Plaintiff filed a motion for expedited discovery, which Defendants opposed. Pls.' Mot. for Expedited Disc. ("Mot."), ECF No. 13; Defs.' Opp'n to Pl.'s Mot. for Expedited Disc., ECF No. 16. The Court denied the motion as premature but also ordered Defendants to produce the administrative record with its then-forthcoming motion to dismiss. *See* May 2, 2025, Minute Order. Defendants' position is that there is no administrative record to produce because none of the DOGE Teams operate as advisory committees. Nonetheless, to comply with the Court's order, Defendants produced as the

"administrative record" employment documents of the employees within each respective DOGE

Team and declarations from each of the agency defendants describing their DOGE Team, or lack

thereof.  Notice of Filing of Admin. Records, ECF No. 26.

On May 27, 2025, Defendants filed a motion to dismiss Plaintiff's FACA claims under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defs.' Partial Mot. to Dismiss, ECF No.

27.  No other action has occurred in this litigation besides premature requests for discovery:

Plaintiff has not sought any preliminary or emergency relief, nor has it sought a briefing schedule

for such relief.

## LEGAL BACKGROUND

In general, "[a] party may not seek discovery" before a Rule 26(f) conference.  Fed. R. Civ.

P. 26(d)(1).  Accordingly, "expedited discovery is not the norm, particularly where defendants

have filed a motion to dismiss." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97 (D.D.C. 2014).

Courts in this District generally examine motions for expedited discovery under either the

"reasonableness" test or under the *Notaro* test. *Id.* at 97-98 (citing *Notaro v. Koch*, 95 F.R.D. 403

(S.D.N.Y 1982)).  Recently, some courts have rejected the *Notaro* test in favor of the

reasonableness standard, which is "more suited to the application of the Court's broad discretion

in handling discovery." *Id.*; *see also Does 1-9 v. Dep't of Just.*, No. 25-CV-325 (JMC), 2025 WL

894120, at *5 (D.D.C. Mar. 22, 2025); *but see Simon v. Republic of Hungary*, No. CV 10-01770-

BAH, 2012 WL 13069772, at *3 & n.8 (D.D.C. Oct. 19, 2012) (applying both the reasonableness

and *Notaro* tests because "Judges in this Circuit have employed both standards in considering a

request for expedited discovery").  The *Notaro* test is akin to the preliminary injunction standard

and is more stringent than the reasonableness test.  *See Simon*, 2012 WL 13069772, at *3 ("The

more stringent standard is . . . the *Notaro* test").  It requires the moving party to demonstrate:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Guttenberg*, 26 F. Supp. 3d at 97 (citing *Notaro*, 95 F.R.D. at 405). As outlined below, because Plaintiff's motion does not satisfy the reasonableness test, Plaintiff's motion should necessarily be denied under the more demanding *Notaro* test as well.

Under the reasonableness test, courts primarily examine five factors, although the list of factors is not exhaustive: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005)).

## ARGUMENT

### I.    Plaintiff's Request for Expedited Discovery Should Be Denied.

#### A.    The Court Should Rule on Defendants' Motion to Dismiss Before Permitting Any Discovery.

It is well established that courts should first determine whether the plaintiff has adequately pled jurisdiction or stated a valid claim before exercising power over the case and unlocking the doors to discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 686 (2009) (when a "complaint is deficient under Rule 8, [plaintiff] is not entitled to discovery, cabined or otherwise" because "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions"); *Cunningham v. Cornell Univ.*, 604 U.S. ---, 145 S. Ct. 1020, 1032 (2025) (finding that when plaintiffs bring "barebones" suits, district courts should use "tools at their disposal to screen out meritless claims before discovery"); *In re Musk*, No. 25-5072, 2025 WL 926608, at *1

(D.C. Cir. Mar. 26, 2025) (per curiam) (staying discovery because "the district court was *required* to decide [defendants'] motion to dismiss before allowing discovery" (emphasis added)); *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 847 (11th Cir. 2020) (per curiam) (unpublished) ("[B]ecause their complaint failed to state a claim, they were not entitled to discovery."); *Carter v. DeKalb Cnty.*, *Ga.*, 521 F. App'x 725, 728 (11th Cir. 2013) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should be resolved before discovery begins." (citation modified)); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("[P]laintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it.").

Indeed, another court in this District rejected a plaintiff's attempt to seek expedited discovery in a similar "DOGE" FACA suit, finding that the court was "particularly hesitant" to order discovery "at such an early stage" and before the government's forthcoming motion to dismiss was resolved. *Public Citizen, Inc. v. Donald Trump*, No. 25-cv-164-JMC, Order at 4, ECF No. 31 (D.D.C. Mar. 25, 2025) ("*Public Citizen* Order"); *see also In re Quinteros*, No. 19-br-195 -SMT, 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021) (citation omitted) (holding that "discovery typically occurs after the resolution of motions to dismiss, because requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim" is inefficient).

This Court should similarly deny Plaintiff's request for expedited discovery because Defendants have filed a motion to dismiss arguing that, on the face of the amended complaint, Plaintiff has failed to establish mandamus jurisdiction for a FACA claim and failed to state a valid FACA claim. *See* Mem. of L. in Supp. of Defs.' Partial Mot. to Dismiss ("Defs.' MTD"), ECF No. 27-1.   Under D.C. Circuit precedent, that alone is sufficient reason to deny expedited

discovery. *See In re Musk*, 2025 WL 926608, at *1 (stating that "the district court was *required* to decide [defendants'] motion to dismiss before allowing discovery" (emphasis added)).

Although Plaintiff cites authority for the proposition that discovery may be appropriate in FACA cases, Mot. at 10–11, none of those decisions authorized discovery while a motion to dismiss was pending. *See Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187–88 (D.D.C. 2022) (authorizing discovery following the denial of the parties' cross-motions for summary judgment); *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1106–07 (D.C. Cir. 2021) (remanding for further factual development *after* resolution of defendants' motion to dismiss); *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1027 (D.C. Cir. 1998) (remanding for jurisdictional discovery after entry of permanent injunction over plaintiffs' objection).

Equally problematic is that Plaintiff's own motion confirms that its amended complaint lacks the basic facts needed to plead jurisdiction or state a claim. Plaintiff says that it seeks "basic information bearing on FACA's applicability," Mot. at 5, which is an admission that the operative complaint lacks basic details about whether FACA is violated at all. Plaintiff also states that it does not know "how the DOGE teams are operating," *id*. at 8, which shows that Plaintiff does not itself allege the basic facts to establish that any of the DOGE Teams is an advisory committee subject to FACA—and, indeed, none is. The Court should not allow Plaintiff to use expedited discovery as a tool to patch up a deficient complaint. That expedition would permit any future plaintiff to use a deficient complaint to open the door to expedited discovery in hopes of finding a claim. *See Kaplan v. Cal. Pub. Emps.' Ret. Sys.*, No. C 98-1246 CRB, 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions

6

are not permissible under federal discovery rules."), *aff'd*, 221 F.3d 1348 (9th Cir. 2000); *Kaylor v. Fields,* 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

In its motion, Plaintiff relies upon *Warner Bros. Recs., Inc. v. Does 1–6*, 527 F. Supp. 2d 1 (D.D.C. 2007) to advance their theory that expedited discovery is warranted. Mot. at 10. But that case hurts Plaintiff more than it helps. There, the court permitted expedited discovery in the form of Rule 45 subpoenas to identify who had allegedly violated their copyrights, so the plaintiffs could then sue those unknown defendants, explaining that discovery "is not only relevant but crucial to the prosecution of Plaintiffs' claims." *Id.* But there, third-party discovery was warranted to determine the identity of the proper defendant based on an actual copyright infringement claim against those unknown defendants. *Id.* Here, Plaintiff's theory is the opposite: they know whom they want to sue but cannot articulate enough facts to support a viable claim against those defendants. Allowing expedited discovery in such a scenario contradicts the Federal Rules and precedent from the D.C. Circuit and Supreme Court.

Plaintiff's other cited cases, Mot. at 10, also do not support allowing expedited discovery to remedy a facially deficient complaint. *See Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 387 (D.C. Cir. 2018) (concluding that the plaintiffs' claim was not barred by the APA's six-year statute of limitations and commenting that the district court may exercise its discretion to permit discovery on remand); *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005) (reversing the district court's dismissal after concluding that the plaintiff's claim were ripe for review).

Defendants, moreover, are likely to succeed in their motion to dismiss for all the reasons explained in that motion, and as Defendants will further explain in their forthcoming reply brief.

Plaintiff has not alleged any specific facts that would allow the Court to conclude that the basic elements of a FACA claim have been pled.  Indeed, Plaintiff makes a category error in attempting to construe the DOGE Teams—which are made up of agency employees—as "advisory committees" subject to FACA.  As the Supreme Court concluded in granting the government's application for a stay of the district court's injunction in *American Federation of State, County and Municipal Employees v. Social Security Administration*, "SSA may proceed to afford members of the SSA DOGE Team access to the agency records in question in order for those members to do their *work*."  *SSA v. Am. Fed'n of State, Cnty, and Mun. Emps.,* 145 S. Ct. 1626 (2025) (emphasis added).  Doing the "work" of the agency is inconsistent with Plaintiff's claims that "DOGE Teams" are functioning as an advisory committee under FACA.  *See* 5 U.S.C. § 1001(2)(A) (defining "advisory committee" as a "committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . that is established or utilized to obtain *advice* or *recommendations*" (emphasis added)); *see also* 41 C.F.R. § 102–3.40(j) (indicating that a group performing "primarily operational . . . functions" as opposed to primarily advisory functions are not considered advisory committees).

　　　　Plaintiff makes much of the fact that some members of the DOGE Teams here are Special Government Employees.  *See* Mot. at 3.  For the reasons explained in Defendants' motion to dismiss—and as Defendants will elaborate on in their forthcoming reply brief—that ethics designation is not meaningful as to whether Plaintiff has alleged the existence of a FACA.  *See* Defs.' MTD at 18–19.  But, in any event, the Court should resolve whether the Court has jurisdiction and whether Plaintiff has alleged a viable FACA claim, before subjecting Defendants to burdensome discovery.

**B.     Plaintiff's Motion Fails the Reasonableness Test.**

As noted above, courts often consider five independent factors in determining whether a request for expedited discovery satisfies the reasonableness test.  Here, even if the Court concludes that the pendency of a motion to dismiss is not dispositive, each factor independently weighs against the expedited discovery Plaintiff requests.

1.     No Request for Emergency Relief Is Pending or Imminent.

Although Plaintiff initiated this case on March 3, 2025, Plaintiff has not moved for preliminary injunctive relief, nor indicated that they intend to do so.  This factor, therefore, weighs heavily against Plaintiff's request for expedited discovery.  *See, e.g.*, *Public Citizen* Order at 2 (finding that the first factor weighed against expedited discovery even though Plaintiff claimed he "intend[ed] to file a motion for preliminary injunction in the future").  At a minimum, if a preliminary injunction motion is not pending, a plaintiff must show that one is likely and imminently to come, perhaps by pointing to a set briefing schedule or by explaining why they are likely to win a preliminary injunction motion.  Plaintiff here has done neither.

And more fundamentally, Plaintiff would not be entitled to preliminary injunctive relief.  To start, Plaintiff waited more than a month after initiating this action before seeking expedited discovery and has not sought any preliminary relief in the nearly four months since it filed the initial complaint, a delay that itself undermines any entitlement to preliminary relief.  *See Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (finding that a delay of forty-four days before bringing action for injunctive relief was "inexcusable," and "bolstered" the "conclusion that an injunction should not issue," particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm).  And, as explained in Defendants' motion to dismiss, Plaintiff has not even satisfied the pleading standards of Rule 8 as to its FACA claims,

let alone the requirements of Rule 65. Nor can plaintiff establish irreparable harm, particularly given the delay in seeking any emergency relief. On all fronts Plaintiff falls far short of establishing entitlement to preliminary injunctive relief. *See Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1233 (D.C. Cir. 2025) (outlining preliminary injunction factors). Because there is no pending motion for preliminary injunction and no strong indication that one is imminent or meritorious, this factor weighs against expedited discovery.

Perhaps attempting to meet this prong of the reasonableness test, Plaintiff states in its motion for expedited discovery that, because the DOGE Teams are not abiding by FACA's public access requirements, Plaintiff is irreparably harmed. *See* Mot. at 11–12. Plaintiff's claim of harm, though, presupposes that the relevant DOGE Teams are, in fact, subject to FACA, which is the ultimate merits issue in the case. Plaintiff's claim of irreparable harm, moreover, is inconsistent with its decision not to move for preliminary injunctive relief in the nearly four months since this action began. Having chosen to forego seeking expedited relief, Plaintiff should not be heard now to demand discovery outside of the ordinary procedures established by Rule 26.

> 2.    Plaintiff's proposed discovery is broad and burdensome.

Courts disfavor broad expedited discovery, especially discovery requests that cut to the merits of the case. *See Guttenberg*, 26 F. Supp. 3d at 98; *see also True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734-RBW, 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 166 (D.D.C. 2015). And expedited discovery that seeks "relatively broad discovery on issues going to the merits of the[] case" that is not "narrowly tailored to reveal information related to the preliminary injunction" should not be authorized. *Guttenberg*, 26 F. Supp. 3d at 98; *see also Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631-RBW, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); *Attkisson*, 113 F. Supp. 3d at 162.

Here, Plaintiff argues that its discovery requests are not overly burdensome because they are "narrowly tailored" and "limited." Mot. at 13–14. But Plaintiff is wrong for at least two reasons. First, because no preliminary injunction motion is pending, it is difficult to determine the purpose and scope of the requested expedited discovery. *See Public Citizen* Order at 2 ("[A]bsent a pending motion [for preliminary injunction], the Court cannot properly assess . . . whether the sought-after discovery is relevant to the merits of the preliminary injunction (rather than the merits of the case as a whole), and whether the requested discovery is appropriately tailored to those relevant issues.").

Second, although the number of individual discovery requests is not large, *see* Pls.' Proposed First Set of Interrogatories and Requests for Production of Documents ("Pls.' Renewed Discovery Requests"), ECF 32-1, the scope of what Plaintiff asks for, and the quantity of potentially responsive information and documents, is anything but narrow and limited. The requests go to the merits of the FACA claims—seeking, in effect, to impose FACA's public transparency requirements before it is established that FACA even applies. The requests are also drafted broadly and would require significant time and resources to answer. Interrogatory No. 3, for example, asks each defendant to list every "meeting" of its DOGE Team. *Id.* at 5. Plaintiff defines "meeting" to mean "any time two or more DOGE Team members met to dismiss any advice or recommendations being formulated for the implementation of the DOGE agenda or regarding regulatory recissions pursuant to Executive Orders 14158 and/or 14219," Pl.'s Renewed Discovery Requests at 2, which would likely cover any instance in which two or more DOGE Team members met and talked about their work. Identifying every such instance from January 20, 2025, to the present would take extensive investigation, if not be virtually impossible. Plaintiff's

requests are not narrowly tailored; they are broad, burdensome, and unreasonable at this early juncture in litigation, which weighs against expedited discovery.

        3.      <u>Plaintiff has failed to articulate a specific or legitimate purpose for expedited discovery.</u>

As outlined above, Plaintiff appears to seek expedited discovery to patch up a facially deficient complaint.  Plaintiff's own admissions and the broad nature of the written discovery requests confirm as much.  The discovery requests seek broad categories of information, such as details about DOGE Team meetings.  Those discovery requests go directly to the elements that Plaintiff were required, but failed, to plead, and appear to be an attempt to subject such meetings to FACA's public transparency requirements through discovery, even though the question of whether FACA applies is the ultimate merits question of the case.  *See Attkisson*, 113 F. Supp. 3d at 163 (explaining that expedited discovery is "inappropriate" to prove ultimate merits of the case and instead should be narrowly tailored to the issue of preliminary relief).  Plaintiff's purpose for expedited discovery is improper.  *See Kaplan*, 1998 WL 575095 at *6; *PHL Variable Ins. Co. v. Sheldon Hathaway Fam. Ins. Tr. ex rel. Hathaway*, No. 2:10-CV-67, 2011 WL 703839, at *3 (D. Utah Feb. 20, 2011) ("[C]omplaints are not meant to be a license to conduct discovery and discover unknown wrongs.").  Thus, this factor weighs against expedited discovery as well.

        4.      <u>Plaintiff's motion comes far in advance of the typical discovery process.</u>

*Guttenberg* explains that the "most important" consideration in the Court's reasonableness analysis is whether the "plaintiffs' request for expedited discovery comes well in advance of typical discovery."  26 F. Supp. 3d at 99 (citation modified); *see also True the Vote, Inc.*, 2014 WL 4347197, at *8 (finding expedited discovery prior to resolution of motion to dismiss "premature").  And expediting discovery in the face of an impending dispositive motion drains resources, burdens the Defendants, and creates inefficiencies as it requires "expend[ing] significant resources

responding to discovery requests in a case where plaintiffs did not have a viable cause of action."
*Guttenberg*, 26 F. Supp. 3d at 99; *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam)
(vacating and remanding to the district court with instructions to rule on the government's
threshold arguments regarding jurisdiction and reviewability, which "likely would eliminate the
need for the District Court to examine a complete administrative record").

Here, Plaintiff's request for expedited discovery comes well in advance of the usual
discovery process.  No Rule 26(f) conference has been scheduled, nor will one take place until at
least 21 days before a scheduling conference, which itself has not yet been set.  *See* Fed. R. Civ.
P. 26(f)(1).  Moreover, if the Court were to grant Defendants' motion, only Plaintiff's FOIA claim
would remain, and there would be no basis on which for Plaintiff to seek discovery. *See Cole v.
Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018) ("[I]n the FOIA context, courts have permitted
discovery only in exceptional circumstances where a plaintiff raises a sufficient question as to the
agency's good faith in searching for or processing documents.").

Because Plaintiff cannot meet any of the reasonableness factors, the Court should deny the
request for expedited discovery.

### C.    Plaintiff's Motion Also Fails the *Notaro* Test.

Because Plaintiff cannot meet the reasonableness standard, it necessarily fails to meet the
even higher standard for expedited discovery under the four-factor *Notaro* test.  *See Guttenberg*,
26 F. Supp. 3d at 98 ("[I]f plaintiffs cannot prevail under the reasonableness approach, the Court
need not decide whether they could meet the *Notaro* approach, because the reasonableness
approach is a more liberal standard.").  First, Plaintiff has failed to articulate any specific injury
that cannot be addressed through the normal litigation process.  Second, as explained *supra*,
Plaintiff's amended complaint offers only conclusions, not relevant facts, to establish key elements

13

required to establish mandamus jurisdiction or state an APA or mandamus claim.  Third, although Plaintiff contends it faces irreparable injury from the lack of public access to DOGE Team meetings, Plaintiff's argument presupposes that the various DOGE Teams are, in fact, subject to FACA's public disclosure provisions.  The Court should first decide whether Plaintiff has adequately pled jurisdiction and a viable FACA claim before allowing discovery.  Fourth, Plaintiff fails to establish any urgency (as demonstrated by Plaintiff's decision not to seek preliminary injunctive relief) that outweighs the heavy burden that the expedited discovery would impose on Defendants.  Thus, Plaintiff's motion fails the *Notaro* standard, and this Court should deny expedited discovery.

## II.    The Court Should Deny Plaintiff's Request to Supplement or Complete the Administrative Record.

The Court should also deny Plaintiff's request to order Defendants to supplement or complete the administrative record.  *See* Mot. at 15–16.  Although the Court ordered Defendants to produce the administrative record with their motion to dismiss, and Defendants produced employment documents in compliance with the Court's order, there is, in fact, no meaningful "administrative record" in this case, because none of the Defendants established or utilized an advisory committee.  The only plausible agency action in this case is the establishment of the DOGE Teams, where they exist.  As such, the only documents that would be included in such an administrative record would be the executive order establishing the DOGE Teams (90 Fed. Reg. 8,441), employment documents for DOGE Team Members, and other non-deliberative documents establishing DOGE Teams.  Defendants produced all of those documents where they exist.  *See* ECF No. 26-2 at 4, 9, 20, 34, 46 (ECF pagination).

What Plaintiff seeks goes far beyond what is properly included in an administrative record, even assuming one were appropriate in this case.  For example, Plaintiff seeks inclusion of

"information about the meetings that have taken place for the DOGE Teams."  Pl.'s Renewed

Discovery Requests at 15.  Ordering production of that information—*i.e.*, internal discussions

among agency employees—would provide Plaintiff with a significant portion of the ultimate relief

it seeks through litigation, which is to apply FACA's public access requirements to the agency

DOGE Teams before the Court has decided that such requirements even apply.  *See* Am. Compl.,

Prayer for Relief (b) (asking the Court to "require Defendants to provide" all "agendas, minutes,

transcripts, and other documents required by FACA" to be made available to the public); *see also*

*Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 388 (2004) (finding discovery requests

inappropriate because, among other reasons, they would "provide respondents all the disclosure to

which they would be entitled in the event they prevail on the merits, and much more besides").

That would be particularly inappropriate here, where Defendants have asserted meritorious reasons

for why Plaintiff's FACA claim should be dismissed for lack of jurisdiction and/or for failure to

state a claim.  Large portions, if not all, of those materials are also likely to be privileged intra-

agency communications that would not be part of an administrative record in any event.  *See*

*Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (citation modified) (holding that

privileged materials "are not part of the administrative record to begin with" and therefore do not

need to be included or even logged).

Even if the Court were to conclude that additional material may be necessary for inclusion

in the administrative record, the Court should first decide Defendants' motion to dismiss before

ordering completion or supplementation.  The normal course of action in APA cases is a well-

trodden one: "the plaintiff files a complaint; then the defendant answers or seeks dismissal of the

complaint; then—in APA cases—the Government produce[s] an administrative record; and only

then does the Court consider motions for summary judgment."  *G.Y.J.P. by & through M.R.P.S. v.*

*Wolf*, No. 1:20-cv-01511-TNM, 2020 WL 4192490, at *2 (D.D.C. July 21, 2020). Following that course would allow the Court to resolve threshold issues, including questions regarding the Court's jurisdiction, likely eliminating the need for examination of a complete administrative record. *See In re United States*, 583 U.S. at 31–32 (indicating that the district court should proceed to rule on the Government's threshold arguments before requiring supplementation of the administrative record).

*    *    *

If the Court grants Plaintiff's motion, notwithstanding all the above, Defendants respectfully request a stay of that order for at least fourteen days, so that they may consider seeking emergency appellate relief.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Renewed Motion for Expedited Discovery and to Supplement or Complete the Administrative Record.

Dated: July 1, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Senior Trial Counsel
SAMUEL S. HOLT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005

16

Telephone: (202) 305-0878
Fax: (202) 616-8470
Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*