**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY

*Plaintiff*,

v.

U.S. DEPARTMENT OF INTERIOR, et al.

*Defendants*.

Civil Case No. 1:25-cv-00612-RDM

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Legal Background ..... 2

II. Factual Background ..... 4

STANDARD OF REVIEW ..... 7

ARGUMENT ..... 8

III. Plaintiff Has Asserted Valid APA and Mandamus Claims. ..... 10

A. Plaintiff has asserted valid APA claims. ..... 10

IV. Plaintiff May Bring Both an APA and a Mandamus Claim. ..... 12

V. Plaintiff Has Sufficiently Alleged that the DOGE Teams are Advisory Committees Subject to FACA. ..... 14

A. The DOGE Teams meet the definition of a federal advisory committee. ..... 14

B. Plaintiff need not show that the DOGE Team members have "vote or veto power." ..... 20

C. Plaintiff's allegations do not raise separation of powers concerns. ..... 23

D. Plaintiff has not brought a claim to enforce the "fairly balanced" or "inappropriate influence" provisions. ..... 25

CONCLUSION ..... 26

CERTIFICATE OF SERVICE ..... 27

# TABLE OF AUTHORITIES

**Cases**

*ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457 (D.C. Cir. 1991). .......... 7

*Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81 (D.D.C. 2010). .......... 20

*Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008). .......... 8

*Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011). .......... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). .......... 7

*Association of American Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993) .......... 17, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). .......... 8, 9

*Bennett v. Spear*, 520 U.S. 154 (1997). .......... 10, 11

*Bhagerian v. Pompeo*, 442 F. Supp. 3d 87 (D.D.C. 2020). .......... 12

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002). .......... 7

*Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627 (D.C. Cir. 2019). .......... 10, 11

*Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218 (D.C. Cir. 2026). .......... 21

*Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986). .......... 10

*Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir. 2004). .......... 8, 16, 17

*Conley v. Gibson*, 355 U.S. 41 (1957). .......... 15

*Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989). .......... 20

*Datta v. Rubio*, No. 24-2937 (PLF), 2025 WL 752643 (D.D.C. Mar. 10, 2025). .......... 12

*EDF v. Regan*, No. 20-762 (LLA), 2024 WL 3887383 (D.D.C. Aug. 20, 2024). .......... 11

*Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, 466 F. Supp. 3d 100 (D.D.C. 2020). .......... 19

*Erickson v. Pardus*, 551 U.S. 89 (2007). .......... 8, 16

*Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38 (D.D.C. 2001). .......... 20

*Food & Water Watch v. Trump,* 357 F. Supp. 3d 1 (D.D.C. 2018). .......... 16

*Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468 (D.C. Cir. 1992). .......... 3

*In re Cheney*, 406 F.3d 406 F.3d 723 (D.C. Cir. 2005). .......... 21, 22

*Judicial Watch v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 3d 20 (D.D.C. 2002). .......... 11

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24 (D.D.C. 2010). ........... 11, 13

*Kirwa v. United States Department of Defense*, 285 F. Supp. 3d 257 (D.D.C. 2018). ................ 13

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994). ............................... 7, 18, 20, 22

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). ......................................................... 21

*Mead v. Lindlaw*, 839 F. Supp. 2d 66 (D.D.C. 2012). ................................................................. 4

*Nat's Sec. Counselors v. CIA*, 898 F. Supp 2d 233 (D.D.C. 2012). ............................................ 24

*New Mexico v. Musk*, No. 25-cv-429 (TSC), 2026 WL 799635 (D.D.C. Mar. 23, 2026). ............. 9

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978). ....................................................... 24

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004). ...................................................... 12

*Or. Health & Sci. Univ. v. Engels*, No. 24-2184 (RC), 2025 WL 1707630 (D.D.C. June 17, 2025). ........................................................................................................................... 10

*Physicians for Social Responsibility v. Wheeler*, 359 F. Supp. 3d 27 (D.C. Cir. 1993). ............... 19

*Pub. Emps. for Envtl. Resp. v. Nat'l Park Serv.*, No. 19-3629 (RC), 2021 WL 1198047 (D.D.C. Mar. 30, 2021). ....................................................................................................... 10, 11

*Public Citizen v. United States Dep't of Justice*, 491 U.S. 440 (1989). ............................ 2, 23, 26

*Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338 (D.C. Cir. 2018). .............................. 1

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). ............................................... 8, 9, 14, 20, 25

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749 (1989). ....... 24

*United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004)..... 20

*United States v. Neely*, 124 F.4th 937 (D.C. Cir. 2024). ........................................................... 21

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011). .......................... 4

*Washington Legal Found. v. United States Dep't of Justice*, 691 F. Supp. 483 (D.D.C. 1988). ..... 2

**Statutes**

5 U.S.C. § 1001(2)(A). ............................................................................................................. 1, 3

5 U.S.C. § 1001(2)(B). .................................................................................................................. 3

5 U.S.C. § 1002(b). ....................................................................................................................... 2

5 U.S.C. § 1008(c) ........................................................................................................................ 2

5 U.S.C. § 1009(b). ....................................................................................................................... 3

5 U.S.C. § 1009(c). ....................................................................................................................... 3

5 U.S.C. § 1010(b). .......... 3
5 U.S.C. § 706(1) .......... 12
5 U.S.C. §§ 1009, 1010. .......... 12
18 U.S.C. § 202(a). .......... 19
28 U.S.C. § 1361 .......... 12

**Rules**

41 C.F.R. § 102-3.140 .......... 12
41 C.F.R. § 102-3.150(a) (2024) .......... 3
41 C.F.R. § 102-3.165 .......... 3
41 C.F.R. § 102-3.60(b)(3) (2024) .......... 2
41 C.F.R. at § 102-3.170 .......... 3

**Other Cases**

90 Fed. Reg. 10583 .......... 4
90 Fed. Reg. 8441 .......... 4

## INTRODUCTION

Plaintiff Center for Biological Diversity ("Center") has, at the very least, adequately alleged plausible claims for relief based on the plain language of Executive Orders 14158 (attached hereto as Exhibit A) and 14219 (attached hereto as Exhibit B), the scant materials Defendants chose to include in the Administrative Record, and records produced in Defendants' FOIA responses, all of which indicate that the DOGE Teams—as described by the Trump administration itself—plainly fall within the definition of federal advisory committees subject to the Federal Advisory Committee Act ("FACA"). The DOGE Teams include outside advisors and were established by the Defendant agencies/departments pursuant to Executive Order 14219 to provide specific advice and recommendations, including on issues such as regulatory reform and contract recission. That is the very definition of an advisory committee pursuant to FACA, which applies to any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A).

Based on the specific allegations set forth in the Complaint, the plain language of the President's Executive Orders, the information provided in the limited administrative record and FOIA responses, as well as the relevant case law, Plaintiff has easily met, if not exceeded, the low bar for surviving a motion to dismiss. *See Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344-45 (D.C. Cir. 2018) (stating that to survive a motion to dismiss, a complaint must merely state a claim that is plausible on its face).

## BACKGROUND

### I. Legal Background

In 1972, Congress enacted FACA to address congressional concern with the growing number and use of advisory committees. Congress found, among other things, that advisory committees "should be established only when they are determined to be essential" and that "Congress and the public" should be kept abreast of their activities. 5 U.S.C. § 1002(b). FACA's principal purpose was to establish procedures aimed at enhancing public accountability of federal advisory committees. *Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 459 (1989); *Washington Legal Found. v. United States Dep't of Justice*, 691 F. Supp. 483, 490 (D.D.C. 1988) (the purpose of FACA is "to open to public scrutiny the manner in which the government obtains advice from private individuals") (citations omitted). When passing FACA, Congress explained that "[o]ne of the great dangers in the unregulated use of advisory committees is that special interest groups may use their membership on such bodies to promote their private concerns." H.R. Rep. No. 92-1017, at 6 (1972).

To accomplish these goals, FACA demands transparency and open public participation when the executive branch establishes or uses non-federal bodies for the purpose of seeking advice or recommendations, and the law includes specific requirements on the creation and operation of advisory committees. An advisory committee "shall not meet or take any action until an advisory committee charter has been filed" with the "head of the agency to whom the advisory committee reports." 5 U.S.C. § 1008(c). FACA also requires the development of a Membership Balance Plan to "ensure that, in the selection of members for the advisory committee, the agency will consider a cross-section of those directly affected, interested, and qualified, as appropriate to the nature and functions of the advisory committee." 41 C.F.R. § 102-3.60(b)(3) (2024) (amended on December 16, 2025).

Furthermore, FACA requires that the Charter and Membership Balance plan be made publicly available, along with "the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, [and] other documents . . . made available to or prepared for or by" the committee. 5 U.S.C. § 1009(b). These materials must be released well *before* the relevant meeting, so that the public can "follow the substance of the [committee's] discussions." *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1472 (D.C. Cir. 1992). Meetings of advisory committees must also be noticed in the Federal Register at least fifteen days before the meeting is to be held. 41 C.F.R. § 102-3.150(a) (2024) (amended to seven days on December 16, 2025). "Detailed minutes of each meeting of each advisory committee shall be kept and shall contain a record of the persons present, a complete and accurate description of matters discussed and conclusions reached, and copies of all reports received, issued, or approved by the advisory committee," 5 U.S.C. § 1009(c), and the committee must make available copies of transcripts of advisory committee meetings to "any person," *id.* § 1010(b). *See also* 41 C.F.R. § 102-3.165 (describing how advisory committee meetings are to be documented with meeting minutes); *Id.* at § 102-3.170 ("Timely access to advisory committee records is an important element of the public access requirements of the Act.").

These requirements apply to any "committee, board, commission, council, conference, panel, task force, or other similar group," that is "established or utilized to obtain advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. § 1001(2)(A). Only those committees that are "composed wholly of full-time, or permanent parttime, officers or employees of the Federal Government" fall outside the definition of "advisory committee" under the Act. 5 U.S.C. § 1001(2)(B).

## II. Factual Background

On January 20, 2025, President Trump issued Executive Order 14158, 90 Fed. Reg. 8441, entitled "Establishing and Implementing the President's 'Department of Government Efficiency,'" renaming the U.S. Digital Service the U.S. DOGE Service ("USDS"), and establishing a new temporary organization known as the U.S. DOGE Service Temporary Organization within the USDS. Executive Order 14158 also requires "DOGE Teams" to be established by each Agency Head in consultation with USDS.[1] These "DOGE Teams" are to be composed "of at least four employees, which may include Special Government Employees, hired or assigned" by the Agency, who are directed to coordinate with the USDS Administrator, working from within the agencies to advise the Agency Heads on implementing the President's "DOGE Agenda." According to the Executive Order, "[e]ach DOGE Team will typically include one DOGE Team Lead, one engineer, one human resources specialist, and one attorney."

On February 19, 2025, President Trump issued Executive Order 14219, 90 Fed. Reg. 10583, entitled "Ensuring Lawful Governance and Implementing the President's 'Department of Government Efficiency' Deregulatory Initiative," which provides that the DOGE Teams are to initiate a process to review and rescind agency regulations deemed unlawful or that "harm the national interest" because they impede technological innovation or infrastructure development.

[1] In considering a 12(b)(6) motion, courts may consider "the facts alleged in the complaint," as well as "documents upon which the plaintiff's complaint necessarily relies" that are central to the claim. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citation and quotation omitted); *Mead v. Lindlaw*, 839 F. Supp. 2d 66, 70 (D.D.C. 2012) ("[I]n deciding a Rule 12(b)(6) motion, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties].") (citations and quotation omitted).

Thus, the DOGE Teams have been authorized to provide advice and recommendations to federal agencies regarding the rescission of regulations across the federal government.

As alleged in the operative Complaint, the DOGE Teams have operated on both a department and agency level. Second Am. Compl., Dkt. No. 47 at ¶¶ 90, 94-95. DOGE Teams have been established within the various departments and federal agencies controlled by Defendants and have been holding meetings. *Id.* ¶¶ 95-96. Furthermore, the DOGE Teams are responsible for recommending the cutting of thousands of jobs at the Defendant agencies and undertaking efforts to reduce Defendants' budgets and otherwise undermine their ability to enforce laws and regulations intended to protect public health and the environment. *Id.* ¶ 96. The DOGE Teams are tasked with and have provided advice and recommendations that impact millions of Americans, including members of the Center, albeit with none of the transparency, oversight, or opportunity for public participation the law requires. *Id.* ¶¶ 93, 95-97, 101. Defendants have provided no charter, Membership Balance Plans, meeting minutes or other documents regarding the work of the DOGE Teams that FACA requires be made publicly available. *Id.* ¶¶ 25-27, 29, 101.

In February 2025, Plaintiff sent letters to Defendants objecting to the lack of publicly available information about the DOGE Teams, and demanding that they provide the charter, Balanced Management Plan, meeting documents and minutes, and other materials that FACA requires to be made publicly available. *Id.* ¶ 99. In these letters, Plaintiff raised concerns about the potential for conflicts of interest and stated that the only way to ensure that the government is not inappropriately influenced by DOGE Teams is to provide such documents, plans, and meeting minutes as required by FACA. *Id.* ¶ 27. Defendants did not respond to the Center's FACA letters and have failed to make the required documents and meeting minutes publicly

available as FACA requires. *Id.* ¶¶ 9, 29. Defendants' failure to comply with FACA's transparency and other requirements has harmed, and will continue to harm, the Center and its members' interests, including by depriving them of information necessary to understand and respond to the DOGE Teams' work and obviating their ability to determine whether the DOGE Teams are being improperly influenced by special interests. *Id.* ¶ 29.

In April 2025, the Center moved for expedited discovery—given that much of the information relevant to the FACA claim is entirely within Defendants' possession—and Defendants opposed the motion. Dkt. No. 13, 16. Rather than permitting discovery at that time, the Court ordered Defendants to file the "entire administrative record" by May 12, 2025. Min. Order, May 2, 2025 (deadline later extended to June 16, 2025). After filing a scant administrative record consisting only of employment records—which did at least confirm that DOGE Team members were serving as Special Government Employees, consistent with FACA coverage—Defendants moved to dismiss. Dkt. No. 27. In response, the Center filed both an opposition to Defendants' motion and a renewed motion for expedited discovery. Dkt. No. 31, 32.

In resolving both motions, the Court ordered Defendants to respond to Plaintiff's outstanding FOIA requests—responses to which had already been delayed for many months—anticipating that the FOIA responses might at least partially address Plaintiffs' need for discovery. Min. Order, September 8, 2025. Defendants subsequently provided some records responsive to Plaintiff's FOIA requests while withholding many others on the grounds that various FOIA exemptions apply. While it is Plaintiff's position that Defendants have failed to fully comply with FOIA, the limited records that *were* produced in response to Plaintiff's FOIA requests include emails, calendars, and other materials confirming that the DOGE Teams at the various Defendant agencies have had meetings consistent with the work of an advisory

committee subject to FACA. Dkt. No. 47 at ¶¶ 95, 105, 113, 118. The Center therefore amended its complaint to incorporate this information, *see* Dkt. No. 47, some of which relates directly to the various arguments Defendants had made in their prior motion to dismiss.

Defendants have once again moved to dismiss. As discussed below, the Court should deny the motion because Plaintiff has clearly satisfied the low bar for surviving a motion to dismiss.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted); Fed. R. Civ. P. 12(b)(1); *see also ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991) (At the motion to dismiss stage, the Court does not assess "the truth of what is asserted or [determine] whether a plaintiff has any evidence to back up what is in the complaint"). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). A complaint that states a "plausible claim for relief" survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Determining a claim's plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Again, the Court must construe the complaint liberally in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

Plaintiff has sufficiently pled all the necessary elements of a FACA claim regarding the DOGE Teams, and Defendants' arguments are inconsistent with the liberal notice pleading standard applicable in this circuit. At the pleading stage, a complaint need not include the level of factual specificity Defendants demand; it must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to give the defendant "fair notice of the claims." *Ciralsky v. CIA*, 355 F.3d 661, 668–70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). The D.C. Circuit explained in *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008), that while some courts have imposed various "requirements of particularity," the Supreme Court "has continually pruned back such requirements, with the admonition that courts are not to impose heightened pleading requirements." *Id*. at 16 (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002)).

Further, the Supreme Court held in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that a complaint "does not need detailed factual allegations." (citations omitted) *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) ("[S]pecific facts are not necessary," and a complaint need only give the defendant fair notice of the claims). The Supreme Court reiterated that Federal Rule of Civil Procedure 8 requires "simply [that] … 'the defendant [give] fair notice of what the plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 511-12 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Here, Plaintiff has clearly met the applicable standard for notice pleading. Defendants make no argument that Plaintiff's Second Amended Complaint does not provide "fair notice," nor could they, given the clear allegations in the pleadings. Even though Defendants have

produced an inadequate administrative record and have continued to shield the DOGE Teams' operations and functions from the public and Plaintiff despite the transparency required by both FOIA and FACA, the limited information Defendants have thus far provided in response to the Court's directive to process the FOIA requests, along with the plain terms of the Executive Orders establishing the DOGE Teams, shows, at bare minimum, plausible claims that FACA applies to the DOGE Teams. With this information in hand, Plaintiff amended its complaint to further address all the arguments previously raised by Defendants regarding the adequacy of the pleadings. Plaintiffs' factual allegations are surely sufficient to "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555 (citations omitted).

Defendants, however, are again both misstating the law as it applies to FACA coverage, as well as attempting to improperly raise the bar that applies to Plaintiff's complaint. In effect, Defendants are attempting to apply a summary-judgment type standard at this motion to dismiss stage that is inconsistent with Supreme Court precedent. *See Swierkiewicz*, 534 U.S. at 511-12. Plaintiff has plausibly and with sufficient factual specificity alleged all the elements necessary to show that the DOGE Teams have been operating as advisory committees without complying with FACA. Defendants' motion should therefore be denied.[2]

---

[2] Defendants' recitation on the fate of other DOGE-related cases, Memo. in Support of Mot. to Dismiss, Dkt. No. 49-1 at 4-5, has nothing to do with this case. Among other dispositive differences, none of those cases even alleged that the *DOGE Teams* established in various agencies are subject to FACA, as they only concerned the USDS or DOGE entity within the Office of the President. Defendants' recitation also disregards cases concerning DOGE that courts, including in this district, have allowed to proceed over the government's objection. *See, e.g., New Mexico v. Musk*, No. 25-cv-429 (TSC), 2026 WL 799635 at *42 (D.D.C. Mar. 23, 2026) (allowing Appointments Clause and other claims to proceed because "Plaintiffs have plausibly alleged that DOGE Defendants are ordering agency officials to terminate grants and cut spending without any authority to do so").

## III. Plaintiff Has Asserted Valid APA and Mandamus Claims.

### A. Plaintiff has asserted valid APA claims.

Defendants' arguments regarding the lack of final agency action at issue here are completely baseless. Memo. in Support of Mot. to Dismiss, Dkt. No. 49-1 at 1, 10–12. Defendants assert that Plaintiff has failed to "allege that any of the Defendant agencies or departments consummated a decision to establish and exercise control over a de facto advisory committee," and therefore there is no final agency action here. *Id* at 1. That is incorrect. Plaintiff has alleged that Defendants have established DOGE Teams—as the Executive Order requires and as the record here demonstrates—and that these DOGE Teams have not been complying with FACA. Dkt. No. 47 at ¶¶ 108–115. Defendants' convening of the Teams without complying with FACA constitutes both final agency action reviewable under Section 706(2) of the APA, as well as "unlawfully withheld" agency action within the meaning Section 706(1) of the APA.

Because Defendants have made final decisions to convene the DOGE Teams without complying with FACA , any substantive "decisionmaking process" has already been "consummate[ed]." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). As this court has explained, "[c]ourts are [] directed to 'apply the finality requirement in a 'flexible' and 'pragmatic way.'" *Pub. Emps. for Envtl. Resp. v. Nat'l Park Serv.*, No. 19-3629 (RC), 2021 WL 1198047, at *8 (D.D.C. Mar. 30, 2021) (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986)); *see also Or. Health & Sci. Univ. v. Engels*, No. 24-2184 (RC), 2025 WL 1707630 at *17 (D.D.C. June 17, 2025) (in assessing finality, "'courts should take as their NorthStar the unique constellation of statutes and regulations that govern the action at issue'") (quoting *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 631 (D.C. Cir. 2019)). Applying those "pragmatic" principles here, the action undertaken by Defendants to form DOGE Teams without

complying with FACA in any manner is clearly a final agency action, as it marks the consummation of decision-making regarding the applicability of this important sunshine law.

Defendants' convening of the Teams without complying with FACA is also "one by which rights or obligations have been determined or from legal consequences will flow." *Bennett*, 520 U.S. at 178 (quotation and citation omitted). "This inquiry requires the Court to 'pragmatica[ally]' focus on 'the concrete consequences [the] action has or does not have . . . .'" *Public Employees*, 2021 WL 1198047 at *25 (quoting *Cal. Cmtys. Against Toxics*, 934 F.3d at 637). The "concrete consequences" here include depriving the public of the explicit right of transparency conferred by Congress.

In fact, courts in this Circuit (and elsewhere) have held that an agency's decision to convene meetings of advisory committees without complying with FACA's openness requirements constitutes final agency action under the APA. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010) (explaining that "the agency's decisions not to comply with 'the various procedural requirements of FACA' had the effect of a final action because they 'were not tentative or interlocutory' and 'had [the] legal consequence [of] deny[ing] the public's right of access to that information'") (quoting *Judicial Watch v. Nat'l Energy Policy Dev. Group*, 219 F. Supp. 3d 20, 40 (D.D.C. 2002)); *see also EDF v. Regan*, No. 20-762 (LLA), 2024 WL 3887383 at *12 (D.D.C. Aug. 20, 2024) ("Because Section 2604(b)(3) [a provision of TSCA] creates a freestanding right to information, the EPA does determine rights and obligations—and therefore does engage in final agency action—when it provides or fails to provide Plaintiffs with access to requested documents.").

Defendants also ignore that Plaintiff has also pled that Defendants' failure to comply with FACA's transparency requirements constitutes action "unlawfully withheld or unreasonably

delayed" in contravention of 5 U.S.C. § 706(1). *See* Dkt. No. 47 at ¶¶ 108-115. Such a claim can proceed "where a plaintiff asserts that an agency fails to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). That is exactly what Plaintiff has done here. FACA requires that all meetings and documents of advisory committees be made available to the public. 5 U.S.C. §§ 1009, 1010; 41 C.F.R. § 102-3.140. Yet, Defendants have failed to do so. This supports an APA Section 706(1) claim for "unlawful" agency action and "unreasonable" delay.

## IV. Plaintiff May Bring Both an APA and a Mandamus Claim.

The fact that Plaintiff has brought an APA claim here does not preclude Plaintiff from pursuing relief under the Mandamus Act for Defendants' failure to comply with FACA. Defendants cite no authority in this Circuit dismissing a mandamus claim at the motion-to-dismiss stage simply because the plaintiff also brought an APA claim. In fact, the claims are complementary and are often brought together where a plaintiff seeks to compel a federal official to perform a nondiscretionary legal duty, since the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), while the Mandamus Act empowers courts to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

For example, a D.C. District court recently "address[ed] [a] plaintiff's APA and mandamus claims jointly" in evaluating allegations that federal officials failed to carry out statutory obligations. *Datta v. Rubio*, No. 24-2937 (PLF), 2025 WL 752643 at *9 (D.D.C. Mar. 10, 2025). Courts have repeatedly recognized that the legal standards governing the two claims substantially overlap. *See Bhagerian v. Pompeo*, 442 F. Supp. 3d 87, 96 (D.D.C. 2020) (noting that the standard for obtaining relief under the APA and the Mandamus Act is essentially the

same (citation omitted)). Accordingly, particularly at the pleading stage, courts permit APA and mandamus claims to proceed in parallel when it is not yet clear whether relief under the APA alone will provide an adequate remedy. As the court explained in *Kirwa v. United States Department of Defense*, APA and mandamus claims may proceed in parallel when relief under the APA remains unclear. 285 F. Supp. 3d 257, 275–76 (D.D.C. 2018). This principle reflects the practical reality that both statutes serve as mechanisms for compelling agency compliance with mandatory legal duties.

That reasoning applies with full force here. Plaintiff alleges that Defendants are failing to comply with mandatory requirements imposed by FACA. While the APA provides one mechanism for judicial review, the Mandamus Act supplies an additional, alternative basis for relief that allows the Court to compel federal officials to perform their clear nondiscretionary legal duties. The availability of declaratory relief under the APA does not foreclose a mandamus claim seeking to ensure actual compliance with federal law. At this stage—before the scope of available relief is determined—Plaintiff is entitled to plead these claims in the alternative and proceed under both theories. Indeed, courts have endorsed this precise course in FACA cases. *See, e.g.*, *Judicial Watch*, 736 F. Supp. 2d at 31 (allowing an alleged FACA violation to be pursued under both the APA and Mandamus Act, and explaining that the "Mandamus Act authorizes district courts to issue mandamus orders compelling federal officials to perform ministerial or non-discretionary duties" and that FACA's requirement that advisory committee meetings "shall" be open to public scrutiny "qualif[ies] as relief in the nature of mandamus").

## V. Plaintiff Has Sufficiently Alleged that the DOGE Teams are Advisory Committees Subject to FACA.

### A. The DOGE Teams meet the definition of a federal advisory committee.

Despite Defendants' delayed and limited FOIA responses—producing only a couple months of records nearly a year after the requests were submitted—Plaintiff's Second Amended Complaint plausibly alleges that the available information shows that the DOGE Teams function as advisory committees subject to FACA, providing Defendants fair notice of the claims. *See Swierkiewicz*, 534 U.S. at 511–12. Defendants' misplaced insistence that the Center must do far more at this juncture improperly conflates the pleading and summary judgment stages.

Plaintiff sets forth in its Second Amended Complaint that the DOGE Teams (1) have been established within the Defendant agencies to provide advice and recommendations, Dkt. No. 47 at ¶¶ 90, 92, 95, 97, 101; (2) are formal, fixed entities with an organized structure and defined membership, *id*. ¶¶ 91–93; (3) include non-federal employees, *id*. ¶ 94; and (4) are vested with vote or veto authority, *id*. ¶ 98. The Court must draw all reasonable inferences in Plaintiff's favor. *Kowal*, 16 F.3d at 1276. As such, the Center has plainly pled a viable FACA claim, even according to Defendants' *own* reading of what such a claim must entail.

Defendants rehash the same misguided arguments from their prior motion to dismiss; however, Plaintiff's Second Amended Complaint, which incorporates any relevant (albeit limited) information Defendants have deigned to divulge thus far regarding the DOGE Teams' operations, resolves any questions about whether Plaintiff has met the liberal notice pleading standard. Defendants turn the standard on its head and seek to have the Court dismiss this matter because Defendants believe the operative complaint still requires more specificity. But that is inconsistent with the governing law. *See Swierkiewicz*, 534 U.S. at 512 (reiterating that Federal Rule of Civil Procedure 8 requires "simply [that] … 'the defendant [give] fair notice of what the

plaintiff's claim is and the grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff has pled with sufficient specificity that FACA applies to the DOGE Teams based on the information available to the public and obtained through FOIA. *See generally* Dkt. No. 47. Defendants' contention that Plaintiff's pleadings are "short on details or specifics," Dkt. No. 49-1 at 12, not only misapplies the proper pleading standard, but ignores that this case specifically concerns Defendants' unlawful attempt to keep the work of the DOGE Teams from public scrutiny, and that Defendants have continued to avoid full disclosure by filing an entirely insufficient administrative record and FOIA responses that withhold a host of relevant documents.

Nevertheless, based on the available information—including the plain language of the President's Executive Orders, publicly available reporting, and the information that has been provided in the administrative record and FOIA responses—Plaintiff amended its pleadings to resolve any question about the sufficiency of their FACA claims. *See* Dkt. No. 47. Defendants' repackaged erroneous arguments about the elements of a FACA claim are now even more misguided, since Plaintiff's Second Amended Complaint ensures that all the elements have been sufficiently pled. As set forth in the Second Amended Complaint, the DOGE Teams plainly meet the definition of federal advisory committees subject to FACA.

First, Plaintiff's Second Amended Complaint properly alleges that the DOGE Teams were established by Defendants to provide advice and recommendations, consistent with the function of an advisory committee. *Id*. at ¶¶ 90, 95. As noted, Executive Order 14158 requires the Defendant agencies/departments to establish the DOGE Teams for the purpose of providing

advice and recommendations. *See id*. at ¶ 85, 90; *see also Food & Water Watch v. Trump,* 357 F. Supp. 3d 1, 10 (D.D.C. 2018). Indeed, Executive Order 14158 specifically directs the Agency Heads to "establish" the DOGE Teams "within their respective Agencies," for the purpose of coordinating with USDS to implement the President's DOGE Agenda. And pursuant to Executive Order 14219, the DOGE Teams are specifically empowered to oversee a process at the federal agencies to review and rescind agency regulations deemed unlawful or that "harm the national interest," and thus are intended to provide specific advice and recommendations to the Defendants. *See* Dkt. No. 47 at ¶ 86, 90

Moreover, the Second Amended Complaint alleges that "documents obtained through FOIA show that the DOGE Teams have been meeting to discuss matters on which they have then formulated and provided specific advice and recommendations to agency leadership." *Id*. at ¶ 95. This advice is not merely "operational" as alleged by Defendants, Dkt. No. 49-1 at 14, but has included the implementation of the DOGE agenda— advising the agencies on how to cut government spending by recommending specific contracts and grants for cancellation. Dkt. No. 47 at ¶¶ 95, 96, 97, 109. This is certainly sufficient to meet the applicable notice pleading standard. *See Erickson*, 551 U.S. at 93-94; *Ciralsky*, 355 F.3d at 668–70.

Second, as stated in Plaintiff's Second Amended Complaint, the plain language of Executive Orders 14158 and 14219 shows a sufficient degree of formality for the DOGE Teams, including an organized structure, a fixed membership, and a unified approach to providing advice, such that FACA seemingly applies to the DOGE Teams. Dkt. No. 47 at ¶¶ 91-93. Pursuant to Executive Order 14158, the DOGE Teams are formal, fixed entities, that must be comprised of an organized structure and fixed membership: one DOGE Team Lead, one engineer, one human resources specialist, and one attorney. *Id*. at ¶ 91.

Executive Order 14158 also provides a unified approach to their work: they are directed to "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id.* at ¶ 92. Undoubtedly, this is a formal structure and unified approach to providing specific advice to the agencies. This structure and unified approach is further clarified in Executive Order 14219, which provides a specific role for the DOGE Teams in overseeing and advising on agency efforts to rescind regulations. *Id*. at ¶ 93. Thus, the plain language of the President's Executive Orders confirms that the DOGE Teams have the formal structure and directed approach to providing agencies with advice that defines an advisory committee subject to FACA. These allegations are, at minimum, sufficient to meet the liberal notice pleading standard. *See Ciralsky*, 355 F.3d at 668–70.

This Circuit has recognized that the degree of formality for an advisory committee is assessed on a "continuum." *Association of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 915 (D.C. Cir. 1993) (hereinafter "*AAPS*"). "At one end one can visualize a formal group of a limited number of private citizens who are brought together to give publicized advice as a group." *Id.* These "would seem covered by the statute." *Id.* "At the other end of the continuum is an unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with one each other." *Id.* That type of arrangement "does not trigger FACA." *Id.* Here, as alleged in the Second Amended Complaint, it is plain from the language set forth in Executive Orders 14158 and 14219 and materials produced to date by Defendants that the DOGE Teams are formal groups with fixed membership established by Defendants at the direction of the President to give specific advice on implementing the DOGE Agenda, including by making specific recommendations regarding the recission of regulations. Especially because any additional information regarding the DOGE

Teams' function and structure is in Defendants' sole possession, *see* Dkt. No. 47 at ¶ 90, 91, the Center's allegations satisfy the liberal notice-pleading standard and the Court must draw all reasonable inferences in Plaintiff's favor. *Kowal*, 16 F.3d at 1276. One such entirely reasonable (if not unavoidable) inference is that the DOGE Teams have, in fact, operated consistently with the Executive Orders that *require* the establishment of DOGE Teams with the kind of structure, membership, and operation that subjects them to FACA's requirements.

Third, the Center has sufficiently alleged that the DOGE Teams are not comprised only of full-time or permanent part-time federal employees, so that the exception for committees "composed wholly of full-time officer or employees of the federal government" does not apply to the Teams. *See* Dkt. No. 47 at ¶ 62, 94. This allegation is *confirmed* by the documents provided in the minimal "administrative record" and Defendants' inadequate FOIA responses, since those documents indicate that DOGE Team members have been designated as SGEs—a designation entirely consistent with FACA coverage. *Id.* at ¶ 94.

Although Defendants argue that the SGE status of DOGE Team members does not *automatically* mean they are not full-time or part-time government employees, Dkt. No. 49-1 at 22, that hardly affords a basis for dismissal. The available record contains *no* information indicating that any of the DOGE Team members are otherwise full-time or permanent part-time federal employees, even though this Court previously ordered Defendants to file "the entire administrative record in this matter." Minute Order, May 2, 2025. Rather, the scant information provided in the record and the FOIA responses confirm that most, if not all, of the DOGE Team members are not full-time or permanent part-time federal employees, as Plaintiffs set forth in their Second Amended Complaint. Dkt. No. 47 at ¶ 94.

Furthermore, the use of SGEs on the DOGE Teams is consistent with Plaintiff's contention that the DOGE Teams are advisory committees subject to FACA. *See e.g., Physicians for Social Responsibility v. Wheeler*, 359 F. Supp. 3d 27, 39-40 (D.C. Cir. 1993) (discussing how SGE is a designation used for members of an advisory committee to allow them to participate provided that the matter will not have a special or distinct effect on their interests). Indeed, an SGE is defined as "an officer or employee of the executive or legislative branch of the United States Government, of any independent agency of the United States or of the District of Columbia, who is retained, designated, appointed, or employed to perform, with or without compensation, for not to exceed one hundred and thirty days during any period of three hundred and sixty-five consecutive days, temporary duties either on a full-time or intermittent basis. . . , " 18 U.S.C. § 202(a), and is therefore by definition neither a full-time nor a permanent part-time employee of the federal government.

The designation of DOGE Team members as SGEs, therefore, is consistent with, and certainly cannot be used to preclude, the application of FACA. As the D.C. Circuit explained in *AAPS*, "FACA would be rather easy to avoid if an agency could simply appoint 10 private citizens as special government employees for two days, and then have the committee receive the Section 3(2) exemption as a body composed of full-time government employees." 997 F.2d at 915. Indeed, in *AAPS* the government similarly claimed that all members of certain working groups were full-time officers or employees of the government, and, for that reason alone, the working groups were not subject to FACA. The Court, however, did not accept the contention that "FACA's definition of 'full-time' extends to a person who works for the government for less than 130 days out of a year." *Id.*; *see also Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence*, 466 F. Supp. 3d 100, 121-122 (D.D.C. 2020).

Plaintiff's allegations regarding the DOGE Teams membership and employment status, supported by Defendants' own documents, are sufficient to survive a motion to dismiss, particularly where, as here, any additional relevant information is solely within Defendants' control. *See Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38, 47 (D.D.C. 2001) (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 646 (3d Cir. 1989)); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 98 (D.D.C. 2010) ("A court, in its discretion, may find that pleadings based on 'information and belief,' as opposed to being based on factual allegations, sufficient where it can be shown that 'the necessary information lies within the defendants' control'") (citing *Kowal*, 16 F.3d at 1279 n.3); *United States ex rel. Williams v. Martin-Baker Aircraft Co.,* 389 F.3d 1251, 1258 (D.C. Cir. 2004) (noting that "this circuit provides an avenue for plaintiffs unable to meet the particularity standard because defendants control the relevant documents -- plaintiffs in such straits may allege lack of access in the complaint") (citing *Kowal*, 16 F.3d at 1279 n.3).

Therefore, based on the well-pled allegations in the Complaint, the plain language of the President's Executive Orders, the limited administrative record, Defendants' FOIA responses to date, and the relevant case law, Plaintiff has plausibly alleged that the DOGE Teams are subject to FACA, and have certainly met the liberal notice pleading standard. *See Swierkiewicz*, 534 U.S. at 511-12 (reiterating that Federal Rule of Civil Procedure 8 requires "simply [that] … 'the defendant [give] fair notice of what the plaintiff's claim is and the grounds upon which it rests'") (citation omitted).

### B. Plaintiff need not show that the DOGE Team members have "vote or veto power."

Defendants also argue that Plaintiff must show that any non-federal employee participants on the DOGE Teams had voting or veto power in order to be considered "members"

of the committee. *See* Dkt. No. 49-1 at 23-26 (citing *In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) (en banc). However, that requirement is found nowhere in the statute. *See id.* at 728 ("Application of FACA depends on who is a member of a committee and who is not. On that subject, FACA is silent"). Accordingly, engrafting onto the law a requirement that Congress itself did not see fit to impose is not the "best reading" of FACA. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("In the business of statutory interpretation, if it is not the best, it is not permissible."); *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1231 (D.C. Cir. 2026) ("When a 'statutory text is silent,' we do not 'read into statutes words that aren't there' to impose additional requirements or qualifications that Congress declined to enact." (quoting *United States v. Neely*, 124 F.4th 937, 943 (D.C. Cir. 2024)).

Moreover, the situation in *Cheney* is easily distinguishable and the basis for that decision is inapposite here. In *Cheney*, the court's analysis was only and expressly in the context of a committee intended to inform the *President*, and not a federal agency. *See In re Cheney*, 406 F.3d at 728 ("In light of the severe separation-of-powers problems in applying FACA on the basis that private parties participated in, or influenced, or were otherwise involved with a committee *in the Executive Office of the President*, we must construe the statute strictly.") (emphasis added). That is because "[i]n making decisions on personnel and policy, and in formulating legislative proposals, *the President* must be free to seek confidential information from many sources, both inside the government and outside." *Id.* (emphasis added). The Court did not in any way suggest that the same constitutional concerns apply for an advisory committee giving advice and recommendations to all federal agencies in the routine course of carrying out their Congressionally-assigned responsibilities.

Indeed, the purpose of the rule set out in *Cheney* was to allow for individuals such as advisors to senators or other aides not employed by the federal government to be able to attend meetings or participate in the activities of a Presidential committee whose *official* membership consists *only* of federal officials, thereby allowing the President to have non-federal employee advisors provide input without converting it into an advisory committee subject to FACA. *See id.* (Comparing the role of congressional aides attending committee hearings to high-ranking Executive Branch officials serving on committees that commonly bring aides with them and finding that "[a]n aide might exert great influence, but no one would say that the aide was, therefore, a member of the committee"). Therefore, whether a person has "vote or veto" authority is only applicable to a situation where an individual not employed by the federal government attends meetings or participates in the activities of a *Presidential committee* whose *official membership* consists only of federal officials. *Id.* at 729. That does not apply here, where there is no concern over non-DOGE Team members participating on the DOGE Teams, and where the administrative record and FOIA records confirm that the DOGE Teams are comprised of temporary SGEs and not only full-time or permanent part-time government employees. At bare minimum, this plain language reading of the statute as applied to federal agencies (and the clear distinction with *Cheney*) is sufficiently "plausible" to survive a motion to dismiss. *See Kowal*, 16 F.3d at 1276 (the Court must construe the complaint liberally in the plaintiff's favor and grant the plaintiff the benefit of all reasonable inferences).

Nevertheless, as set forth in Plaintiff's Second Amended Complaint, FOIA records indicate that DOGE Team members *have* acted collectively and with equal input in compiling the list of contracts and grants recommended for cancellation. *See* Dkt. No. 47 at ¶ 98. Accordingly, even if Defendants are correct that a general requirement of "vote or veto" authority should be read into

FACA, the Center has amended its complaint to make that exact allegation. Plaintiff further alleges that "since Defendants have made no information publicly available concerning the specific membership status and 'vote or veto' authority of the DOGE Team members, including in the administrative record, more specific information regarding such status remains solely within the possession of Defendants." *Id*. In short, even if such vote or veto authority were required to establish a FACA claim for an advisory committee formed to provide advice and recommendations to a federal agency, Plaintiffs have sufficiently pled that element as supported by the available information, and thus there is no basis for dismissal.

**C. Plaintiff's allegations do not raise separation of powers concerns.**

Defendants' arguments regarding separation of powers, Dkt. No. 49-1 at 27-28, are nonsensical given that Plaintiff only seeks to enforce the longstanding transparency requirements in FACA as they pertain to the advice and recommendations given by the DOGE Teams to the agencies/departments in which they have been established. Defendants cite no precedent that even remotely suggests that FACA is (or could be) unconstitutional as it applies to Congress's establishment of basic public openness requirements when agencies rely on advisory committees that influence how agency decision-making affecting the public is carried out.

Importantly, this case does not concern any application of FACA that would undermine the operational activities of Defendants. *Contra id*. Indeed, to suggest that the application of a FACA would impermissibly chill agency deliberation or improperly interfere with the executive branch's power to run its internal affairs is inconsistent with the entire purpose of sunshine laws that Congress has imposed to protect the public from undue influence. *See Public Citizen*, 491 U.S. at 458 ("FACA's principal purpose was to establish procedures aimed at enhancing public accountability of federal advisory committees."). Furthermore, Plaintiff's claims do not involve

any of the Presidential actions that courts have found to implicate separation of powers concerns regarding FACA (or the work of USDS), and all of the cases cited by Defendants involve advising the President and affecting Presidential core functions. *Id.* This case involves neither. Because Plaintiff's FACA claims are specific to the advice and recommendations being given to the Defendant agencies and Departments by the DOGE Teams—which are comprised of outside advisors that have been hired as SGEs and tasked with overseeing a process to review and rescind regulations and recommend contracts for elimination, and are therefore not standard agency employees conducting internal day-to-day agency work, *contra* Dkt. No. 49-1 at 27-28—there is simply no basis for suggesting that the claims implicate separation of power concerns.

Defendants' arguments are also contrary to the well-established strong presumption in favor of the public access to information that will shed light on government activities. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989) (citations omitted). To suggest that the Defendants should be able to rely on outside advisors for a process to undermine regulations essential to safeguarding the public health, habitats, and wildlife impacted by federal activities in total secrecy due to separation of powers concerns is not only unsupported by any relevant case law, but presents a dangerous slippery slope towards authoritarianism, undermining the public accountability that is a cornerstone of democracy. *See Nat's Sec. Counselors v. CIA*, 898 F. Supp 2d 233, 252 (D.D.C. 2012) ("[A]n informed citizenry [is] vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.") (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Indeed, Defendants' separation of powers arguments would seem to also call into question the constitutionality of not only FACA, but FOIA, the Sunshine Act, and a

host of other laws designed to afford public access to the workings of the Executive Branch of government.

Thus, Defendants' arguments regarding separation of powers are misplaced. But even if the claims here did arguably raise such concerns (which they do not), that is an argument that can be properly addressed through summary judgment briefing. It affords no basis for dismissing otherwise valid FACA claims. *See Swierkiewicz*, 534 U.S. at 511-512 (notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims). Defendants appear to want to have the case dismissed prematurely and improperly based on irrelevant concerns. The Court should not acquiesce.

### D. Plaintiff has not brought a claim to enforce the "fairly balanced" or "inappropriate influence" provisions.

Defendants have mistaken the nature of the claims brought by Plaintiff, arguing that Plaintiff has requested the Court to ensure that the DOGE Teams are fairly balanced and for the Court to enforce FACA's requirements that advisory committees include members representing the environmental advocacy community. Dkt. No. 49-1 at 28-32. According to Defendants, this is non-justiciable because there is no basis for judicial review of FACA's statutory requirement that an advisory committee be fairly balanced to avoid inappropriate influence by special interests. *Id*. However, that argument is completely inapposite given Plaintiff has made no such claim, which is clear from the Complaint. Rather, Plaintiff has only brought claims seeking to enforce FACA's provisions requiring *information* about how the DOGE Teams are complying with FACA's fairly balanced and inappropriate influence provisions to be made publicly available. *See* Dkt. No. 47 at ¶¶ 116-120. Defendants advance no argument (and there is none) that FACA's public *disclosure* obligations are non-justiciable. *See Public Citizen*, 491 U.S. 440 *v. Dep't of*

*Justice* (holding that the plaintiff had standing to challenge the government's failure to comply with FACA's open meetings and document production requirements).

Defendants' attempt to reframe Plaintiff's claims based on background factual information provided in the Complaint regarding Plaintiff's correspondence with Defendants over FACA's requirements is misplaced and should be disregarded. While this background factual information establishes Plaintiff's efforts (and standing) to obtain information about the DOGE Teams' compliance with FACA, *see* Dkt. No. 47 at ¶¶ 25-29, it is not part of the claims that Plaintiff has brought. Defendants' irrelevant arguments regarding Plaintiff's supposed attempts to enforce FACA's substantive "fairly balanced" or "inappropriate influence" provisions thus provide no basis for dismissal.

## CONCLUSION

Plaintiff has made, at minimum, plausible claims that Defendants have established and utilized the DOGE Teams in violation of FACA. The motion to dismiss should be denied.

Respectfully submitted on this 1st day of May 2026.

*/s/ Lauren A. Parker*
Lauren A. Parker DC Bar No. 1670885
Center for Biological Diversity
1411 K Street NW, Suite 1300
Washington, DC 20005
lparker@biologicaldiversity.org
(202)-868-1008

Jared Margolis (*pro hac vice*)
Center for Biological Diversity
2852 Willamette St. # 171
Eugene, OR 97405
jmargolis@biologicaldiversity.org
(802) 310-4054

*Attorneys for Plaintiff Center for Biological Diversity*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2026, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

*/s/ Lauren A. Parker*
Lauren A. Parker
1411 K Street NW, Suite 1300
Washington, DC 20005
Tel: 202-868-1008
lparker@biologicaldiversity.org

*Attorney for Plaintiff Center for Biological Diversity*