**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,

*Plaintiff*,

v.

U.S. DEPARTMENT OF THE INTERIOR, *et al.*,

*Defendants*.

Case No. 1:25-cv-00612-RDM

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The *Twombly* and *Iqbal* plausibility standard applies..... 2

II. Plaintiff's mandamus claim should be dismissed because Plaintiff has an adequate alternative remedy under the APA. ..... 3

III. Plaintiff's APA and mandamus claims should be dismissed because Plaintiff failed to allege that the agencies and departments secretly established or utilized de facto advisory committees. ..... 5

IV. Plaintiff's APA and mandamus claims should be dismissed because Plaintiff failed to plausibly allege that the DOGE Teams functioned like federal advisory committees. ..... 8

A. Plaintiff failed to plausibly allege that the DOGE Teams performed primarily advisory functions. ..... 9

B. Plaintiff failed to plausibly allege that any of the DOGE Teams had an organized structure, had a fixed membership, or provided collective advice. ..... 11

C. Plaintiff failed to plausibly allege that any of the DOGE Teams included non-federal employees with a vote or veto. ..... 14

V. The rest of Plaintiff's arguments in opposition fail. ..... 18

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Cases**

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) .... 3, 6, 8
*Am. Oversight v. Biden*,
No. CV 20-00716 (RJL), 2021 WL 4355576 (D.D.C. Sep. 24, 2021) .... 4, 7, 11, 12
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2, 3, 8, 11
*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"),
997 F.2d 898 (D.C. Cir. 1993) .... *passim*
*Audubon of Kan., Inc. v. U.S. Dep't of Interior*,
67 F.4th 1093 (10th Cir. 2023) .... 4, 5
*Bain v. Off. of Att'y Gen.*,
648 F. Supp. 3d 19 (D.D.C. 2022) .... 17
*Batterton v. Marshall*,
648 F.2d 694 (D.C. Cir. 1980) .... 19
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 2
*Chatman–Bey v. Thornburgh*,
864 F.2d 804 (D.C. Cir. 1988) .... 5
*Ciralsky v. CIA*,
355 F.3d 661 (D.C. Cir. 2004) .... 2-3
*Citizens Against Donald Trump Inc. v. Trump*,
2026 WL 171774 (E.D. Mo. Jan. 22, 2026) .... 4
*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020) .... 20
*Conley v. Gibson*,
355 U.S. 41 (1957) .... 2
*Critical Mass Energy Proj. v. Nuclear Reg. Comm'n*,
975 F.2d 871 (D.C. Cir. 1992) .... 17
*Dufur v. U.S. Parole Comm'n*,
314 F. Supp. 3d 10 (D.D.C. 2018), *aff'd*, 34 F.4th 1090 (D.C. Cir. 2022) .... 2
*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
464 F. Supp. 3d 247 (D.D.C. 2020) .... 4, 5
*Erickson v. Pardus*,
551 U.S. 89 (2007) .... 2
*Food & Water Watch v. Trump*,
357 F. Supp. 3d 1 (D.D.C. 2018) .... *passim*
*Grigsby Brandford & Co. v. United States*,
869 F. Supp. 984 (D.D.C. 1994) .... 11
*Hassan v. Holder*,
793 F. Supp. 2d 440 (D.D.C. 2011) .... 5
*Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*,
641 F.3d 1259 (11th Cir. 2011) .... 5

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
238 F. Supp. 2d 174 (D.D.C. 2002) ........ 21
*Immigr. & Naturalization Serv. v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*,
510 U.S. 1301 (1993) ........ 19
*In re Cheney*,
334 F.3d 1096 (D.C. Cir. 2003), *majority opinion vacated*, 542 U.S. 367 (2004) ........ 6
*In re Cheney*,
406 F.3d 723 (D.C. Cir. 2005) ........ 15, 16, 17
*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........ 21
*Jensen v. Dep't of Navy*,
2026 WL 508002 (D.D.C. Feb. 24, 2026) ........ 3
*Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*,
219 F. Supp. 2d 20 (D.D.C. 2002) ........ 6, 7
*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
736 F. Supp. 2d 24 (D.D.C. 2010) ........ 4, 6
*Judicial Watch, Inc. v. Clinton*,
76 F.3d 1232 (D.C. Cir. 1996) ........ 9
*Kidd v. Dep't of Just.*,
362 F. Supp. 2d 291 (D.D.C. 2005) ........ 20
*Markson v. Scheriffius*,
2015 WL 1417847 (W.D.N.C. Mar. 27, 2015) ........ 2
*Meyers v. United States*,
272 U.S. 52 (1926) ........ 19
*Nader v. Baroody*,
396 F. Supp. 1231 (D.D.C. 1975) ........ 15, 20
*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 7
*Pub. Citizen v. U.S. Dep't of Just.*,
491 U.S. 440 (1989) ........ 15
*Pub. Citizen v. Comm'n on the Bicentennial of U.S. Const.*,
622 F. Supp. 753 (D.D.C. 1985) ........ 9
*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ........ 19, 20
*Sofamor Danek Grp., Inc. v. Gaus*,
61 F.3d 929 (D.C. Cir. 1995) ........ 1, 8, 9
*Stehney v. Perry*,
101 F.3d 925 (3d Cir. 1996) ........ 5
*Strunk v. Dep't of State*,
693 F. Supp. 2d 112 (D.D.C. 2010) ........ 5
*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ........ 2
*Teva Pharms. USA, Inc. v. Azar*,
369 F. Supp. 3d 183 (D.D.C. 2019) ........ 3
*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
768 F. Supp. 2d 117 (D.D.C. 2011) ........ 13

**Statutes**

5 U.S.C. § 706 ........ 6
5 U.S.C. § 1001(2) ........ 6, 8, 14, 15
5 U.S.C. § 1004(b)(2) ........ 18
5 U.S.C. § 1009(a) ........ 19
18 U.S.C. pt. I., ch. 11 ........ 16
18 U.S.C. § 202 ........ 15, 16

**Administrative & Executive Materials**

41 C.F.R. § 102–3.40(j) ........ 8, 9, 15
Exec. Order No. 14,158,
90 Fed. Reg. 8441 (Jan. 20, 2025) ........ *passim*
Exec. Order No. 14,219,
90 Fed. Reg. 10583 (Feb. 19, 2025) ........ 10-11,
*Constitutionality of Statute Requiring Exec. Agency to Report Directly to Cong.*,
6 Op. O.L.C. 632 (1982) ........ 20
*The Const. Separation of Powers Between the President & Cong.*,
20 Op. O.L.C. 124 (1996) ........ 20

**Other Authorities**

U.S. Gov't Accountability Off., GAO-08-611T, *Issues Related to the Independence and Balance of Advisory Committees* (2008), https://perma.cc/5AWG-39F9 ........ 16

## INTRODUCTION

In January 2025, the President directed federal agencies to hire or assign federal employees to implement the President's DOGE agenda of modernizing federal technology and making the federal government more efficient via Executive Order 14,158. Plaintiff theorizes that the DOGE Teams created by this Order were de facto advisory committees subject to the Federal Advisory Committee Act ("FACA"). If Plaintiff's theory is accepted, that would mean federal employees implementing the President's agenda would have been required to publicly disclose ahead of time every meeting amongst themselves and with other agency personnel—and to open up those meetings to the world. That theory plainly intrudes on the Executive Branch's internal operations and thus raises serious separation-of-powers problems.

But the Court need not reach those constitutional problems, because Plaintiff failed to plausibly allege that any of the DOGE Teams functioned like federal advisory committees. Plaintiff does not plausibly allege that any of the DOGE Teams (1) performed primarily advisory functions; (2) conducted organized and structured meetings where the members advise and deliberate as a group; (3) had a fixed membership; or (4) included non-federal employees with vote or veto power. The D.C. Circuit requires Plaintiff to allege facts establishing all of these elements. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton* ("*AAPS*"), 997 F.2d 898, 913 (D.C. Cir. 1993); *Sofamor Danek Grp., Inc. v. Gaus*, 61 F.3d 929, 934 & n.28 (D.C. Cir. 1995). Plaintiff did not plausibly allege any of them. This Court should thus dismiss with prejudice Plaintiff's FACA claims (counts one and two) under Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim.

## ARGUMENT

Plaintiff has not sufficiently pled facts showing that Defendants established or utilized de facto federal advisory committees in violation of FACA.

### I. The *Twombly* and *Iqbal* plausibility standard applies.

To salvage its deficient pleadings, Plaintiff claims that Defendants are imposing a heightened pleading standard. *See* Pl.'s Opp'n to Mot. to Dismiss at 13–14, ECF 51 ("Opp'n").[1] But it is Plaintiff, not Defendants, who are applying the wrong standard. In short, the plausibility standard outlined in *Iqbal* and *Twombly* apply, and that standard resolves this case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007).

In describing its pleading burden, Plaintiff repeatedly—and tellingly—relies on *Erickson v. Pardus*, 551 U.S. 89 (2007), which describes and applies the pleading standard for *pro se* litigants. *See* Opp'n at 13, 21. That standard, even assuming that it survived past *Iqbal*, does not apply to a represented party like Center for Biological Diversity. *See Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 23 (D.D.C. 2018) (Moss, J.) (applying *Erickson* to "pleadings drafted by *pro se* litigant[]"), *aff'd*, 34 F.4th 1090 (D.C. Cir. 2022); *see also Markson v. Scheriffius*, 2015 WL 1417847, at *2 (W.D.N.C. Mar. 27, 2015) ("At best, the most that can be said about *Erickson* is not that it is inconsistent with either *Iqbal* or *Twombly*, but, rather, that it is a *per curiam* decision that was decided under the *Twombly* plausibility standard, but before the Court clearly defined in *Iqbal* what constituted a plausible claim.").

Plaintiff then relies on cases applying the pleading standard outlined in *Conley v. Gibson*, 355 U.S. 41 (1957). *See* Opp'n at 13, 19, 21, 25, 30 (repeatedly relying on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) that applied the *Conley* standard; and then repeatedly relying on *Ciralsky*

[1] Defendants cite to ECF page numbers at the top right corner of the cited document.

*v. CIA*, 355 F.3d 661 (D.C. Cir. 2004) that applied the *Conley* standard). "The Supreme Court, however, overruled *Conley*[.]" *Teva Pharms. USA, Inc. v. Azar*, 369 F. Supp. 3d 183, 201 (D.D.C. 2019) (Moss, J.). "Under current law, unlike under *Conley*, a complaint must contain 'more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). The "mere possibility of misconduct" is also not enough. *Iqbal*, 556 U.S. at 679. Instead, under *Iqbal*, the Court must accept all of the operative complaint's *well-pleaded* facts as true, but should disregard any legal conclusions. *Id.* at 678. The Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 678–79 (concluding that plausible facts are ones that allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Applying that standard here, Plaintiff must allege plausible facts that, taken as true, show that the DOGE Teams were secretly acting as de facto advisory committees rather than performing their assigned operational functions of implementing the President's agenda under Executive Order 14,158. That is where Plaintiff's second amended complaint falls far short.

## II. Plaintiff's mandamus claim should be dismissed because Plaintiff has an adequate alternative remedy under the APA.

Plaintiff makes little effort to justify maintaining duplicative claims under both the APA and mandamus, despite each requiring the absence of an adequate alternative remedy. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (describing plaintiff's burden to show that "no adequate alternative remedy exists" as a jurisdictional requirement for a mandamus claim); *Jensen v. Dep't of Navy*, 2026 WL 508002, at *4 (D.D.C. Feb. 24, 2026) (dismissing claim because APA's adequate remedy bar is a requirement for stating a cognizable cause of action). As outlined in Defendants' opening brief, Plaintiff failed to plead the elements of a mandamus claim. *See* Defs.' Mem. ISO Mot. to Dismiss at 15–34, ECF 49-1 ("Defs.' Mem."). So Plaintiff resorts to

a "not yet" plea, urging the Court to postpone a decision on this issue pending hypothetical future developments. *See* Opp'n at 17–18. That argument fails.

First, Plaintiff asserts that dismissal is premature because "it is not yet clear whether relief under the APA alone will provide an adequate remedy." Opp'n at 18. But Plaintiff never identifies—either in its operative complaint or opposition brief—any relief for a FACA violation under mandamus that is unavailable under the APA.[2] To the contrary, Plaintiff concedes that both its APA and mandamus claims seek the same end: to "compel[] agency compliance with mandatory legal duties." *Id.* That concession is dispositive. Where the APA provides a vehicle for the precise relief sought, mandamus is unavailable as a matter of law. *See Citizens Against Donald Trump Inc. v. Trump*, 2026 WL 171774, at *4 (E.D. Mo. Jan. 22, 2026) (holding in FACA claim involving "DOGE" that "[b]ecause the APA constitutes an adequate and available remedy—and Plaintiff seeks relief under the APA—Plaintiff cannot show entitlement to the extraordinary remedy of mandamus"). Plaintiff's failure to state a viable APA claim does not render the APA remedy "inadequate"; it only underscores the deficiencies of Plaintiff's legal theory and pleadings. *See Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023) (concluding that just because the plaintiff "tried and failed" to plead an APA claim, the plaintiff "can't then turn to mandamus relief as an alternative").

---

[2] In the FACA context, courts in this district have rejected APA claims brought against non-agency defendants and instead applied the mandamus standard to those non-agency defendants. *See Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 464 F. Supp. 3d 247, 265 (D.D.C. 2020); *Am. Oversight v. Biden*, No. CV 20-00716 (RJL), 2021 WL 4355576, at *6–7 (D.D.C. Sep. 24, 2021). Plaintiff does not seek relief against the President or the Executive Office of the President. Plaintiff seeks relief purely against federal agencies subject to the APA and thus has an adequate alternative remedy. The one case Plaintiff relies on in the FACA context—which ended in dismissal of the FACA claims under Rule 12—does not address or acknowledge mandamus's adequate alternative remedy bar. *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010). And the Court in *Judicial Watch* seemed to acknowledge that the remedies in the FACA context are the same under mandamus and the APA. *See id.* at 30–32.

Plaintiff next contends that Rule 12 dismissal of its mandamus claim based on an adequate alternative remedy lacks support in the caselaw. *See* Opp'n at 17. Plaintiff is wrong. Courts in this circuit have repeatedly dismissed mandamus claims at the pleading stage upon finding an adequate alternative remedy. *See, e.g.*, *Hassan v. Holder*, 793 F. Supp. 2d 440, 446 (D.D.C. 2011) (dismissing Mandamus Act claim under Rule 12 because INA provided "adequate alternative remedy"); *Strunk v. Dep't of State*, 693 F. Supp. 2d 112, 113 n.1 (D.D.C. 2010) (holding that remedy for Plaintiff's request exists under FOIA, precluding mandamus relief at the motion-to-dismiss stage); *cf. Chatman–Bey v. Thornburgh*, 864 F.2d 804, 806 (D.C. Cir. 1988) ("Because . . . habeas is an available and potentially efficacious remedy, it is clear beyond reasonable dispute that mandamus will not appropriately lie."). The same is true in other circuits. *See, e.g.*, *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) (concluding at the motion-to-dismiss stage that the "availability of relief under the Administrative Procedure Act . . . forecloses a grant of a writ of mandamus"); *Audubon of Kan., Inc.*, 67 F.4th at 1111 n.10 (concluding at the motion-to-dismiss stage that "[w]hen review by other means, such as under the APA, is possible, mandamus isn't available"); *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996) (concluding at motion-to-dismiss stage that since APA relief was available, "grant of a writ of mandamus would be improper").

Because the APA supplies an adequate alternative remedy for a sufficiently pled FACA claim against federal agencies, the mandamus claim should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

## III. Plaintiff's APA and mandamus claims should be dismissed because Plaintiff failed to allege that the agencies and departments secretly established or utilized de facto advisory committees.

Because "FACA does not provide for a private right of action," *Dunlap*, 464 F. Supp. 3d at 247 (quotation omitted), Plaintiff must establish the threshold elements under the APA—or

under mandamus if the Court does not dismiss the mandamus claim for the availability of an adequate alternative remedy. To state an APA claim, Plaintiff must challenge a final agency action. *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 36–38 (D.D.C. 2002). And for the Court to have jurisdiction over a mandamus claim, Plaintiff must plead, among other things, that it has a "a clear and indisputable right to relief" and that "that the government agency or official is violating a clear duty to act." *Burwell*, 812 F.3d at 189. Plaintiff fails to establish these threshold elements because it has not plausibly alleged that Defendants secretly established or utilized de facto advisory committees.

Plaintiff's APA claim—both to challenge purported final agency action under 5 U.S.C. § 706(2) and to compel action unlawfully withheld under 5 U.S.C. § 706(1)—fall short because the second amended complaint does not plausibly show that Defendants "established or utilized" de facto advisory committees.[3] *See* 5 U.S.C. § 1001(2)(A); *Food & Water Watch v. Trump*, 357 F. Supp. 3d 1, 11 (D.D.C. 2018) (holding that a "de facto" advisory committee is "at a minimum . . . difficult to prove"); *see also In re Cheney*, 334 F.3d 1096, 1117–18 (D.C. Cir. 2003) (Randolph, J., dissenting) (arguing that "the de facto member doctrine" should be "cast aside," and emphasizing the "constitutional difficulties" and "separation of powers" problems posed by the de facto FACA committee theory), *majority opinion vacated*, 542 U.S. 367 (2004). Plaintiff dismisses Defendants' arguments as "completely baseless." Opp'n at 15. But it is Plaintiff's arguments that break down under scrutiny.

[3] The court in *Judicial Watch, Inc. v. U.S. Department of Commerce*, 736 F. Supp. 2d at 27–28, 32–35, treated the final agency action requirement distinct from the statutory requirement that an agency "establish[] or utilize[]" an advisory committee. However, the final agency action and statutory inquiry seem to collapse into determining whether the agency consummated a decision to establish or utilize an advisory committee. Whether this Court treats it as a final agency action question, a part of stating a statutory element, or both, Plaintiff has not sufficiently pled that the Defendant agencies and departments established or utilized de facto advisory committees.

To start, Plaintiff tries to sidestep the final-agency-action requirement by invoking § 706(1), in addition to § 706(2). That move takes Plaintiff nowhere. In this case, there is no distinction between § 706(1) and § 706(2). To "compel agency action unlawfully withheld or unreasonably delayed" under § 706(1), Plaintiff must plausibly allege that the defendant agencies and departments "failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). Here that means pleading that each defendant agency and department made a decision to establish or utilize a de facto advisory committee, thereby triggering a nondiscretionary duty to comply with FACA. And Plaintiff's § 706(2) challenge of a final agency action in the FACA context requires much the same showing: that the agency consummated a decision to establish or utilize a de facto advisory committee without complying with FACA. *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d at 20, 36–38. Under either APA theory, Plaintiff's second amended complaint does not make that showing.

For example, Plaintiff asserts that it adequately alleged a decision to establish DOGE Teams without complying with FACA. Opp'n at 15–16. That assertion, however, skips *the* critical step. The relevant question is not whether the Defendant agencies or departments created some internal agency team; it is whether they decided to establish de facto advisory committees comprised of non-federal employees. Plaintiff does not plead plausible facts showing the existence of such advisory committees. Despite receiving thousands of pages of records about the DOGE Teams before amending its complaint, *see* ECF 46, Plaintiff still does not plead *any* facts describing how any particular DOGE Team was formed at the specific Defendant agencies or departments, what it did, or how it functioned. These are necessary details needed to plausibly allege that the DOGE Teams were established or utilized as de facto advisory committees. *See Am.*

*Oversight*, 2021 WL 4355576 at *8–9 (dismissing FACA claim in part because the plaintiff "offer[ed] no details on how the supposed committee functioned"). Instead, Plaintiff refers vaguely to "DOGE Teams" across the entire federal government and leaves the rest to inference. *See generally* Second Am. Compl., ECF 47 ("Sec. Am. Compl.") (over 100 general and non-specific references to "DOGE Teams"). That is not a well-pleaded claim. *See Iqbal*, 556 U.S. at 678.

Nor does Executive Order 14,158 salvage the operative complaint. The Executive Order directs agencies to assemble a DOGE Team of federal "employees" to perform operational functions of implementing the President's DOGE agenda. *See* Exec. Order No. 14,158 §§ 3(b)–(c), 4, 90 Fed. Reg. 8441, 8441-42 (Jan. 20, 2025) ("E.O. 14,158"). A decision to establish a body of agency personnel to carry out internal operations is not tantamount to establishing a de facto advisory committee. *See Sofamor Danek Grp.*, 61 F.3d at 934 & n.28; 5 U.S.C. § 1001(2)(B)(i); 41 C.F.R. § 102–3.40(j). Indeed, because FACA expressly excludes such a body from the definition of an advisory committee, Plaintiff's claim fails at the outset based on the Executive Order upon which Plaintiff relies. *See* 5 U.S.C. § 1001(2)(B)(i).

Therefore, because Plaintiff never pled that the Defendant agencies and departments established or utilized secret de facto advisory committees, the APA claim should be dismissed for failure to state a claim. And to the extent this Court does not dismiss the mandamus claim for the availability of an adequate alternative remedy, Plaintiff's mandamus claim should be similarly dismissed for failing to plead that Defendants established or utilized de facto advisory committees, as Defendants have not violated a clear duty to act. *See Burwell*, 812 F.3d at 189.

**IV. Plaintiff's APA and mandamus claims should be dismissed because Plaintiff failed to plausibly allege that the DOGE Teams functioned like federal advisory committees.**

To be considered a federal advisory committee subject to FACA, Plaintiff's second amended complaint must plausibly establish that the DOGE Teams performed primarily advisory

functions within the agencies; had a degree of formality that includes an organized structure, a fixed membership, and a unified approach to providing advice; and included non-federal employees with a vote or veto over the committee's decisions. All of these are necessary elements of an advisory committee subject to FACA, de facto or otherwise. *See AAPS*, 997 F.2d at 913; *Sofamor Danek Grp.*, 61 F.3d at 934 & n.28. And as outlined in Defendants' opening brief, courts in this district routinely determine at the motion-to-dismiss stage whether a group meets the elements of an advisory committee subject to FACA. *See* Defs.' Mem. at 16 (citing cases). Plaintiff here failed to plead any of these necessary elements.

A. <u>Plaintiff failed to plausibly allege that the DOGE Teams performed primarily advisory functions.</u>

Under D.C. Circuit law and federal regulations, groups performing primarily "operational" functions, rather than advisory functions, within agencies are "not covered by FACA." *Sofamor Danek Grp.*, 61 F.3d at 934 & n.28; *see* 41 C.F.R. § 102–3.40(j) (same). For example, in *Judicial Watch, Inc. v. Clinton*, 76 F.3d 1232, 1233 (D.C. Cir. 1996), the President established a Trust that the plaintiff contended was subject to FACA. The D.C. Circuit affirmed dismissal in part because the Trust's purpose was "not primarily advisory in nature." *Id.* (citing *Sofamor Danek Grp.*, 61 F.3d at 934). And in *Public Citizen v. Commission on the Bicentennial of U.S. Constitution*, 622 F. Supp. 753, 757–58 (D.D.C. 1985), the court held that a commission was "not an advisory committee within the meaning of [FACA]" because on the face of the commission-creating law, the commission did "not render advice to the federal government, but instead fulfill[ed] its substantive and active duties." *Id.* (recognizing that the Commission's duties vis-à-vis the federal government included not only "develop[ing] the[] plans, but also . . . carry[ing] them out"). Thus, the commission's duties were "primarily operational." *Id.*

So too here. Based on the face of the Executive Orders that Plaintiff invokes, the DOGE Teams performed primarily operational—not advisory—functions. Although Plaintiff claims that Executive Orders 14,158 and 14,219 establish the DOGE Teams as advisory committees, Opp'n at 20–21, the text of the Executive Orders belies that strained argument.

Take Executive Order 14,158. It established the Department of Government Efficiency "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize efficiency and productivity." E.O. 14,158 § 1. The Executive Order directs agencies to "hire or assign" federal "employees" to carry out that DOGE agenda. *Id.* § 3(c). Plaintiff latches on to the single appearance of the word "advise" in the Executive Order, claiming that alone turns the DOGE Teams into federal advisory committees. *See* Sec. Am. Compl. ¶ 85. The mere existence of the word "advise" in an Executive Order does not plausibly turn a group into a federal advisory committee. But even if it did, that sentence from the Executive Order states that the "DOGE Team Leads"—not the DOGE Teams themselves—are tasked with "advis[ing] their respective Agency Heads on implementing the President's DOGE Agenda." E.O. 14,158 § 3. By contrast, the DOGE Teams under the originating Executive Order are tasked with implementing the DOGE Agenda of modernizing federal technology and software. *See* E.O. 14,158 §§ 1, 3. That is a group of agency employees doing the work of the agencies and performing operational functions, not the work of an advisory committee.

As to Executive Order 14,219, Plaintiff alleges that the Executive Order "specifically empowered" the DOGE Teams "to oversee a process at the federal agencies to review and rescind agency regulations." Opp'n at 21. Yet even if that were the correct reading of Executive Order 14,219, which it is not, "oversee[ing] a process" to review and rescind regulations establishes that the DOGE Teams were doing the work of the agencies and performing operational functions. *See*

90 Fed. Reg. 10583 (Feb. 19, 2025) ("E.O. 14,219"). Again, such a group is not an advisory committee.

As a final fallback, Plaintiff alleges that DOGE Teams "have been meeting to discuss matters" and to advise agency leadership on certain projects. Opp'n at 21 (quoting Sec. Am. Compl. ¶ 95). Plaintiff insists that this shows the existence of an advisory committee. *Id.* That is an implausible inference. Meeting with agency leadership is an unremarkable, irrelevant allegation given that the same could be said of essentially any group of federal employees. *See Food & Water Watch*, 357 F. Supp. 3d at 12 (holding that the existence of "meetings is not dispositive, or even particularly probative, especially where, as here, many of these 'meetings' were not meetings at all but simply email exchanges or phone calls, which apparently did not take place according to a regular schedule"); *Grigsby Brandford & Co. v. United States*, 869 F. Supp. 984, 1002 (D.D.C. 1994) ("*ad hoc*, unstructured meeting[s] [are] specifically exempted from FACA's ambit"). It does not support a "reasonable inference" that the DOGE Teams were performing primarily advisory functions. *See Iqbal*, 556 U.S. at 678. This pleading failure alone warrants dismissal of Plaintiff's FACA claims.

B. Plaintiff failed to plausibly allege that any of the DOGE Teams had an organized structure, had a fixed membership, or provided collective advice.

"A group is only an advisory committee subject to FACA where it renders 'advice or recommendations, *as a group*, and not as a collection of individuals.'" *Am. Oversight v. Biden*, No. 20-cv-00716 (RJL), 2021 WL 4355576 at *7 (D.D.C. Sept. 24, 2021) (quoting *AAPS*, 997 F.2d at 913). Moreover, "FACA is only implicated where a purported committee has 'in large measure, an organized structure, a fixed membership, and a specific purpose.'" *Id.* at *8 (quoting *AAPS*, 997 F.2d at 914).

In *American Oversight*, the plaintiff claimed that a task force was an advisory committee, but the court dismissed the FACA claim under Rule 12 upon concluding that the plaintiff had "not adequately pled the existence of an advisory committee subject to FACA." 2021 WL 4355576, at *7. The court there first concluded dismissal was appropriate because the plaintiff did not include any "detailed allegations indicating collaboration and the provision of collective advice[.]" *Id.* at *8. The court also held dismissal was appropriate because, though the plaintiff alleged that the task force "held meetings," the plaintiff "offer[ed] no details on how the supposed committee functioned" and thus did not plausibly allege that the task force had "in large measure, an organized structure, a fixed membership, and a specific purpose." *Id.* at *8–9 (quoting *AAPS*, 997 F.2d at 914).

Plaintiff here has similarly failed to plausibly allege that the DOGE Teams had an organized structure, a fixed membership, or provided collective advice. Plaintiff stakes its pleadings entirely on an inaccurate reading of Executive Orders 14,158 and 14,219. *See* Opp'n at 21–22 (citing Sec. Am. Compl. ¶¶ 91–93). That choice is revealing, just as it is misguided. Despite receiving thousands of pages of records concerning the DOGE Teams' schedules and communications before amending its complaint, Plaintiff relies entirely on the same Executive Orders it invoked a year ago. But those Executive Orders do not plausibly establish the basic elements required to state a FACA claim.

*First*, the only support Plaintiff provides for its assertion that the DOGE Teams have a fixed membership is that Executive Order 14,158 directs the DOGE Teams to include "at least four" members, which "typically" should include a DOGE Team lead, an engineer, an HR specialist, and an attorney. *See* Opp'n at 21 (citing Sec. Am. Compl. ¶ 91); *see also* E.O. 14,158 § 3(c). But as explained in Defendants' opening brief, the presence of a minimum requirement

does not say anything about the DOGE Teams having a fixed membership. According to the Executive Order, a DOGE Team's composition could have changed at any time: it could have had four federal employees one day and then added another federal employee to the Team the next day. And in fact, the administrative record confirms the highly fluid—not fixed—DOGE Team membership. For example, at USDA, its DOGE Team members all joined at different times. *See* Unredacted Administrative R. at USDA 001–11, ECF 39-1 ("AR") (showing five different start dates). And as of April 1, 2025, the DOT DOGE Team consisted of one agency employee, with the second member having already departed the agency on March 8, 2025 about a month after starting. *See* Simpson Certification of AR, ECF 26-2 at 8–9. This highly fluid structure stands in direct contrast to the stable composition and organized structure required of advisory committees. And a group with staggered, non-overlapping start dates with individuals leaving soon after starting cannot possibly provide collective advice or produce collaborative work product either. A similar pattern appears across the other Defendant agencies and departments. *See, e.g.*, AR at DOT 1–9, EPA 1–12, DOI 1–10. Because Plaintiff cites and relies on the administrative record in its operative complaint, *see* Sec. Am. Compl. ¶¶ 94, 97–98, the Court can consider such records in resolving Defendants' motion to dismiss, *see Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (holding that a court ruling on a Rule 12(b)(6) motion can consider "documents . . . incorporated by reference in the complaint" or "documents 'upon which the plaintiff's complaint necessarily relies'" (citations omitted)).

*Second*, Plaintiff argues that Executive Order 14,158's directive to "coordinate their work with USDS" implies a "unified approach" to providing advice to the agencies. Opp'n at 22 (quoting Sec. Am. Compl. ¶ 92). But that interpretation misunderstands both the phrase and its context. For starters, that sentence from the Executive Order states that the agencies' respective "DOGE Team

Leads"—not the DOGE Teams themselves—shall "coordinate their work with USDS." E.O. 14158 § 3(c). Nowhere in the Executive Order does it direct the DOGE Team members to "coordinate" their work with USDS, much less coordinate their work amongst themselves. And as explained in Defendants' Motion to Dismiss, the word "coordination" does not, as a matter of ordinary English usage, imply collective or unified action. *See* Defs.' Mem. at 25. Plaintiff notably does not respond to this argument.

*Finally*, Plaintiff claims that "[t]his structure and unified approach is further clarified in Executive Order 14219," which according to Plaintiff "provides a specific role for the DOGE Teams in overseeing and advising on agency efforts to rescind regulations." Opp'n at 22 (citing Sec. Am. Compl. ¶ 93). But besides mentioning "DOGE Teams" once in its definition of "DOGE Team Lead," *see* E.O. 14,219 § 6(c), the Executive Order says *nothing* about the DOGE Teams themselves. It says nothing about the DOGE Teams collectively advising the agencies; neither the word "advise" nor its derivatives even appear in the Executive Order. Plaintiff has thus failed to plausibly allege that the DOGE Teams at the Defendant agencies and departments had an organized structure, had a fixed membership, or provided collective advice. This alone is another reason to dismiss Plaintiffs' FACA claims.

C. Plaintiff failed to plausibly allege that any of the DOGE Teams included non-federal employees with a vote or veto.

FACA does not apply to any group comprised entirely of full-time or permanent part-time federal officers or employees. 5 U.S.C. § 1001(2)(B)(i). To establish a prima facie FACA claim, Plaintiff must plead plausible facts that at least one person associated with each DOGE Team qualified as a non-federal employee under FACA. *See AAPS*, 997 F.2d at 903–04, 909, 915. And even if Plaintiff could do that (which it did not), Plaintiff also needed to plead plausible facts that the non-federal employee had a "vote in or, if the committee acts by consensus, a veto over the

committee's decisions." *In re Cheney*, 406 F.3d 723, 728 (D.C. Cir. 2005) (en banc). Plaintiff failed to plead both requirements.

**Plaintiff has not plausibly alleged that the DOGE Teams included any non-federal employees.** Plaintiff asserts that it sufficiently alleged that the DOGE Teams included individuals who were not full-time or permanent part-time federal employees. *See* Opp'n at 23–25 (citing Sec. Am. Compl. ¶ 94). But the only factual basis Plaintiff provides for such a conclusion is that some DOGE Team members served as Special Government Employees ("SGEs"). *Id.*

Plaintiff starts off on the wrong foot by invoking Title 18's definition of SGE. *See id.* at 24 (quoting 18 U.S.C. § 202(a)). The D.C. Circuit has held that Title 18's definitions do not "control FACA." *AAPS*, 997 F.2d at 915. Instead, because FACA does not define the terms "full-time[] or permanent part-time officer[] or employee[]," 5 U.S.C. § 1001(2)(B)(i), the D.C. Circuit has instructed courts to interpret these terms "in light of [FACA's] purpose to regulate the growth and operation of advisory committees." *AAPS*, 997 F.2d at 915.

And the structure and purpose of the DOGE Teams, as defined by Executive Order 14,158, excludes the DOGE Teams from FACA's ambit. The DOGE Teams' structure and purpose fits within FACA's federal employee exclusion, as the DOGE Teams are by the terms of the Executive Order made up of federal "employees" working and operating within the agency rather than serving as outside advisors to the agency. *See Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 446 (1989) (finding that FACA was aimed at regulating groups that play "exclusively advisory" roles in government); *Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975) (holding that FACA was not intended to "intrude upon the day-to-day" operations of executive functions); 41 C.F.R. § 102–3.40(j).

And for purposes of FACA, the SGE classification is not an employment status or designation, but an ethics classification. *See* 18 U.S.C. § 202; *see generally* 18 U.S.C. pt. I., ch. 11. It refers to the length and nature of federal service for purposes of conflict-of-interest rules. *See* 18 U.S.C. § 202; 18 U.S.C. pt. I., ch. 11. For example, an advisory committee member appointed as an SGE is subject to certain conflict-of-interest rules. *See* U.S. Gov't Accountability Off., GAO-08-611T, *Issues Related to the Independence and Balance of Advisory Committees* (2008), https://perma.cc/5AWG-39F9. But agencies can avoid certain conflict-of-interest rules by appointing an advisory committee member as a "representative" member, not an SGE. *Id.* In sum, the Court cannot draw any reasonable inferences about a person's employment status purely from the SGE label. Plaintiff must plead something more, but it does not. Therefore, the second amended complaint does not plausibly allege that any DOGE Team member was not a federal employee as required to trigger FACA.

**Plaintiff has not plausibly alleged that any non-federal employee held a vote or veto.** Even assuming that non-federal employees participated in the DOGE Teams, Plaintiff still fails to plead the existence of a de facto advisory committee. "[P]articipation in [federal advisory] committee meetings or activities, even influential participation, . . . [is not] enough to make someone a member of the committee." *In re Cheney*, 406 F.3d at 728. Under D.C. Circuit precedent, "a committee is composed wholly of federal officials" and thus not subject to FACA unless a non-federal employee is shown to hold a vote or veto over the committee's decisions. *Id.*; *see also Food & Water Watch*, 357 F. Supp. 3d at 11 ("What is clear from the case law is that, for an individual to be considered a FACA committee member, he or she must have a 'vote in, or if the committee acts by consensus, a veto over the committee's decisions.'" (quoting *In re Cheney*, 406 F.3d at 728)).

Plaintiff first asks this Court to disregard *Cheney*'s vote-or-veto requirement because "[it] is found nowhere in the statute." Opp'n at 26. But "it is for the D.C. Circuit, and not this Court, to harmonize . . . precedent and to say when D.C. Circuit decisions are and are not overruled[.]" *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 52 (D.D.C. 2022) (Moss, J.); *see also Critical Mass Energy Proj. v. Nuclear Reg. Comm'n*, 975 F.2d 871, 876 (D.C. Cir. 1992) (noting that circuit court decisions "bind the circuit 'unless and until overturned by the court en banc or by Higher Authority'" (citation omitted)). The vote-or-veto requirement is binding unless and until the D.C. Circuit says otherwise.

Plaintiff then contends that *Cheney*'s vote-or-veto requirement does not apply to this case, because it "was only and expressly in the context of a committee intended to inform the *President*, and not a federal agency." Opp'n at 26. Plaintiff is wrong. In *Food and Water Watch*, the court applied the vote or veto requirement to a group alleged to be advising both the President and the Department of Transportation, showing that the requirement is not limited to groups allegedly advising the President only. 357 F. Supp. 3d at 12.

And although *Cheney*'s holding was made in the context of a group allegedly advising the President, the purpose of the vote-or-veto requirement was to prevent the overreach of FACA into day-to-day executive functions. *See* 406 F.3d at 728 (holding that "[s]eparation-of-powers concerns strongly support this interpretation of FACA"). Because without such a requirement, the D.C. Circuit reasoned that FACA could sweep in anyone loosely or intermittently involved in an alleged committee's meetings or decisions. *Id.* Despite Plaintiff claiming otherwise, Opp'n at 27, that same separation-of-powers concern follows through to this case. The DOGE Teams were tasked with implementing the President's DOGE agenda of modernizing federal technology and systems within each agency. E.O. 14,158 §§ 1, 3. Even if the DOGE Teams were de facto advisory

committees under FACA (which they are not), any agency employee's participation in any of that same work could transform that person into a committee member if the vote-or-veto requirement was discarded. This untenable proposition could result in countless agency employees being implicated, and the public disclosure, attendance, and other requirements of FACA applying to even routine internal meetings, raising the same separation-of-powers concern that animated *Cheney*'s holding.

At bottom, Plaintiff failed to plead plausible facts that non-federal employees held a vote or veto over the DOGE Teams' day-to-day work at the defendant agencies or departments. *See* Defs.' Mem. at 33–34. Plaintiff's second amended complaint should thus be dismissed.

## V. The rest of Plaintiff's arguments in opposition fail.

Plaintiff raises two additional arguments in opposition to the motion to dismiss, neither of which cures the central deficiencies of this case: Plaintiff's failure to plead that Defendants secretly established or utilized de facto advisory committees. Still, Defendants address each of these additional arguments in turn.

**Plaintiff's FACA claims raise constitutional separation-of-powers problems.** Plaintiff dismisses Defendants' separation-of-powers argument as "nonsensical." Opp'n at 28. But Plaintiff never addresses the structural problems at the center of its FACA theory. Unlike FOIA, which permits disclosure of non-exempt agency records after their creation, FACA imposes real-time operational constraints. Applying those constraints to federal employees carrying out the President's agenda would improperly intrude into the Executive Branch's organization, deliberations, decisionmaking, and internal operations.

FACA requires that advisory committees be "fairly balanced" and free from "inappropriate[] influence[] by the appointing authority." 5 U.S.C. § 1004(b)(2), (3). Under Plaintiff's theory, courts and third-party litigants would effectively gain a say in who the President

may select to implement his agenda *inside* executive agencies and departments, *i.e.*, to require that political appointees and career civil servants be joined by unappointed, unelected members of the public. Indeed, Plaintiff claims that "to ensure that the DOGE Teams are fairly balanced . . . it is imperative that the DOGE Teams include members representing the environmental advocacy community's interest." Sec. Am. Compl. ¶ 28. And worse, to ensure no "inappropriate influence by the appointing authority," third-party litigants could use FACA to police the agencies' and the President's influence over federal employees tasked with implementing the President's DOGE agenda. This would be an extraordinary intrusion into core executive functions. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 213 (2020) ("Article II 'grants to the President' the 'general administrative control of those executing the laws, including the power of appointment and removal of executive officers.'" (emphasis omitted) (quoting *Meyers v. United States*, 272 U.S. 52, 163–64 (1926)); *Immigr. & Naturalization Serv. v. Legalization Assistance Project of L.A. Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1305–06 (1993) (O'Connor, J., in chambers) (staying order that would amount is an "improper intrusion by a federal court into the workings of a coordinate branch of the Government"); *Batterton v. Marshall*, 648 F.2d 694, 707 (D.C. Cir. 1980) (APA's rule of agency organization, procedure, or practice "was provided to ensure that agencies retain latitude in organizing their internal operations.").

The problems do not end there. FACA also requires that advisory committee meetings be publicly noticed in advance and opened to the public. 5 U.S.C. § 1009(a). Applied here, that would mean that whenever DOGE Team members met with one another, with agency leadership, or with any other agency employee to discuss implementation of the President's DOGE agenda, those meetings would have had to be announced ahead of time and opened to the public. That is exactly what Plaintiff seeks by asking the Court to "[e]njoin Defendants from meeting with or otherwise

relying on the work of the DOGE Teams unless and until they are brought into full compliance with FACA." Sec. Am. Compl., Prayer for Relief ¶ c. Plaintiff's FACA theory would thus transform day-to-day executive branch functions, deliberations, and decisions into real time public proceedings, raising serious constitutional separation-of-powers problems. *See Seila L. LLC*, 591 U.S. at 213, 224 (explaining how executive authority remains subject to the ongoing supervision and control of the elected President); *Common Cause v. Trump*, 506 F. Supp. 3d 39, 46 (D.D.C. 2020) (rejecting request that would "substantially interfere with ongoing Executive Branch decision-making"); *Constitutionality of Statute Requiring Exec. Agency to Report Directly to Cong.*, 6 Op. O.L.C. 632, 638 (1982) ("[T]he constitutional separation of powers requires the President to have effective control over the decisionmaking process within the Executive Branch."); *The Const. Separation of Powers Between the President & Cong.*, 20 Op. O.L.C. 124, 135 (1996) (objecting to law "that unduly reduces the accountability of officials or agencies to the President, or that unnecessarily interferes with the flexibility and efficiency of executive decision making and action"). It would also eviscerate the deliberative process privilege. *See Kidd v. Dep't of Just.*, 362 F. Supp. 2d 291, 295–96 (D.D.C. 2005) ("The [deliberative process] privilege serves to assure agency employees that they can provide a decisionmaker with their uninhibited opinion without fear of public scrutiny, to prevent premature disclosure of proposed policies, and to protect against public confusion through the disclosure of document advocating or discussing reasons for policy decisions that were ultimately not adopted.").

Imposing operational constraints on an agency's day-to-day work is not what Congress intended when passing FACA.[4] *See Nader*, 396 F. Supp. at 1234. This is why "courts interpret

[4] FOIA—not FACA—is the proper route for obtaining records related to agency personnel, like the DOGE Teams, acting within the Defendant agencies and departments. Plaintiff has already

FACA narrowly," "[g]iven the serious separation-of-powers concerns inherent in legislation that imposes requirements on executive decision-making[.]" *Food & Water Watch*, 357 F. Supp. 3d at 10. These structural problems are apparent on the face of Plaintiff's operative complaint and warrant dismissal now, not after discovery or further proceedings as Plaintiff urges. *See* Opp'n at 30. To avoid addressing these structural problems, this Court could—and should—dismiss Plaintiff's FACA claims based on the many pleading failures outlined above. *See Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

**FACA's fair balance and inappropriate influence provisions are not justiciable.** Plaintiff does not address Defendants' argument that FACA's fair balance and inappropriate influence provisions are not justiciable. Any objections thereto are thus waived. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002). Instead, Plaintiff claims that it "has not brought a claim to enforce" these provisions. Opp'n at 30–31. But Plaintiff seeks to "[d]eclare that the Defendants violated the APA and FACA by failing to file . . . [a] Balanced Management Plan." Sec. Am. Compl., Prayer for Relief ¶ b. Plaintiff also seeks an order "requiring Defendants to comply with the mandatory duties imposed by FACA." *Id.* at ¶ d. Both of those requests seek to enforce FACA's fair balance and inappropriate influence provisions. So, for the reasons outlined in Defendants' motion to dismiss, which remain unrebutted, this Court should dismiss as nonjusticiable any claims premised on violations of FACA's fair balance and inappropriate influence provisions. *See* Defs.' Mem. at 36–40.

---

submitted FOIA requests, and there is nothing stopping Plaintiff from submitting more FOIA requests for any additional records it may want.

## CONCLUSION

For the reasons outlined here and in Defendants' opening brief, the Court should dismiss with prejudice counts one and two of Plaintiff's second amended complaint.

DATED: May 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*<u>/s/ Samuel S. Holt</u>*
SAMUEL S. HOLT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*